IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 10 2017

JAMES W. McCORMACK, CLERK

By:_____ DEP CLERK

CLEO WATKINS, PYLES FAMILY FARMS, LLC,
VICTOR HUTCHERSON, ALVELLA
HUTCHERSON, HELEN KNIGHT,
MICHAEL WATKINS, BETTY WATKINS,
& GEORGE CARNEY

**PLAINTIFFS**

v.                    NO. _3:17cv272-DPM_

LAWRENCE COUNTY, ARKANSAS,
JOHN THOMISON, in his official capacity as
County Judge of LAWRENCE COUNTY,
ARKANSAS, and WILLIAM POWELL,
DONALD RICHEY, LLOYD CLARK,
HEATH DAVIS, ERNEST BRINER,
RONALD INGRAM, TRACY MOORE,
KENNY JONES, & ALEX LATHAM,
in their official capacities as
members of the LAWRENCE COUNTY
QUORUM COURT

This case assigned to District Judge _Marshall_
and to Magistrate Judge _Harris_

**DEFENDANTS**

## COMPLAINT

Comes Plaintiffs, Cleo Watkins, Pyles Family Farms, LLC, Victor Hutcherson, Alvella

Hutcherson, Helen Knight, Michael Watkins, Betty Watkins, and George Carney ("Plaintiffs")

through their counsel PPGMR Law and for their complaint against Defendants Lawrence County,

Arkansas, John Thomison in his official capacity as County Judge for Lawrence County, Arkansas

and William Powell, Donald Richey, Lloyd Clark, Heath Davis, Ernest Briner, Ronald Ingram,

Tracy Moore, Kenny Jones, and Alex Latham in their official capacities as members of the

Lawrence County Quorum Court (together, "Lawrence County") state:

1

## I.    NATURE OF THE ACTION

This case concerns a bridge in Lawrence County, Arkansas over the West Cache River Slough ("Slough"). Lawrence County negligently constructed the bridge in the early 2000s and failed to consult the United States Army Corps of Engineers ("USACOE") or apply for a Clean Water Act ("CWA") permit. Later, the USACOE approved a minor modification to the bridge in 2003 and agreed to grant the County an "after-the-fact" Section 404 permit under the CWA so long as the bridge was maintained and debris cleared from the culverts to allow for proper flow. Fairly quickly, Lawrence County abandoned its efforts to clear the bridge of debris, turning the bridge into a dam and causing substantial sediment buildup. That sediment has choked off most of the Slough from the Cache River proper, which in turn has caused substantial flooding of Plaintiffs' lands and destruction of their crops.  For almost two decades now, Lawrence County, through its County Judge and Quorum Court, has refused to do anything to address the problems caused by its negligently constructed and maintained bridge, all the while violating its CWA permit.

## II.    JURISDICTION AND VENUE

1.      Plaintiffs are property owners who reside and/or farm land along the Cache River or its minor tributaries in Craighead County, Arkansas.

2.      All Plaintiffs are residents of Craighead County, Arkansas or otherwise have their principal place of business in Craighead County, Arkansas.

3.      Defendant Lawrence County is a governmental body with its governing seat in Walnut Ridge, Arkansas.

4.      Defendant John Thomison, an Arkansas resident domiciled in Lawrence County, is the County Judge of Lawrence County, Arkansas.

5.      Defendants William Powell, Donald Richey, Lloyd Clark, Heath Davis, Ernest Briner, Ronald Ingram, Tracy Moore, Kenny Jones, and Alex Latham are Arkansas residents domiciled in Lawrence County, Arkansas and currently serve as Justices of the Peace on the Lawrence County Quorum Court.

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367, and 1343(a)(3).

7.      The events giving rise to this claim occurred and continue to occur in Lawrence County, Arkansas and Craighead County, Arkansas, which are within the Eastern District of Arkansas.  This Court has venue over this matter pursuant to 28 U.S.C. § 1391(b).

## II.      STATEMENT OF FACTS

8.      All Plaintiffs own and farm property in Craighead County next to the Cache River and the southeasternmost portion of Lawrence County, Arkansas.

9.      Plaintiffs have farmed their land for decades and many Plaintiffs are second or third generation farmers.

10.     The Slough is a relief canal that branches away from the Cache River less than one mile southeast of Sedwick, Arkansas, approximately 1,000 feet south of the US Highway 63 bridge over the Cache River.

11.     The Slough parallels the Cache River for approximately nine miles before the two channels merge at their confluence near Egypt, Arkansas at the Highway 91 bridge.

12.     The USACOE constructed the Slough for flood relief of the Cache River in the early twentieth century for flood relief.

13.     Almost the entirety of the Slough is located within Lawrence County, except for the Slough's eventual confluence with the Cache River, which is located in Craighead County.

14.     Lawrence County Road 717 crosses the Slough roughly one mile below where the Slough diverges away from the Cache River.

15.     For most of the second half of the twentieth century, Lawrence County maintained a wooden bridge on County Road 717 across the Slough that had allowed landowners access to their properties within the approximately twelve square miles between the Slough and the Cache River.

16.     This wooden bridge was set on pillars and had allowed passage of flood and stage waters, along with various debris and sediment. A picture of the bridge is attached hereto as Exhibit 1.

17.     At some point the wooden bridge became unfit for use and former Lawrence County Judge Alex Latham ("Latham"), acting on behalf of Lawrence County, tore down and replaced the wooden bridge in the late 1990s or early 2000s.

18.     Latham chose to replace the wooden bridge with a crude dirt and concrete embankment that had four rail boxcars acting as culverts to pass the entire flow in the Slough. Pictures of this construction are attached as Exhibit 2.

19.     Lawrence County and Latham did not consult an engineer, architect, or hydrologist when constructing this new bridge (hereafter, "bridge").  The County's expense report for this bridge is attached as Exhibit 3.

20.     The new bridge possessed significant and obvious defects that would have been apparent to a licensed engineer, architect, or hydrologist had Lawrence County consulted one.

21.     Lawrence County made no plan for how to deal with the large number of logs, debris, and sediment that the Cache River and Slough transport.

4

22.     Lawrence County did not consult with the USACOE or apply for a permit under the CWA from the USACOE prior to constructing the new bridge.

23.     The bridge culverts soon filled with sediment and debris, effectively turning the "bridge" into a dam with only minimal water flow passing through.

24.     As a result of this bridge, Plaintiffs—whose land adjoins the Cache River downstream of the Slough's divergence away from the Cache River and upstream of the Slough's eventual confluence with the Cache—suffered increased flooding on their lands that was unlike any previous diffused surface water patterns.

25.     On March 28, 2001, the Cache River Drainage District, through its attorney, notified Latham of flooding problems and asked him to take remedial measures.  A true and complete copy of this letter is attached as Exhibit 4.

26.     In April 2001, Plaintiffs informed Latham of their concerns about the bridge and flooding.  A true and complete copy of this correspondence is attached as Exhibit 5.

27.     Latham replied through his counsel on May 3, 2001, claiming that the County had no funds to remedy the situation and that the culverts were not causing any problems.  A true and complete copy of this letter is attached as Exhibit 6.

28.     On June 8, 2001, the USACOE notified Latham that the bridge as constructed violated Sections 301 and 404 of the CWA.  A true and complete copy of this communication is attached as Exhibit 7.

29.     A USACOE hydraulic analysis conducted prior to this notification showed potential for "adverse flooding upstream." See Exhibit 7.

30.     After communicating with Lawrence County about the bridge, the USACOE eventually gave Latham permission to install an additional culvert and agreed to issue an "after-

the-fact" CWA Section 404 permit to Lawrence County on May 13, 2003. A true and complete copy of this correspondence is attached as Exhibit 8.

31.     Lawrence County's after-the-fact permit Section 404 permit was conditioned upon the County's continued maintenance of the culverts, the removal of debris as needed to maintain water flow, and other requirements. See Exhibit 8.

32.     Debris again soon accumulated in the bridge culverts that (i) severely restricted water flow downstream, (ii) caused a substantial silt buildup between the bridge and the mouth of the Slough where it diverges from the Cache River, and (iii) created a large sandbar on the Cache River main channel.

33.     Plaintiff George Carney witnessed the sandbar upstream from the Lawrence County bridge more than triple in size between 2001 and 2009 and communicated his concerns to the County and the USACOE. A true and complete copy of this correspondence is attached as Exhibit 9.

34.     The silt accumulation caused by the improperly constructed and maintained bridge has choked off the Slough, diverting flow back into the Cache River proper during periods of moderate to heavy flow.

35.     Debris continues to accumulate at the bridge, causing silt to collect upstream and create a hazardous sandbar in the Cache River proper. A satellite image of debris accumulation at the bridge is attached as Exhibit 10.

36.     Silt continues to build up in the Slough channel where the Slough diverges from the Cache River.

37.     Lawrence County and the Lawrence County Judge no longer make any effort to maintain the bridge or ensure that the culverts are free of debris.

38.     Lawrence County has never undertaken efforts to alleviate the silt and sediment buildup in the Slough channel upstream of the bridge to the Cache River proper.

39.     Plaintiffs have experienced extensive flooding over their properties that was caused by Lawrence County's failure to ensure unimpeded water and debris flow through the bridge's culverts.

40.     The flooding complained of by Plaintiffs did not previously occur with the regularity and intensity that has occurred ever since Lawrence County first installed the new bridge.

41.     Plaintiffs had never lost crops in such large numbers as a result of floodwaters prior to the bridge being installed.

42.     This flooding has reliably occurred ever since the bridge was installed and can be reasonably predicted to occur with moderate amounts of rain.

43.     This flooding is over-and-above the natural flood events that can be reasonably expected to occur along the segment of the Cache River between Sedgwick, Arkansas and Egypt, Arkansas.

44.     Plaintiffs have lost a substantial number of crops as a result of the bridge and continue to lose crops every year from flooding.

45.     Plaintiffs have lost portions of their stream banks along the Cache River proper and its minor tributaries as a result of the bridge and continue to lose portions of their stream banks. A photograph one such stream bank is attached hereto as Exhibit 11.

46.     The bridge and resultant flooding have reduced Plaintiffs' property values and utility and have negatively impacted Plaintiffs' welfare and ability to earn a living.

7

47.     Plaintiffs have reached out many times to Lawrence County seeking to have a proper bridge installed over the Slough that does not restrict flow, but Lawrence County has consistently rejected all attempts to resolve the issue.

## II.     STATEMENT OF CLAIMS

### COUNT 1 – Violation of § 404 of the Clean Water Act

48.     All paragraphs in this Complaint are incorporated here by reference as if fully set forth in Count 1.

49.     Section 404 of the CWA forbids entities without a permit from discharging fill or dredge material into waters of the United States.

50.     The Slough is a "water of the United States," having been physically constructed by the United States federal government and determined to be as such by the USACOE.

51.     The USACOE previously found Lawrence County to be in violation of Section 404 in 2001 when it first installed the bridge.

52.     A May 15, 2001 memorandum drafted by a USACOE hydrologist found that the culverts "were not adequately sized" and that the bridge could lead to "potential adverse flooding upstream." A true and complete copy of this memorandum obtained through the Freedom of Information Act is attached hereto as Exhibit 12.

53.     The USACOE demanded that the County either (i) install a fifth culvert to increase flow and keep the culverts free of debris or (ii) rip down the new bridge and construct a properly-designed structure.

54.     Once Lawrence County installed an additional culvert, the USACOE granted an "after-the-fact-permit" under the CWA to Lawrence County on May 13, 2003. See Exhibit 8.

55.     This permit determined that the bridge met "the requirements of Nationwide Permit No. 14 provided that the enclosed conditions are met. Please pay special attention to the general permit condition number 21 (Management of Water Flows). The crossing shall be maintained and debris shall be removed as needed to allow for the passage of normal or expected high flows."

56.     The USACOE's Nationwide Permit Number 14 contains a general condition for the "Management of Water Flows," which states "To the maximum extent practicable, the pre-construction course, condition, capacity, and location of open waters must be maintained for each activity, including stream channelization and storm water management activities, except as provided below. The activity must be constructed to withstand expected high flows. The activity must not restrict or impede the passage of normal or high flows, unless the primary purpose of the activity is to impound water or manage high flows. The activity may alter the pre-construction course, condition, capacity, and location of open waters if it benefits the aquatic environment (e.g., stream restoration or relocation activities)."

57.     A USACOE representative noted in a 2009 inspection that "It was noticeable during the survey that the pipes were mostly closed and regular maintenance will be required to keep the pipes open." A copy of a report from the USACOE is attached as Exhibit 13.

58.     Lawrence County has failed to maintain the bridge or remove debris for years and continues to do so to this day.

59.     Lawrence County continues to violate the CWA on a daily basis by failing to adhere to its permit requirements, including but not limited to the Management of Water Flows requirement.

60.     The pre-construction course, capacity, and location of waters within the Slough have not been, and currently are not being, maintained by Lawrence County.

9

61.     Lawrence County's bridge is too tall to allow for water to top the bridge during heavy flows. Instead of allowing flow to pass through unimpeded, debris regularly dams the bridge culverts and pools the high water flows in the one mile channel between the Cache River and the bridge.

62.     There is no aquatic benefit of the bridge; the USACOE has not determined there to be any aquatic benefit of the bridge.

63.     The County has continuously failed to meet the requirements of its conditional permit, is currently in violation of § 404 of the CWA, has been in violation of the CWA for years due to willful decision-making at the highest level of county governance, and has never attempted to comply with its permit conditions or remediate the impact of this bridge.

64.     In particular, the County has violated the terms of their permit numerous times since 2011.

65.     For all intents and purposes, the bridge has effectively turned into a dam.

66.     The frequency and intensity of flooding on the Cache River between US Highway 63 and Arkansas Highway 91 has increased within the past six years and continues to increase to this day.

67.     Plaintiffs provided notice to Lawrence County that they considered the County to be in violation of the CWA on June 3, 2016. A true and complete copy of this letter is attached hereto as Exhibit 14.

68.     Plaintiffs are adversely impacted by Lawrence County's disregard of its CWA permit obligations, regularly losing crops and having their property values diminished as a result of Lawrence County's repeated failure to follow its permit conditions.

69.     Lawrence County has shown a conscious disregard to its permit violations and its impact upon others, having flatly ignored its permit requirements for over a decade.

70.     Lawrence County is willfully operating far outside of the CWA, having expended no effort to allow for the flow of natural floodwaters to the "maximum extent practicable," and Lawrence County effectively has no Section 404 CWA permit.

71.     Plaintiffs bring suit under the CWA citizen suit provision at 33 U.S.C. § 1365, seeking an order from the Court enjoining Lawrence County from operating the bridge unless and until it operates in compliance with the terms of its Section 404 permit.

72.     In the alternative, Plaintiffs seek an order from the Court enjoining Lawrence County from operating the bridge until it reapplies for a Section 404 permit from the USACOE.

73.     Plaintiffs request the Court award them fees and costs as provided by 33 U.S.C. §1365(d).

### COUNT 2 – Public Nuisance (Ark. Code Ann. § 14-268-105)

74.     All paragraphs in this Complaint are incorporated here by reference as if fully set forth in Count 2.

75.     This cause of action is asserted alternatively to all other causes of action stated herein.

76.     Under Arkansas Code Annotated § 14-268-105, any Arkansas citizen may bring a suit against a county where a "structure, building, fill or development" is placed in a flood-prone area in violation of its flood regulations.

77.     The bridge constructed by the County lies within an area known to flood regularly.

78.     Lawrence County has adopted county floodplain regulations, a true and complete copy of which are hereto attached as Exhibit 15.

79.     The Lawrence County Floodplain Regulations apply to "Special Flood Hazard Areas" in Lawrence County, which are defined as "geographical areas identified on FEMA flood maps as being at-risk for flooding." See Exhibit 15.

80.     Attached hereto is the official Federal Emergency Management Agency (FEMA) flood map of the Cache River Slough as Exhibit 16, which identifies the area where "Lawrence Rd. 717" crosses the Slough (labeled "West Cache River Ditch") as a "Special Flood Hazard Area Subject to Inundation By the 1% Annual Chance Flood."

81.     The official FEMA map labels the area where Lawrence County Road 717 crosses the Slough as a "Zone A" area. See Ex. 16.

82.     For Special Flood Hazard Areas in "A" Risk Zones, the Lawrence County Floodplain Regulations imposed the following requirements on the County for new non-residential constructions: (i) determine a base flood evaluation prior to construction, (ii) "a registered professional engineer or architect shall develop and/or review structural design, specifications, and plans for the constructions, and shall certify on a Floodproofing Certificate that the design and methods or construction are in accordance with accepted standards of practice as outlined in this subsection." *See* Ex. 15 at 25.

83.     The Floodplain Regulations also require these measures be taken for each modification of non-residential structures. *Id.*

84.     The bridge is a non-residential construction. No licensed engineer or architect ever analyzed the structural design or plans for the installation of the County Road 717 bridge or the 2003 modification.

85.     No licensed engineer or architect ever certified a Floodproofing Certificate for the installation of the County Road 7171 bridge or the 2003 modification.

12

86.     The design of the bridge is so obviously flawed under standard engineering principles that no licensed engineer or architect would have approved the construction or modification of the bridge.

87.     On September 22, 2016, through counsel, Plaintiffs requested any and all construction plans from Lawrence County for the bridge under the Freedom of Information Act, including all engineering or architectural reports, invoices, receipts or expenditure authorizations. A true and complete copy of this letter is attached hereto as Exhibit 17.

88.     The Lawrence County FOIA response included a receipt for all services billed for construction of the bridge, which confirmed that no engineer or architect was paid or retained by Lawrence County for work on the bridge. A true and complete copy of the Lawrence County FOIA response is attached hereto as Exhibit 18.

89.     As no licensed engineer or architect ever reviewed the bridge plans or certified a Floodproofing Certificate, the bridge's construction and modifications were in violation of the County's own regulations.

90.     The bridge as constructed and maintained by Lawrence County operates as a public nuisance that predictably increases flooding on the Cache River proper, contributes to the flooding of Craighead County roads and US Highway 230, floods Plaintiffs' properties, and eliminates the Slough's entire purpose as flood relief.

91.     The Lawrence County Floodplain Regulations were adopted by the very same County Judge (Latham) that unlawfully constructed the County Road 717 bridge. *See* Ex. 15.

92.     Former County Judge Latham currently serves on the Quorum Court of Lawrence County.

93.     Plaintiffs have made their problems known to Lawrence County for over a decade only to be repeatedly ignored.

94.     Lawrence County has had ample notice of this public nuisance, having been informed by Plaintiffs and other Craighead County residents of the bridge's problems ever since it was originally constructed.

95.     Plaintiffs have experienced the adverse impacts of flooding as a direct result of Lawrence County's failure to adhere to its floodplain regulations from 2011 to the current date and expect the adverse effects to worsen.

96.     Arkansas Code Annotated §14-14-1102(b) provides that a county judge must exercise his power over bridges "pursuant to law," which former Lawrence County Latham and current Lawrence County Judge Thomison have failed to do.

97.     Per Lawrence County's own regulations and Lawrence County's CWA Section 404 permit, the bridge has not been made or maintained according to law and as such is a per se public nuisance.

98.     Some Lawrence County residents have requested the County not maintain a proper bridge because doing so might have allowed floodwaters to reach their lands on the lower portion of the Slough, which is not subject to the extensive flooding on the Cache River's eastern bank near Bono, Arkansas caused by the bridge.

99.     Lawrence County has acquiesced to those constituents to avoid constructing a properly-designed bridge across the Slough at County Road 717.

100.    Lawrence County has willfully ignored Plaintiffs' flooding problems and has acted with reckless disregard to the damage it continues to cause Plaintiffs and others.

101.   Plaintiffs are threatened with irreparable harm that far outweighs the cost of constructing a proper bridge; Plaintiffs are likely to succeed on the merits; and it is in the public's interest to both have a properly functioning Slough—since the federal government designed and constructed the Slough—and to have a county fix a bridge that is knowingly causing flooding on neighboring lands and roads.

102.   Public resources have already been wasted by Lawrence County's refusal to fix its bridge because the Slough cannot operate as designed and there is an on-going threat to public safety from increased flooding on the Cache River proper.

103.   Plaintiffs request that the Court enjoin Lawrence County to remove the bridge and, and to allow the free flow of floodwaters and debris through the Slough unimpeded, pursuant to Arkansas Code Annotated § 14-268-105.

### COUNT 3 – Declaratory Judgment (Ark. Code Ann. § 18-15-703)

104.   All paragraphs in this Complaint are incorporated here by reference as if fully set forth in Count 3.

105.   This cause of action is asserted alternatively to all other causes of action stated herein.

106.   Arkansas Code Annotated § 18-15-703 provides that "All dams, stoppages, or obstructions not made according to law shall be deemed to be public nuisances and shall be dealt with accordingly."

107.   The bridge has been, and currently is, operating as a dam, stoppage, and obstruction.

108.   As explained above, Lawrence County officials failed to construct and maintain the bridge according to federal law, state law, and its own regulations.

109.     Plaintiffs request the Court declare the bridge a public nuisance under Arkansas Code Annotated §18-15-7023, pursuant to the Arkansas Declaratory Judgment Act at Arkansas Code Annotated §16-111-101 *et seq* and the federal Declaratory Judgment Act at 28 U.S.C. § 2201 *et seq*.

110.     Plaintiffs request that the Court enjoin Lawrence County to remove the bridge and, and to allow the free flow of floodwaters and debris through the Slough unimpeded, pursuant to Arkansas Code Annotated §18-15-703.

111.     Plaintiffs request the Court award them their costs in pursuit of this declaratory judgment and injunction, pursuant to Arkansas Code Annotated §16-111-110 and 28 U.S.C. § 2202, as well as any other relief to which they are entitled under 28 U.S.C. § 2202

## COUNT 4 – Inverse Condemnation

112.     All paragraphs in this Complaint are incorporated here by reference as if fully set forth in Count 4.

113.     This cause of action is asserted alternatively to all other causes of action stated herein.

114.     Article 2, § 22 of the Arkansas Constitution states that "private property shall not be taken, appropriated, or damaged for public use, without just compensation therefore."

115.     Likewise, the Fifth Amendment of the United States Constitution requires just compensation for private property taken by the government for public use.

116.     Lawrence County constructed, modified, and maintained its bridge on County Road 717 across the Slough with public funds for the benefit of the public within its jurisdiction.

117.     Lawrence County's bridge and actions have caused extensive floodwaters to enter upon the farm land of Plaintiffs and destroy crops annually for more than fifteen years.

16

118.    As Plaintiffs' land is normally suited to farming, Lawrence County's actions have caused Plaintiffs' property values to diminish over the same period of time because their properties can no longer be reliably marketed for that purpose.

119.    Plaintiffs informed Lawrence County in 2001, 2003, 2009, 2015, and 2016 of the bridge's impact that has resulted, and continue to result, in nuisance floodwaters entering upon their land.

120.    By knowingly sending floodwaters onto another's property, Lawrence County has committed a taking of Plaintiffs' properties.

121.    Lawrence County has made no attempt to restore the Slough to the purpose for which it was originally created or alleviate the problems caused by its bridge.

122.    Lawrence County has refused to acknowledge it has caused the flooding and has never offered to tender any compensation for Plaintiffs' property.

123.    Lawrence County has never initiated a condemnation proceeding against Plaintiffs' property.

124.    As such, Plaintiffs have been deprived of their rights to just compensation under the Arkansas and federal constitutions for property taken for public use.

125.    Flooding upon Plaintiffs' property caused by Lawrence County's actions constitute takings for which just compensation must be paid by Lawrence County.

126.    Plaintiffs seek just compensation in damages for the property taken from them by Lawrence County from 2011 until the current day under Arkansas Code Annotated § 18-15-410, the Arkansas Constitution, and the United States Constitution, including but not limited to all (i) temporary but regularly occurring physical invasions caused by Lawrence County action or authority, (ii) lost or destroyed crops resulting from physical invasions caused by Lawrence

17

County action or authority, and (iii) the diminution of value of the Plaintiffs' properties caused by Lawrence County action or authority.

## COUNT 5 –Violation of 42 U.S.C. § 1983

127.    All paragraphs in this Complaint are incorporated here by reference as if fully set forth in Count 5.

128.    This cause of action is asserted alternatively to all other causes of action stated herein.

129.    A government actor stands in violation of 42 U.S.C. § 1983 if, under color of federal, state, or local law he or she deprives a citizen of a privilege, right, or immunity enjoyed under the United States Constitution.

130.    Under Arkansas Code Annotated § 14-14-1101 and -1102, Arkansas county judges are charged to maintain and construct county roads and bridges according to law.

131.    Defendant Thomison, the current County Judge for Lawrence County, has acted under color of local law by refusing to maintain the current bridge's culverts or allow the natural flow of waters and debris to continue along the Slough unimpeded.

132.    Previous County Judge Latham likewise acted under color of state law by refusing to lawfully construct a proper bridge, maintain the current bridge's culverts, or allow the natural flow of waters and debris to continue along the Slough unimpeded.

133.    Because of the County's failure to properly construct or maintain its bridge, Plaintiffs' lands flood on a regular basis, causing Plaintiffs injuries in crop damage and a decrease in property values.

134.    As such, Plaintiffs have been deprived of their private property and due process rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

135.    Moreover, Lawrence County has preferred its own citizens over Plaintiffs, who reside in Craighead County, by pushing off floodwaters back into the Cache River proper through the unlawful construction of an improperly-designed bridge and refusing to modify or maintain the bridge.

136.    Lawrence County's outright refusal to address the problems caused by the bridge has been motivated by a desire to prefer its taxpayers over the citizens of neighboring counties.

137.    Lawrence County's actions to further the interest of their own citizens have come at the direct expense of Plaintiffs.

138.    Because Plaintiffs are not residents of Lawrence County, they cannot vote in Lawrence County elections or otherwise influence decision-making at the county level.

139.    Lawrence County has deprived Plaintiffs of the equal protection of the law, as guaranteed by the Fourteenth Amendment of the United States Constitution.

140.    Plaintiffs request damages for Plaintiffs' lost crops and property values that have been destroyed by the actions of Lawrence County; however, damages for previous violations of their federal rights will not fully redress the injuries that continue to occur to Plaintiffs.

141.    As such, Plaintiffs request that the Court enjoin Lawrence County to remove the bridge and to allow the free flow of floodwaters and debris through the Slough unimpeded.

142.    Plaintiffs seek their attorney fees, costs, and any necessary expert fees pursuant to 42 U.SC. § 1988.

143.    Plaintiffs demand a jury trial.

THEREFORE, Plaintiffs request that this Court award them judgment against Defendant in the form of injunctive relief, actual damages, and consequential damages, together with all other fees, costs, and expenses to which they may be lawfully entitled, including pre- and post-judgment interest, and other just and proper relief to which they may be entitled.

Respectfully submitted,

Micah L. Goodwin, Ark. Bar. No. 2015213
micah@ppgmrlaw.com
Julie D. Greathouse, Ark. Bar No. 99159
julie@ppgmrlaw.com
PPGMR Law, PLLC
P.O. Box. 251618
Little Rock, AR 72225
501-903-6000
501-603-0556 (fax)

*Attorneys for Plaintiffs*

# Exhibit 1



Before

Job 1



Before

Job 1

Job. 1    Before

Exhibit 1

Exhibit 2



**File 200109011/Latham/replacement of bridge with culverts across Cache River Ditch/east side**     **3/20/2001**

Exhibit 2



**File 200109011/Latham/replacement of bridge with culverts across Cache River Ditch/west side**     **3/20/2001**



**File 200109011/Latham/replacement of bridge with culverts across Cache River Ditch/east side**     **3/20/2001**



**File No. 200109011/Latham/replacement of bridge with culverts across Cache River Ditch**          3/20/2001



**File 200109011/Latham/replacement of bridge with culverts across Cache River Ditch/west side**   **3/20/2001**

# Exhibit 3

FORCE ACCOUNT LABOR RECORD          GOV'S. EP #_____

APPLICAN'    Lawrence County

1. Under "Rate" column, show hourly rate for regular time.
2. Show total (regular plus overtime) in "HRS. EACH DAY" column.
   Example: Joe Handy worked 12 hours on Monday, 4 of which were
   overtime at time and one-half, the total hours shown under Monday
   (M) would be 14 hours.
3. It may be necessary to use more than one sheet for a pay period.

PAGE __1__ OF __4__ PAGE(S)
TIME PERIOD: 8-1          TO
             8-20         1997

JOB SITE NUMBER ____2____

Exhibit 3

| NAME LABOR | JOB CLASS | DATE/HOURS WORKED EACH DAY | | | | | | | | | TOTAL HOURS | RATE | TOTAL PAY | PAY CHECK NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | DATE | 1st | 2nd | 3rd | 6th | 13th | 18th | 19th | 20th | | | | |
| Joh Cooper | Excavator Operator | REG O/T | -0- | -0- | -0- | 8 | 8. | 8 | 8 | 8 | 40 | $8.23 | $329.20 | |
| Brent Smith | Excavator Operator | REG O/T | -0- | -0- | -0- | 8 | 8 | 8 | -0- | -0- | 24 | $8.23 | $197.52 | |
| John Blankenship | General Labor | REG O/T | -0- | -0- | -0- | 8 | 8 | 8 | 8 | 8 | 40 | $8.23 | $329.20 | |
| Willie Blazer | General Labor | REG O/T | -0- | -0- | -0- | -0- | 8 | -0- | 8 | 8 | 24 | $8.23 | $197.52 | |
| Walter Williams | General Labor | REG O/T | -0- | -0- | -0- | -0- | 8 | -0- | 8 | 8 | 24 | $8.23 | $197.52 | |
| James Smith | Foreman | REG O/T | -0- | -0- | -0- | 8 | 8 | 8 | 8 | 8 | 40 | $10.00 | $400.00 | |
| Dennis Morgan | Welder | REG O/T | 7 | 7 | 7 | -0- | -0- | -0- | -0- | -0- | 21 | $10.00 | $210.00 | |
| | | REG O/T | | | | | | | | | | | | |

CERTIFY THAT THE ABOVE INFORMATION WAS TRANSCRIBED FROM TIME SHEETS,
PAYROLL RECORDS, OR OTHER DOCUMENTS WHICH ARE AVAILABLE FOR AUDIT.

213            $1860.96

CERTIFIED BY:_____  TITLE:_____

APPLICAN'  Lawrence County

1. Under "Rate" column, show hourly rate for regular time.
2. Show total (regular plus overtime) in "HRS. EACH DAY" column.
   Example: Joe Handy worked 12 hours on Monday, 4 of which were
   overtime at time and one-half, the total hours shown under Monday
   (M) would be 14 hours.
3. It may be necessary to use more than one sheet for a pay period.

PAGE ___2___ OF ___4___ PAGE(S)
TIME PERIOD: __8-21__ TO
_____ __8-27__ 1997
JOB SITE NUMBER___2___

| NAME LABOR | JOB CLASS | DATE | \multicolumn{9}{c}{DATE/HOURS WORKED EACH DAY} | TOTAL HOURS | RATE | TOTAL PAY | PAY CHECK NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 21st | 22nd | 25th | 26th | 27th | | | | | | | | |
| John Cooper | Excavator Operator | REG O/T | 8 | 8 | 4 | -0- | -0- | | | | | 20 | $8.23 | $164.60 | |
| Brent Smith | General Labor | REG O/T | -0- | -0- | -0- | 4 | 8 | | | | | 12 | $8.23 | $98.76 | |
| John Blankenship | General Labor | REG O/T | -0- | -0- | -0- | 4 | 8 | | | | | 12 | $8.23 | $98.76 | |
| Willie Blazer | General Labor | REG O/T | -0- | -0- | -0- | -0- | -0- | | | | | -0- | $8.23 | -0- | |
| Walter Williams | General Operator | REG O/T | -0- | -0- | -0- | 4 | 8 | | | | | 12 | $8.23 | $98.76 | |
| James Smith | Foreman | REG O/T | 8 | 8 | 4 | 4 | 8 | | | | | 32 | $10.00 | $320.00 | |
| George Rone | General Labor | REG O/T | -0- | -0- | -0- | 4 | 8 | | | | | 12 | $8.23 | $98.76 | |
| | | REG O/T | | | | | | | | | | | | | |

I CERTIFY THAT THE ABOVE INFORMATION WAS TRANSCRIBED FROM TIME SHEETS, PAYROLL RECORDS, OR OTHER DOCUMENTS WHICH ARE AVAILABLE FOR AUDIT.

Total Hours: 100   Total Pay: $879.64

CERTIFIED BY: _____ TITLE: _____

APPLICAN' Lawrence County _____ ER # _____

1. Under "Rate" column, show hourly rate for regular time.
2. Show total (regular plus overtime) in "HRS. EACH DAY" column.
   Example: Joe Handy worked 12 hours on Monday, 4 of which were
   overtime at time and one-half, the total hours shown under Monday
   (M) would be 14 hours.
3. It may be necessary to use more than one sheet for a pay period.

PAGE ___3___ OF ___4___ PAGE(S
TIME PERIOD: 8-19 _____ TO
_____ 8-20 _____ 19 97

JOB SITE NUMBER ___2___

| NAME<br><br>LABOR | JOB CLASS | DATE/HOURS WORKED EACH DAY | | | | | | | | | | TOTAL HOURS | RATE | TOTAL PAY | PAY CHEC: NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | DATE | 19th | 20th | | | | | | | | | | | |
| Roy Rogers | Grader Operator | REG<br>O/T | 8 | 8 | | | | | | | | 16 | $8.23 | $131.68 | |
| Perry Hurres | Grader Operator | REG<br>O/T | 8 | 8 | | | | | | | | 16 | $8.23 | $131.68 | |
| | | REG<br>O/T | | | | | | | | | | | | | |
| | | REG<br>O/T | | | | | | | | | | | | | |
| | | REG<br>O/T | | | | | | | | | | | | | |
| | | REG<br>O/T | | | | | | | | | | | | | |
| | | REG<br>O/T | | | | | | | | | | | | | |
| | | REG<br>O/T | | | | | | | | | | | | | |

I CERTIFY THAT THE ABOVE INFORMATION WAS TRANSCRIBED FROM TIME SHEETS,
PAYROLL RECORDS, OR OTHER DOCUMENTS WHICH ARE AVAILABLE FOR AUDIT.

32 | | $263.36

CERTIFIED BY:_____TITLE:_____

APPLICANT: Lawrence County

1. Under "Rate" column, show hourly rate for regular time.
2. Show total (regular plus overtime) in "HRS. EACH DAY" column.
   Example: Joe Handy worked 12 hours on Monday, 4 of which were overtime at time and one-half, the total hours shown under Monday (M) would be 14 hours.
3. It may be necessary to use more than one sheet for a pay period.

PAGE __4__ OF __4__ PAGE(S)
TIME PERIOD: 8-18 TO
8-22 1997

JOB SITE NUMBER __2__

| NAME LABOR | JOB CLASS | DATE | 18th | 19th | 20th | 21st | 22nd | | | | TOTAL HOURS | RATE | TOTAL PAY | PAY CHECK NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bill Denison | Truck Driver | REG O/T | 4 | 8 | 8 | 8 | 8 | | | | 32 | $8.23 | $263.36 | |
| Leslie Gates | Truck Driver | REG O/T | 4 | 8 | 8 | 8 | 8 | | | | 32 | $8.23 | $263.36 | |
| Randy Rogers | Truck Driver | REG O/T | 4 | 8 | 8 | 8 | 8 | | | | 32 | $8.23 | $263.36 | |
| Roger Taylor | Truck Driver | REG O/T | 4 | 8 | 8 | 8 | 8 | | | | 32 | $8.23 | $263.36 | |
| David Baird | Truck Driver | REG O/T | 4 | 8 | 8 | 8 | 8 | | | | 32 | $8.23 | $263.36 | |
| | | REG O/T | | | | | | | | | | | | |
| | | REG O/T | | | | | | | | | | | | |
| | | REG O/T | | | | | | | | | | | | |

I CERTIFY THAT THE ABOVE INFORMATION WAS TRANSCRIBED FROM TIME SHEETS, PAYROLL RECORDS, OR OTHER DOCUMENTS WHICH ARE AVAILABLE FOR AUDIT.

Total Hours: 160
Total Pay: $1316.80

P.1 $1860.96
P.2 $879.64
P.3 $263.36
P.4 $1316.80
Total——— $4320.76

CERTIFIED BY: _____ TITLE: _____

APPLICANT   Lawrence County

1. Under "Rate" column, show hourly rate for regular time.
2. Show total (regular plus overtime) in "HRS. EACH DAY" column.
   Example: Joe Handy worked 12 hours on Monday, 4 of which were
   overtime at time and one-half, the total hours shown under Monday
   (M) would be 14 hours.
3. It may be necessary to use more than one sheet for a pay period.

PAGE ___1___ OF ___3___ PAGE(S)
TIME PERIOD: 8-1 TO
8-20   1997

JOB SITE NUMBER ___2___

| NAME / EQUIPMENT | JOB CLASS | DATE/HOURS WORKED EACH DAY | | | | | | | | | TOTAL HOURS | RATE | TOTAL PAY | PAY CHECK NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | DATE | 1st | 2nd | 3rd | 6th | 13th | 18th | 19th | 20th | | | | |
| (5) Dump Trucks | | REG O/T | -0- | -0- | -0- | -0- | -0- | 20 | 40 | 40 | 100 | $13.00 | $1300.00 | |
| (1) Excavator 100cy | | REG O/T | -0- | -0- | -0- | 8 | 8 | 8 | 8 | 8 | 40 | $30.00 | $1200.00 | |
| (1) Excavator 50cy | | REG O/T | -0- | -0- | -0- | 8 | 8 | -0- | -0- | -0- | 16 | $23.00 | $368.00 | |
| (1) Foreman's Truck 8cy | | REG O/T | -0- | -0- | -0- | 8 | 8 | 8 | 8 | 8 | 40 | $16.00 | $640.00 | |
| (1) Laborers Truck 1 Ton | | REG O/T | -0- | -0- | -0- | 8 | 8 | 8 | 8 | 8 | 40 | $9.50 | $380.00 | |
| (1) Pickup 8cy | | REG O/T | -0- | -0- | -0- | -0- | 8 | 8 | 8 | 8 | 32 | $16.00 | $512.00 | |
| (1) Equipment Trailer | | REG O/T | -0- | -0- | -0- | -0- | 2 | -0- | -0- | -0- | 2 | $8.50 | $17.00 | |
| (1) Welder 56hp | | REG O/T | 7 | 7 | 7 | -0- | -0- | -0- | -0- | -0- | 21 | $7.00 | $147.00 | |

I CERTIFY THAT THE ABOVE INFORMATION WAS TRANSCRIBED FROM TIME SHEETS,
PAYROLL RECORDS, OR OTHER DOCUMENTS WHICH ARE AVAILABLE FOR AUDIT.

TOTAL HOURS: 291   TOTAL PAY: $4564.00

CERTIFIED BY: _____   TITLE: _____

FORCE ACCOUNT LABOR RECORD          GOV'S. EP # _____  _____

APPLICAN' _Lawrence County_

1. Under "Rate" column, show hourly rate for regular time.
2. Show total (regular plus overtime) in "HRS. EACH DAY" column.
   Example: Joe Handy worked 12 hours on Monday, 4 of which were
   overtime at time and one-half, the total hours shown under Monday
   (M) would be 14 hours.
3. It may be necessary to use more than one sheet for a pay period.

PAGE __2__ OF __3__ PAGE(S)
TIME PERIOD: 8-21 ___ TO
_____ 8-27 ___ 1997

JOB SITE NUMBER ___2___

| NAME / EQUIPMENT | JOB CLASS | DATE | 21st | 22nd | 25th | 26th | 27th | | | | TOTAL HOURS | RATE | TOTAL PAY | PAY CHECK NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (5) mp Trucks | | REG O/T | 40 | 40 | -0- | -0- | -0- | | | | 80 | $13.00 | $1040.00 | |
| (1) Excavator 100cy | | REG O/T | 8 | 8 | 4 | -0- | -0- | | | | 20 | $30.00 | $600.00 | |
| (1) Excavator 50cy | | REG O/T | -0- | -0- | -0- | -0- | -0- | | | | -0- | $23.00 | -0- | |
| (1) Foreman's Truck 8cy | | REG O/T | 8 | 8 | 4 | 4 | 8 | | | | 32 | $16.00 | $512.00 | |
| (1) Laborers Truck 1 Ton | | REG O/T | 8 | -0- | -0- | 4 | 8 | | | | 20 | $9.50 | $190.00 | |
| (1) Pickup 8cy | | REG O/T | -0- | 8 | 4 | 4 | 8 | | | | 24 | $16.00 | $384.00 | |
| (1) Equipment Trailer | | REG O/T | -0- | -0- | 2 | -0- | -0- | | | | 2 | $8.50 | $17.00 | |
| | | REG O/T | | | | | | | | | | | | |

CERTIFY THAT THE ABOVE INFORMATION WAS TRANSCRIBED FROM TIME SHEETS,
PAYROLL RECORDS, OR OTHER DOCUMENTS WHICH ARE AVAILABLE FOR AUDIT.

178                $2743.00

CERTIFIED BY: _____ TITLE: _____

APPLICAN'  Lawrence County                                    GOV'S. EP #  _____

1. Under "Rate" column, show hourly rate for regular time.
2. Show total (regular plus overtime) in "HRS. EACH DAY" column.     PAGE  3  OF  3   PAGE(S)
   Example: Joe Handy worked 12 hours on Monday, 4 of which were      TIME PERIOD:  8-19   TO
   overtime at time and one-half, the total hours shown under Monday                8-27   19 97
   (M) would be 14 hours.
3. It may be necessary to use more than one sheet for a pay period.   JOB SITE NUMBER  2

| NAME / EQUIPMENT | JOB CLASS | DATE | 19th | 20th | 21st | 22nd | 25th | 26th | 27th | | TOTAL HOURS | RATE | TOTAL PAY | PAY CHECK NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | DATE/HOURS WORKED EACH DAY | | | | |
| '1) Pickup 8cy | | REG O/T | 8 | 8 | -0- | -0- | -0- | 4 | 8 | | 28 | $16.00 | $448.00 | |
| (1) Pickup 8cy | | REG O/T | 8 | 8 | -0- | -0- | -0- | -0- | -0- | | 16 | $16.00 | $256.00 | |
| (1) 672-A John Deere Grader  210hp | | REG O/T | 8 | 8 | -0- | -0- | -0- | -0- | -0- | | 16 | $31.00 | $496.00 | |
| (1) 720 Champion Grader 210hp | | REG O/T | 8 | 8 | -0- | -0- | -0- | -0- | -0- | | 16 | $31.00 | $496.00 | |
| | | REG O/T | | | | | | | | | | | | |
| | | REG O/T | | | | | | | | | | | | |
| | | REG O/T | | | | | | | | | | | | |
| | | REG O/T | | | | | | | | | | | | |

I CERTIFY THAT THE ABOVE INFORMATION WAS TRANSCRIBED FROM TIME SHEETS,
PAYROLL RECORDS, OR OTHER DOCUMENTS WHICH ARE AVAILABLE FOR AUDIT.

TOTAL HOURS: 76    TOTAL PAY: $1696.00

P.1 $4564.00
P.2 $2743.00
P.3 $1696.00
Total—— $9003.00

CERTIFIED BY: _____  TITLE: _____

FORCE ACCOUNT ` `IIPMENT RECORD      GOV'S EP *f*_____ ._____   ___ __

1. Information under "For Rented Equipment" to be filled out only when
   rented equipment is used.

PAGE _1___   OF _1___    ?AGE(S)
TIME PERIOD: _8-7_____
_____ 8-11 __199___

Applicant __Lawrence County_____

JOB SITE NUMBER: __2_____

Contracted Labor – Welding

| TYPE OF EQUIPMENT Indicate size, capacity horsepower, make and model as appropriate | DATE & HOURS USED | RATE PER HOUR | | TOTAL COST | FOR RENTED EQUIPMENT | | | |
|---|---|---|---|---|---|---|---|---|
| | | W/OPR | W/O OPR | | VENDOR | INVOICE NO. | DATE/AMT. PAID | CHECK NO. |
| | ‾‾‾‾‾ | | | | Marts Welding | 471537 | 3-7 $125.00 | |
| | ‾‾‾‾‾ | | | | Marts Welding | 471537 | 8-8 $115.00 | |
| | ‾‾‾‾‾ | | | | Marts Welding | 471537 | 8-9 $185.00 | |
| | ‾‾‾‾‾ | | | | Marts Welding | 471537 | 8-10 $185.00 | |
| | ‾‾‾‾‾ | | | | Marts Welding | 471537 | 8-11 $125.00 | |
| | ‾‾‾‾‾ | | | | | | ‾‾‾‾‾ | |
| | ‾‾‾‾‾ | | | | | | ‾‾‾‾‾ | |
| | ‾‾‾‾‾ | | | | | | ‾‾‾‾‾ | |

I CERTIFY THAT THE ABOVE INFORMATION PERTAINING TO RENTAL EQUIPMENT WAS TRANSCRIBED FROM VENDOR
INVOICES AND THAT THE INFORMATION PERTAINING TO OWNED EQUIPMENT IS TRUE AND CORRECT.  THE RATES USED
FOR OWNED EQUIPMENT ARE NO GREATER THAT THE ALLOWED RATES SHOWN ON FEMA'S "SCHEDULE OF EQUIPMENT RATES"
UNDER PUBLIC LAW 93-288.

TOTAL CLAIMED: $735.00_____ ·
(This Page)

CERTIFIED BY: _____TITLE: _____

FORCE ACCOUNT MATERIALS RECORD    GOV'S EP # _____ _____

1. Place an "x" in the proper "info from" column to show you took the preceding information (except warrant number) from either vendor invoices or stock cards.

PAGE __1__ OF __1__ PAGE(S)

TIME PERIOD: __7-24__
_____ 8-27 __ 19 97

APPLICANT: __Lawrence County_____

JOB SITE NUMBER: __2__

| VENDOR | DESCRIPTION MATERIALS | UNIT PRICE | TOTAL PRICE | DATE BOUGHT | CHECK NO. | DATE USED | CHECK ONE INFO FROM | |
|--------|------------|------------|-------------|-------------|-----------|-----------|---------|--------|
| | | | | | | | INVOICE | STOCK |
| Northside Steel | (2) tank cars 8'6" x 60' | $5400.00 $299.75 tx | $11,399.50 | 8-6 | | | | |
| Northside Steel | (2) tank cars 8'6" x 60' | $5400.00 $299.75 tx | $11,399.50 | 8-8 | | | | |
| Certified Steel | Flat Steel | $297.80 $21.21 tx | $319.01 | 7-24 | | | | |
| Certified Steel | Flat Steel | $279.95 $19.93 tx | $299.88 | 8-7 | | | | |
| Certified Steel | Flat Steel | $25.00 $1.78 tx | $26.78 | 8-11 | | | | |
| Vulcan Materials | 15 loads riprap = 207.57 tons | $4.32 ton $40.56 tx | $937.27 | 8-18 | | | | |
| Vulcan Materials | 26 loads riprap = 338.67 tons | $4.32 ton $75.22 tx | $1538.26 | 8-19 | | | | |
| Vulcan Materials | 31 loads riprap = 397.31 tons | $4.32 ton $90.62 tx | $1807.01 | 8-20 | | | | |
| Vulcan Materials | 29 loads riprap = 395.47 tons | $4.32 ton $90.24 tx | $1798.66 | 8-21 | | | | |
| Vulcan Materials | 26 loads riprap = 329.00 tons | $4.32 ton $72.66 tx | $1493.94 | 8-22 | | | | |
| Hedger Brothers | 54 sq. yds. concrete @ 58.50 | $3159.00 $225.12 | $3384.12 | 8-26 | | | | |
| Hedger Brothers | (4) rolls of concrete wire @ $44.00 | $176.00 $12.54 tx | $188.54 | 8-26 | | | | |
| Hedger Brothers | 48 sq. yds. concrete @ $58.50 | $2808.00 $200.11 t | $3008.11 | 8-27 | | | | |

I CERTIFY THAT THE ABOVE INFORMATION WAS TRANSCRIBED FROM VENDOR INVOICES, STOCK CARDS OR OTHER DOCUMENTS WHICH ARE AVAILABLE FOR AUDIT.

$37,600.58  TOTAL PRICE

TOTAL CLAIMED $37,600.58
(This Page)

CERTIFIED BY: _____    TITLE: _____

No. 17480

Marts Welding

Address _____

School Dist. MSW 440

vs.

**LAWRENCE COUNTY**

## CLAIM FOR ALLOWANCE

BILLIE GAIL, Dunlap County Clerk

Filed on the _____ day of _____, 19 _____

AUG 15 1997

By _____ 12 M _____ Clerk
AM AM    PM    D.C.
8 9 10 11 12 1 2 3 4 5

Examined and allowed the sum of

_____ $ 735.00

Less Fed. Withholding Tax . . . . . . . . $ _____

Less Social Security . . . . . . . . . . . . . $ _____

Less State Tax . . . . . . . . . . . . . . . . . $ _____

Less Retirement . . . . . . . . . . . . . . . . $ _____

Less Insurance . . . . . . . . . . . . . . . . . $ _____

Less Garnishment . . . . . . . . . . . . . . . $ _____

Net . . . . . . . . . . . . . . . . . . . . . . . . $ 735.00

This 15 day of August, 19 97

_____
County Judge

X 4-20
19480

Job Site #2

# AFFIDAVIT TO COUNTY ACCOUNT

COUNTY OF LAWRENCE    WALNUT RIDGE, ARKANSAS _____ August _____, 19 97

TO _____ Mart's Welding _____ DR.

| | | | | | |
|---|---|---|---|---|---|
| | See attached | 735 | 00 | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**THE STATE OF ARKANSAS**  } SS.

**COUNTY OF LAWRENCE**

I, _____, do solemnly swear that the foregoing claim is just and correct, and that no part thereof has been paid previously; that the services charged for, or materials furnished, as the case may be, were actually rendered or furnished, and that the charges made therefor do not exceed the amount allowed by law, or customary charges, for similar services or materials furnished, when estimated and paid in lawful money of the United States; and that said accounts, claims, demands or fee bills are not enlarged, enhanced or otherwise made greater in consequence of, or by reason of any estimated, supposed or real depreciation in the value of county warrants.

Signed _____

Sworn to and subscribed before me this _____ day of _____, 19 _____

Clerk

By _____ D.C.

**Mart's Welding**
2688 Highway 117
Black Rock, AR 72415
(870) 528-3558

471537

DATE _____ 19___

| NAME | Lawrence Co Road | | | | | | |
|------|------|------|------|------|------|------|------|
| ADDRESS | | | | | ORDER NUMBER | | |
| CITY Walnut Ridge | STATE Ar | | ZIP | | | | |
| SOLD BY | CASH | C.O.D. | CHARGE | ON ACCT. | MDSE. RETD. | PAID OUT | |

| QUAN. | DESCRIPTION | PRICE | | AMOUNT | |
|-------|-------------|-------|---|--------|---|
| 1 | Old Tank Case for Brick | | | | |
| at | Cash River | | | | |
| 8-7 | milage + 5 hr | | | 125 | 00 |
| 8 | m___ + 4 hr | | | 115 | 00 |
| 9 | miles + 8 hr | | | 85 | 00 |
| 10 | mileage + 8 hr | | | 85 | 00 |
| 11 | mileage + 5 hr | | | 25 | 00 |
| | | | | 735 | 00 |
| | Thanks | | | | |

**Mart's Welding**
2688 Highway 117
Black Rock, AR 72415
(870) 528-3558

RECEIVED BY   Job # 2   ✓

| | |
|---|---|
| TAX | |
| TOTAL | |

FM 2-4705 REV

No. *19582*

*Northside Steel*

Address _____

School Dist. *NSC 100*

Vs.

**LAWRENCE COUNTY**

## CLAIM FOR ALLOWANCE

BILLIE GAIL, Dunlap County Clerk

Filed on the _____ day of _____, 19 ___

SEP 15 1997

_____ Clerk

By _____ D.C.
8|9|10|11|12|13|14|5

Examined and allowed the sum of

_____ $27,243.25

Less Fed. Withholding Tax ......... $ _____

Less Social Security .............. $ _____

Less State Tax ................... $ _____

Less Retirement .................. $ _____

Less Insurance ................... $ _____

Less Garnishment ............... $ _____

Net ......................... $27,243.25

# 22,799.00 of this
is for Job Site #2

This *15* day of *September*, 19*97*

_____
County Judge

4-23
19582

## AFFIDAVIT TO COUNTY ACCOUNT

COUNTY OF LAWRENCE     WALNUT RIDGE, ARKANSAS _____ September, 19 97

TO *Northside Steel* _____ DR. _____

| | | | | | |
|---|---|---|---|---|---|
| | | See attached | 27243 | 25 | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

THE STATE OF ARKANSAS ⎱
                        ⎰ SS.
COUNTY OF LAWRENCE ⎱

I, _____ , do solemnly swear that the foregoing claim is just and correct, and that no part thereof has been paid previously; that the services charged for, or materials furnished, as the case may be, were actually rendered or furnished, and that the charges made therefor do not exceed the amount allowed by law, or customary charges, for similar services or materials furnished, when estimated and paid in lawful money of the United States; and that said accounts, claims, demands or fee bills are not enlarged, enhanced or otherwise made greater in consequence of, or by reason of any estimated, supposed or real depreciation in the value of county warrants.

BILLIE GAIL, Dunlap County Clerk

Signed _____

SEP 15 1997

Sworn to and subscribed before me this _____ day of _____, 19_____

AM     DOCUMENT FILED     PM     Clerk
8 9 10 11 12 1 2 3 4 5

By _____ D.C.

# STATEMENT
| 8/31/97 |

NORTHSIDE STEEL
P O BOX 806
JONESBORO, AR. 72403
1-800-553-1373
(501) 932-0121
(501) 972-1521

Lawrence County Road Department
County Court House
Walnut Ridge, Ar. 72476

| PURCHASES | | | | |
|---|---|---|---|---|
| DATE | INVOICE NO | CHARGES | CREDITS | BALANCE |
| 4/14/97 | Inv. 51000 | $340.80 | | $340.80 |
| 4/15/97 | Inv. 51345 | $5,693.00 | | $6,033.80 |
| 4/15/97 | Inv. 51347 | $5,693.00 | | $11,726.80 |
| 5/20/97 | ck 19122 | | $340.80 | $11,386.00 |
| 5/21/97 | Inv. 51404 | $5,693.00 | | $17,079.00 |
| 6/5/97 | Inv. 51564 | $5,693.00 | | $22,772.00 |
| 6/11/97 | Inv. 51626 | $5,693.00 | | $28,465.00 |
| 6/18/97 | ck 19227 | | $17,079.00 | $11,386.00 |
| 6/24/97 | Inv. 51739 | $4,334.50 | | $15,720.50 |
| 6/25/97 | Inv. 51753 | $4,752.50 | | $20,473.00 |
| 6/26/97 | Inv. 51770 | $1,384.50 | | $21,857.50 |
| 6/27/97 | Inv. 51783 | $5,693.00 | | $27,550.50 |
| 7/2/97 | Inv. 51829 | $5,699.75 | | $33,250.25 |
| 7/15/97 | Inv. 51926 | $1,372.26 | | $34,622.51 |
| 7/16/97 | Inv. 51929 | $4,444.25 | | $39,066.76 |
| 7/23/97 | ck 19345 | | $27,550.50 | $11,516.26 |
| 8/6/97 | Inv. 52135 | $5,699.75 | | $17,216.01 |
| 8/6/97 | Inv. 52136 | $5,699.75 | | $22,915.76 |
| 8/8/97 | Inv. 52169 | $5,699.75 | | $28,615.51 |
| 8/8/97 | Inv. 52170 | $5,699.75 | | $34,315.26 |
| 8/19/97 | ck 19465 | | $11,516.26 | $22,799.00 |
| 8/25/97 | Inv. 52308 | $4,444.25 | | $27,243.25 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*Job 2*
*22,799.00*

*Job 10*
*$ 4,444.25*

PLEASE PAY THIS AMOUNT     $27,243.25

NORTHSIDE ST.
P.O. Box 806
JONESBORO, ARKANSAS 72403-0806

52135

(501) 932-0121   (800) 553-1373

TO *Lawrence Cty Rd. Dept.*

*Walnut Ridge, AR*

TERMS: *Net at once*

| | DATE |
|---|---|
| | 8-6-97 |
| | CUSTOMER ORDER NO. |
| | Alex |
| | SALESPERSON |
| | T.M. |
| | VIA |
| | OUR TRUCK Sadgwick |

WEST Cache Job

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 60' | 8'6" X 60' X2 Ter. Cor. Wall #1 | 5400 | 00 |
| | 4 5/8 AR.TAX | 249 | 75 |
| | CTY TAX | 25 | 00 |
| | CITY TAX | 25 | 00 |
| | | 5699 | 75 |

Job 2

DUPLICATE

*Thank You!*

NORTHSIDE S...
P.O. Box 806
JONESBORO, ARKANSAS 72403-...

52136

(501) 932-0121   (800) 553-1373

TO *Lawrence Cdy Rd Dept*

*Walnut Ridge, AR*

**TERMS:** *Net at once*

| DATE | 8-6-97 |
| --- | --- |
| CUSTOMER ORDER NO. | *Alex* |
| SALESPERSON | *T.M.* |
| VIA | *Our Truck Sedgwick* |

*West Cache Job*

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
| --- | --- | --- | --- |
| 60' | 8½" X 60' x ½ Filler Tank Cal #2 Hull | | 5400 00 |
| | | 11⅝% AR TAX | 249 75 |
| | | CTY TAX | 25 00 |
| | | CTY TAX | 25 00 |
| | | | 5799 75 |

*Job 2*

DUPLICATE

*Thank You!*

# INVOICE

NORTHSIDE ST.
P.O. Box 806
JONESBORO, ARKANSAS 72403-0806

**52169**

(501) 932-0121   (800) 553-1373

TO *Lawrence Cty Rd. Dept.*

*Walnut Ridge, AR*

TERMS: *wtd at once*

| DATE | 8-8-97 |
|---|---|
| CUSTOMER ORDER NO. | *ALex* |
| SALESPERSON | *F.M.* |
| VIA | *Our Truck* *W. of AR.* *Sdgewick* *West Cache* *Job* |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 60' | 8'6" X 60' X ½ THICK TANK CAR HULL #3 | 5400 | 00 |
| | 4½ AR.TAX | 249 | 75 |
| | CTY TAX | 25 | 00 |
| | City TAX | 25 | 00 |
| | | 5699 | 75 |

Job 2

*Dennis Morgan*

DUPLICATE

*Thank You!*

**INVOICE**

NORTHSIDE STL
P.O. Box 806
JONESBORO, ARKANSAS 72403-0806

52170

(501) 932-0121   (800) 553-1373

Lawrence Cty Rd. Dept.

| DATE | 8-8-97 |
| CUSTOMER ORDER NO. | At-X |
| SALESPERSON | T.M. |

Walnut Ridge, AR

**TERMS:** Paid at once

VIA  OUR TRUCK  NEAR Sedgewick
WEST CACHE JOB

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 60' | 8'6" X 60' X ½ THICK TANK CAR #1 HULL | 5400 | 00 |
| | 4½% AR. TAX | 249 | 75 |
| | CTY TAX | 25 | 00 |
| | CITY TAX | 25 | 00 |
| | | 5699 | 75 |

JOB 2

Dennis Morgan

DUPLICATE    ○    *Thank You!*    ○

19453

*Certified Welding & Steel*

Address _____

School Dist. CER 200

vs.

## LAWRENCE COUNTY

# CLAIM FOR ALLOWANCE

**FILED**

BILLIE GAIL Dunlap County Clerk

Filed on the _____ day of _____ . 19 ____

AUG 1 5 1997                    Clerk

By ____ ass  DOCUMENT FILED  PM  D.C.
AM
8|9|10|11|12|1|2|3|4|5

Examined and allowed the sum of

$364.00

Less Fed. Withholding Tax . . . . . . . . $ _____

Less Social Security . . . . . . . . . . . . $ _____

Less State Tax . . . . . . . . . . . . . . . . $ _____

Less Retirement . . . . . . . . . . . . . . . $ _____

Less Insurance . . . . . . . . . . . . . . . . $ _____

Less Garnishment . . . . . . . . . . . . . . $ _____

Net . . . . . . . . . . . . . . . . . . . . . . . . $364.00

$319.01 of this is for Job Site #2

This  15  day of  August . 19 97

_____
County Judge

4-20
19453

# AFFIDAVIT TO COUNTY ACCOUNT

**COUNTY OF LAWRENCE     WALNUT RIDGE, ARKANSAS** _August_ , 19_97_

TO _Certified Welding + Steel_ DR. _____

| | | | | | |
|---|---|---|---|---|---|
| | | See attached | 364 | 00 | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**THE STATE OF ARKANSAS** }
   } **SS.**
**COUNTY OF LAWRENCE** }

I, _____, do solemnly swear that the foregoing claim is just and correct, and that no part thereof has been paid previously; that the services charged for, or materials furnished, as the case may be, were actually rendered or furnished, and that the charges made therefor do not exceed the amount allowed by law, or customary charges, for similar services or materials furnished, when estimated and paid in lawful money of the United States;   and that said accounts,  claims, demands or fee bills are not enlarged, enhanced or otherwise made greater in consequence of, or by reason of any estimated, supposed or real depreciation in the value of county warrants.

BILLIE GAIL Dunlap County

Signed _____ 1997

Sworn to and subscribed before me this _____ day of _____ PM 19_____

_____ Clerk

By _____ D.C.

**CERTIFIED WELDING & STEEL**
P.O. BOX 861
WALNUT RIDGE, ARKANSAS 72476-0861
Phone: Shop: (501) 886-5401 • Res.: (501) 886-7677

STATEMENT

Date _____

To _____

_____

| Materials: | | Job Description | |
|---|---|---|---|
| | $ | | 136.00 |
| | | | 162.5 |
| | | | 5.00 |
| | | | |
| | | JoB #2 | |
| | | | |
| | | | |
| | | | |
| | | Dennis Mason | |
| | | | |
| | | | |
| | | | |
| Total Materials | $ | | |

Not responsible for defective materials or welding. This is a liability release.

Customer  Signature _____

| Date Paid — | | Material | |
|---|---|---|---|
| | | Labor | |
| Check # | | Subtotal | |
| | | Tax | |
| | | Total | $319.01 |

No. *19572*

*Certified Welding &*
*Steel*

Address _____

School Dist. *C E R 2CO*

Vs.

LAWRENCE COUNTY

## CLAIM FOR ALLOWANCE

BILLIE GAIL, Dunlap County Clerk

Filed on the _____ day of _____ , 19

SEP 15 1997

_____ Clerk

By _____ AM   DOCUMENT FILED   PM _____ D.C.
8 9 10 11 12 1 2 3 4 5

Examined and allowed the sum of

_____ $ *372.72*

Less Fed. Withholding Tax ......... $ _____

Less Social Security .............. $ _____

Less State Tax ................... $ _____

Less Retirement ................. $ _____

Less Insurance .................. $ _____

Less Garnishment ............... $ _____

Net .................. $ *372.72*

This *15* day of *September*, 19 *97*

_____
County Judge

*# 32246 of this is*
*for Job Site # 2*

*4-23*
*19572*

## AFFIDAVIT TO COUNTY ACCOUNT

September, 19 97

COUNTY OF LAWRENCE        WALNUT RIDGE, ARKANSAS

TO *Certified Welding & Steel*                        DR.

| | | | | |
|---|---|---|---|---|
| See attached | | 34 | 335 | 23 |
| | | 31 | 37 | 49 |
| | | total | 372 | 72 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

THE STATE OF ARKANSAS )
                                          ) SS.
COUNTY OF LAWRENCE )

I, _____ , do solemnly swear that the foregoing claim is just and correct, and that no part thereof has been paid previously; that the services charged for, or materials furnished, as the case may be, were actually rendered or furnished, and that the charges made therefor do not exceed the amount allowed by law, or customary charges, for similar services or materials furnished, when estimated and paid in lawful money of the United States; and that said accounts, claims, demands or fee bills are not enlarged, enhanced or otherwise made greater in consequence of, or by reason of any estimated, supposed or real depreciation in the value of county warrants.

FILED
BILLIE GAIL Dunlap County Clerk

Signed _____

Sworn to and subscribed before me this _____ day of _____ SEP 1 5 1997 , 19 ____

AM        DOCUMENT FILED        PM   Clerk
8│9│10│11│12│2│3│4│5

By _____ D.C.

**CERTIFIED WELDING & STEEL**
P.O. BOX 861
WALNUT RIDGE, ARKANSAS 72476-0861
Phone: Shop: (501) 886-5401 • Res.: (501) 886-7677

STATEMENT

Date _____ 7 _ 7

To _____

_____

_____

| Materials: | $ | Job Description | |
|---|---|---|---|
| | | 17' 3x2 *plate* | |
| | | Ø 4x2½ '' | 15.00 |
| | | 80' 1 x 3 '' | 1.00 |
| | | 26 # 2 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Total Materials** | $ | | |

Not responsible for defective materials or welding. This is a liability release.

Customer Signature _____

| Date Paid — | | Material | |
|---|---|---|---|
| | | Labor | |
| Check # | | Subtotal | 279.95 |
| | .07/25 | Tax | 19.73 |
| | | Total | $299.33 |

**CERTIFIED WELDING & STEEL**

P.O. BOX 861
WALNUT RIDGE, ARKANSAS 72476-0861
Phone: Shop: (501) 886-5401 • Res.: (501) 886-7677

STATEMENT

Date

To

| Materials: | | Job Description | |
|---|---|---|---|
| | $ . | 20' 2x5" FLT | 25. |
| | . | | |
| | . | | |
| | . | | |
| | . | | |
| | . | | |
| | . | | |
| | . | | |
| | . | | |
| | . | | |
| | . | | |
| | . | | |
| | . | | |
| Total Materials | $ . | | |

Not responsible for defective materials or welding. This is a liability release.

Customer Signature   _B-cutSmith_

| | |
|---|---|
| Date Paid — | |
| Check # | |
| Material | |
| Labor | |
| Subtotal | |
| Tax | |
| Total | $ 26.78 |

02-4400-36

No. 19585

Vulcan Materials Company

Address VU1500

School Dist.

Vs.

**LAWRENCE COUNTY**

## CLAIM FOR ALLOWANCE

FILED

BILLIE GAIL, Dunlap County Clerk

Filed on the _____ day of _____, 19__

SEP 15 1997

_____ Clerk

By _AM_   DOCUMENT FILED   _PM_   D.C.

8|9|10|11|12|1|2|3|4|5

Examined and allowed the sum of

$ 10,647.11

Less Fed. Withholding Tax ......... $ _____

Less Social Security ............... $ _____

Less State Tax ................... $ _____

Less Retirement ................. $ _____

Less Insurance .................. $ _____

Less Garnishment .............. $ _____

Net ...................... $ 10,647.11

This _15_ day of _September_, 19_97_

_____ County Judge

$2,600.51 of this
is for Job Site #9

$7575.14 of this
is for Job Site #2

4-23
19585

# AFFIDAVIT TO COUNTY ACCOUNT

**COUNTY OF LAWRENCE**     WALNUT RIDGE, ARKANSAS _____ September _____, 19 97

TO _Vulcan Materials Company_ DR. _____

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | See attached | | 10647 | 11 | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**THE STATE OF ARKANSAS** }
**COUNTY OF LAWRENCE** } SS.

I, _____ , do solemnly swear that the foregoing claim is just and correct, and that no part thereof has been paid previously; that the services charged for, or materials furnished, as the case may be, were actually rendered or furnished, and that the charges made therefore do not exceed the amount allowed by law, or customary charges, or similar services or materials furnished, when estimated and paid in lawful money of the United States; and that said accounts, claims, demands or fee bills are not enlarged, enhanced or otherwise made greater in consequence of, or by reason of any estimated, supposed or real depreciation in the value of county warrants.

Signed _____

Sworn to and subscribed before me this _____ day of _____, 19_____

_____ Clerk

By _____ D.C.



**Vulcan**
Materials Company

OLD TO:

LAWRENCE COUNTY
COUNTY COURTHOUSE
WALNUT RIDGE AR 72476

HIPPED TO:   COUNTY ROADS

MISC. TAX. LIST PRICE (3)

PAYMENT DUE  09/15/97

PLEASE RETURN ONE COPY OF
INVOICE WITH PAYMENT TO:
VULCAN MATERIALS CO
SOUTHERN DIV
P O BOX 1000
DEPT 374
MEMPHIS, TN 38148-0374

TAX EXEMPT I.D.:

| INVOICE NO | INVOICE DATE | DEPT. | CUSTOMER NO. | OUR ORDER NO. | SALESMAN | CUSTOMER ORDER NO. | | LADING | FREIGHT |
|---|---|---|---|---|---|---|---|---|---|
| 51110 | 08/30/97 | 701 | 0730500 | 180154 | 028 | | | | COLLECT |

| DATE SHIPPED | CAR / TICKET NO. | PROD. CODE | DESCRIPTION | UNIT | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| 08/04 | 392638 | 240 | B-STONE | TONS | 16.23 | 04.230 | 68.65 |
| | 392639 | | | | 14.55 | 04.230 | 61.55 |
| | 392655 | | | | 14.35 | 04.230 | 60.70 |
| | 392658 | | | | 14.83 | 04.230 | 62.73 |
| | 392667 | | | | 16.17 | 04.230 | 68.40 |
| | 392677 | | | | 16.39 | 04.230 | 69.33 |
| | 392692 | | | | 15.69 | 04.230 | 66.37 |
| | | | | | 108.21* | | 457.73* |
| 08/08 | 393170 | 025 | QRY RUN RR | TONS | 16.10 | 04.320 | 69.55 |
| | 393172 | | | | 15.62 | 04.320 | 67.48 |
| | 393175 | | | | 14.41 | 04.320 | 62.25 |
| | 393180 | | | | 14.14 | 04.320 | 61.08 |
| | 393182 | | | | 14.26 | 04.320 | 61.60 |
| | 393227 | | | | 14.10 | 04.320 | 60.91 |
| | 393228 | | | | 14.76 | 04.320 | 63.76 |
| | 393229 | | | | 13.23 | 04.320 | 57.15 |
| | 393231 | | | | 13.35 | 04.320 | 57.67 |
| | 393233 | | | | 15.45 | 04.320 | 66.74 |
| | 393243 | | | | 14.68 | 04.320 | 63.42 |
| | 393251 | | | | 18.01 | 04.320 | 77.80 |
| | 393252 | | | | 14.04 | 04.320 | 60.65 |
| | 393253 | | | | 16.45 | 04.320 | 71.06 |
| | 393254 | | | | 16.57 | 04.320 | 71.58 |
| | | | | | 225.17* | | 972.70* |
| 08/11 | 393307 | 025 | QRY RUN RR | TONS | 13.52 | 04.320 | 58.41 |
| | 393308 | | | | 15.01 | 04.320 | 64.84 |
| | 393309 | | | | 13.34 | 04.320 | 57.63 |
| | 393311 | | | | 14.89 | 04.320 | 64.32 |
| | 393322 | | | | 16.06 | 04.320 | 69.38 |
| | 393323 | | | | 13.35 | 04.320 | 57.67 |
| | 393324 | | | | 14.31 | 04.320 | 61.82 |
| | 393326 | | | | 14.80 | 04.320 | 63.94 |
| | 393331 | | | | 16.70 | 04.320 | 72.14 |
| | 393332 | | | | 15.15 | 04.320 | 65.45 |
| | 393334 | | | | 13.62 | 04.320 | 58.84 |
| | 393335 | | | | 13.08 | 04.320 | 56.51 |
| | 393341 | | | | 12.96 | 04.320 | 55.99 |
| | 393349 | | | | 15.77 | 04.320 | 68.13 |
| | | | | | 14.75 | 04.320 | 63.72 |
| | | | | | 15.?? | 04.320 | 55.04 |
| | 393351 | | | | 14.86 | 04.320 | 67.44 |
| | 393382 | | | | 15.18 | 04.320 | 64.20 |
| | 393383 | | | | 15.94 | 04.320 | 65.58 |
| | 393386 | | | | 15.56 | 04.320 | 68.86 |
| | 393394 | | | | 12.86 | 04.320 | 67.22 |
| | | | | | 14.80 | 04.320 | 55.56 |
| | | | | | 13.47 | 04.320 | 63.94 |
| | | | | | 348.33* | | 58.19 |
| | | | | | | | 1504.82* |
| 8/18 | 394047 | 025 | QRY RUN RR | TONS | 13.10 | 04.320 | 56.59 |
| | 394048 | | | | 13.87 | 04.320 | 59.92 |
| | 394049 | | | | 11.97 | 04.320 | 51.71 |

Payable in full by the 15th of
th following month of shipment.
ment due date above.

weights are furnished by sworn agents of the Southern/Western Weighing and Inspection Bureau. These weights are to govern settlements.

month or part thereof that amounts due hereunder are not paid when due, there will be added to such amount a late charge computed at the
% per month or at the maximum rate permitted under applicable law or at such lesser rate as may be established by Vulcan from time to time.
shall pay all costs of collection including a reasonable attorney's fee for services rendered by suit or otherwise in collecting past due in

| TOTAL | CONTINUED-01 |
|---|---|
| Discount Allowable: | |

# Vulcan Materials Company

SOLD TO:
LAWRENCE COUNTY
COUNTY COURTHOUSE
WALNUT RIDGE AR 72476

SHIPPED TO:   COUNTY ROADS

MISC. TAX. LIST PRICE (3)

PAYMENT DUE  09/15/97

PLEASE RETURN ONE COPY OF
INVOICE WITH PAYMENT TO:
VULCAN MATERIALS CO
SOUTHERN DIV
P O BOX 1000
DEPT 374
MEMPHIS, TN 38148-0374

TAX EXEMPT I.D.:

| INVOICE NO | INVOICE DATE | DEPT | CUSTOMER NO. | OUR ORDER NO. | SALESMAN | CUSTOMER ORDER NO. | LADING | FREIGHT |
|---|---|---|---|---|---|---|---|---|
| 151110 | 08/30/97 | 701 | 0730500 | 180154 | 028 | | | COLLECT |

| DATE SHIPPED | CAR / TICKET NO. | PROD. CODE | DESCRIPTION | UNIT | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| 08/18 | 394050 | 025 | QRY RUN RR | TONS | 13.07 | 04.320 | 56.46 |
| | 394065 | | | | 12.86 | 04.320 | 55.56 |
| | 394089 | | | | 14.30 | 04.320 | 61.78 |
| | 394090 | | | | 16.10 | 04.320 | 69.55 |
| | 394091 | | | | 15.35 | 04.320 | 66.31 |
| | 394092 | | | | 13.06 | 04.320 | 56.42 |
| | 394093 | | | | 13.62 | 04.320 | 58.84 |
| | 394109 | | | | 13.25 | 04.320 | 57.24 |
| | 394111 | | | | 14.22 | 04.320 | 61.43 |
| | 394112 | | | | 14.61 | 04.320 | 63.12 |
| | 394115 | | | | 14.53 | 04.320 | 62.77 |
| | 394119 | | | | 13.66 | 04.320 | 59.01 |
| | | | | | 207.57* | | 896.71* |
| 08/19 | 394168 | 025 | QRY RUN RR | TONS | 13.96 | 04.320 | 60.31 |
| | 394169 | | | | 12.90 | 04.320 | 55.73 |
| | 394170 | | | | 13.58 | 04.320 | 58.67 |
| | 394171 | | | | 11.67 | 04.320 | 50.41 |
| | 394172 | | | | 11.70 | 04.320 | 50.54 |
| | 394212 | | | | 13.27 | 04.320 | 57.33 |
| | 394214 | | | | 13.79 | 04.320 | 59.57 |
| | 394215 | | | | 13.14 | 04.320 | 56.76 |
| | 394216 | | | | 15.07 | 04.320 | 65.10 |
| | 394239 | | | | 14.68 | 04.320 | 63.42 |
| | 394240 | | | | 16.07 | 04.320 | 69.42 |
| | 394241 | | | | 13.36 | 04.320 | 57.72 |
| | 394248 | | | | 15.87 | 04.320 | 68.56 |
| | 394267 | | | | 12.01 | 04.320 | 51.88 |
| | 394269 | | | | 11.50 | 04.320 | 49.68 |
| | 394270 | | | | 12.51 | 04.320 | 54.04 |
| | 394271 | | | | 11.45 | 04.320 | 49.46 |
| | 394285 | | | | 15.24 | 04.320 | 65.84 |
| | 394286 | | | | 14.42 | 04.320 | 62.29 |
| | 394288 | | | | 15.84 | 04.320 | 68.43 |
| | 394289 | | | | 14.91 | 04.320 | 64.41 |
| | 394291 | | | | 12.04 | 04.320 | 52.01 |
| | 394300 | | | | 10.71 | 04.320 | 46.27 |
| | 394301 | | | | 09.51 | 04.320 | 41.08 |
| | 394302 | | | | 09.26 | 04.320 | 40.00 |
| | 394303 | | | | 10.21 | 04.320 | 44.11 |
| | | | | | 338.67* | | 1463.04* |
| 08/20 | 394315 | 025 | QRY RUN RR | TONS | 14.77 | 04.320 | 63.81 |
| | 394316 | | | | 13.17 | 04.320 | 56.89 |
| | | | | | 13.21 | 04.320 | 57.07 |
| | | | | | 15.81 | 04.320 | 68.30 |
| | | | | | 14.46 | 04.320 | 62.47 |
| | | | | | 15.54 | 04.320 | 67.13 |
| | 394332 | | | | 15.47 | 04.320 | 66.83 |
| | 394333 | | | | 14.16 | 04.320 | 61.17 |
| | 394341 | | | | 14.73 | 04.320 | 63.63 |
| | 394344 | | | | 12.68 | 04.320 | 54.78 |
| | 394345 | | | | 14.62 | 04.320 | 63.16 |
| | 394346 | | | | 12.20 | 04.320 | 52.70 |
| | 394378 | | | | 10.34 | 04.320 | 44.67 |

TERMS: Payable in full by the 15th of each month following month of shipment. See payment due date above.

Product weights are furnished by sworn agents of the Southern/Western Weighting and Inspection Bureau. These weights are to govern settlements.

For each month or part thereof that amounts due hereunder are not paid when due, there will be added to such amount a late charge computed at the rate of 1½% per month or at the maximum rate permitted under applicable law or at such lesser rate as may be established by Vulcan from time to time. Customer shall pay all costs of collection including a reasonable attorney's fee for services rendered or otherwise in collecting past due invoices.

TOTAL  CONTINUED-02

Discount Allowable:

Page     of

**VULCAN**
Materials Company

SOLD TO:
LAWRENCE COUNTY
COUNTY COURTHOUSE
WALNUT RIDGE AR 72476

PAYMENT DUE  09/15/97

PLEASE RETURN ONE COPY OF
INVOICE WITH PAYMENT TO:
VULCAN MATERIALS CO
SOUTHERN DIV
P O BOX 1000
DEPT 374
MEMPHIS, TN 38148-0374

SHIPPED TO:  COUNTY ROADS

MISC. TAX. LIST PRICE (3)

TAX EXEMPT I.D.:

| INVOICE NO. | INVOICE DATE | DEPT | CUSTOMER NO. | OUR ORDER NO. | SALESMAN | CUSTOMER ORDER NO. | LADING | FREIGHT |
|---|---|---|---|---|---|---|---|---|
| 151110 | 08/30/97 | 701 | 0730500 | 180154 | 028 | | | COLLECT |

| DATE SHIPPED | CAR / TICKET NO. | PROD. CODE | DESCRIPTION | UNIT | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| 08/20 | 394379 | 025 | QRY RUN RR | TONS | 10.61 | 04.320 | 45.84 |
| | 394380 | | | | 10.15 | 04.320 | 43.85 |
| | 394381 | | | | 11.28 | 04.320 | 48.73 |
| | 394388 | | | | 12.65 | 04.320 | 54.65 |
| | 394393 | | | | 12.36 | 04.320 | 53.40 |
| | 394397 | | | | 13.30 | 04.320 | 57.46 |
| | 394400 | | | | 13.48 | 04.320 | 58.23 |
| | 394401 | | | | 13.00 | 04.320 | 56.16 |
| | 394406 | | | | 12.19 | 04.320 | 52.66 |
| | 394416 | | | | 12.55 | 04.320 | 54.22 |
| | 394418 | | | | 09.92 | 04.320 | 42.85 |
| | 394420 | | | | 11.73 | 04.320 | 50.67 |
| | 394422 | | | | 12.68 | 04.320 | 54.78 |
| | 394425 | | | | 13.79 | 04.320 | 59.57 |
| | 394427 | | | | 11.18 | 04.320 | 48.30 |
| | 394428 | | | | 12.35 | 04.320 | 53.35 |
| | 394430 | | | | 11.87 | 04.320 | 51.28 |
| | 394433 | | | | 11.06 | 04.320 | 47.78 |
| | | | | | 397.31 * | | 1716.39 * |
| 08/21 | 394458 | 025 | QRY RUN RR | TONS | 11.59 | 04.320 | 50.07 |
| | 394459 | | | | 13.71 | 04.320 | 59.27 |
| | 394460 | | | | 13.31 | 04.320 | 57.50 |
| | 394465 | | | | 13.67 | 04.320 | 59.05 |
| | 394468 | | | | 14.01 | 04.320 | 60.52 |
| | 394469 | | | | 16.41 | 04.320 | 70.89 |
| | 394470 | | | | 17.23 | 04.320 | 74.43 |
| | 394476 | | | | 13.42 | 04.320 | 57.97 |
| | 394479 | | | | 13.75 | 04.320 | 59.40 |
| | 394482 | | | | 12.83 | 04.320 | 55.43 |
| | 394483 | | | | 13.73 | 04.320 | 59.31 |
| | 394495 | | | | 13.65 | 04.320 | 58.97 |
| | 394501 | | | | 18.02 | 04.320 | 77.85 |
| | 394515 | | | | 13.79 | 04.320 | 59.57 |
| | 394527 | | | | 15.77 | 04.320 | 68.13 |
| | 394531 | | | | 12.58 | 04.320 | 54.35 |
| | 394533 | | | | 14.13 | 04.320 | 61.04 |
| | 394535 | | | | 13.60 | 04.320 | 58.75 |
| | 394536 | | | | 13.28 | 04.320 | 57.37 |
| | 394538 | | | | 13.29 | 04.320 | 57.41 |
| | 394543 | | | | 13.31 | 04.320 | 57.50 |
| | 394556 | | | | 11.79 | 04.320 | 50.93 |
| | 394558 | | | | 12.27 | 04.320 | 53.01 |
| | 394559 | | | | 14.20 | 04.320 | 61.34 |
| | 394570 | | | | 13.79 | 04.320 | 59.57 |
| | 394569 | | | | 11.46 | 04.320 | 49.51 |
| | 394573 | | | | 12.79 | 04.320 | 55.25 |
| | 394574 | | | | 11.82 | 04.320 | 51.06 |
| | 394575 | | | | 12.27 | 04.320 | 53.01 |
| | | | | | 395.47 * | | 1708.42 * |
| 08/22 | 445525 | 025 | QRY RUN RR | TONS | 12.08 | 04.320 | 52.19 |
| | 445527 | | | | 12.10 | 04.320 | 52.27 |
| | 445529 | | | | 12.05 | 04.320 | 52.06 |
| | 445531 | | | | 15.05 | 04.320 | 65.02 |

TERMS: Payable in full by the 15th of
each month following month of shipment.
See payment due date above.

Product weights are furnished by sworn agents of the Southern/Western Weighing and Inspection Bureau. These weights are to govern settlements.

or each month or part thereof that amounts due hereunder are not paid when due, there will be added to such amount a late charge computed at the
rate of 1½% per month or at the maximum rate permitted under applicable law or at such lesser rate as may be established by Vulcan from time to time.
Customer shall pay all costs of collection including a reasonable attorney's fee for services rendered by suit or otherwise in collecting past due invoices

| TOTAL | CONTINUED-03 |
|---|---|
| Discount Allowable | |
| | Page        of |

**VULCAN** Materials Company

TO   LAWRENCE COUNTY
     COUNTY COURTHOUSE
     WALNUT RIDGE AR 72476

PED TO   COUNTY ROADS

     MISC. TAX. LIST PRICE (3)

PAYMENT DUE  09/15/97

PLEASE RETURN ONE COPY OF
INVOICE WITH PAYMENT TO:
     VULCAN MATERIALS CO
     SOUTHERN DIV
     P O BOX 1000
     DEPT 374
     MEMPHIS, TN 38148-0374

TAX EXEMPT I.D.:

| INVOICE NO | INVOICE DATE | DEPT | CUSTOMER NO | OUR ORDER NO | SALESMAN | CUSTOMER ORDER NO | LADING | FREIGHT |
|---|---|---|---|---|---|---|---|---|
| 1110 | 08/30/97 | 701 | 0730500 | 180154 | 028 | | | COLLECT |

| SHIPPED | CAR / TICKET NO. | PROD. CODE | DESCRIPTION | UNIT | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| 8/22 | 445534 | 025 | QRY RUN RR | TONS | 12.13 | 04.320 | 52.40 |
| | 445537 | | | | 11.85 | 04.320 | 51.19 |
| | 445540 | | | | 11.83 | 04.320 | 51.11 |
| | 445541 | | | | 13.39 | 04.320 | 57.84 |
| | 445544 | | | | 11.77 | 04.320 | 50.85 |
| | 445552 | | | | 12.67 | 04.320 | 54.73 |
| | 445559 | | | | 12.75 | 04.320 | 55.08 |
| | 445560 | | | | 11.67 | 04.320 | 50.41 |
| | 445564 | | | | 11.93 | 04.320 | 51.54 |
| | 445566 | | | | 12.98 | 04.320 | 56.07 |
| | 445575 | | | | 11.61 | 04.320 | 50.16 |
| | 445581 | | | | 13.51 | 04.320 | 58.36 |
| | 445582 | | | | 16.47 | 04.320 | 71.15 |
| | 445592 | | | | 12.13 | 04.320 | 52.40 |
| | 445599 | | | | 14.94 | 04.320 | 64.54 |
| | 445600 | | | | 12.78 | 04.320 | 55.21 |
| | 445601 | | | | 13.91 | 04.320 | 60.09 |
| | 445609 | | | | 12.58 | 04.320 | 54.35 |
| | 445610 | | | | 12.31 | 04.320 | 53.18 |
| | 445617 | | | | 11.31 | 04.320 | 48.86 |
| | 445619 | | | | 11.29 | 04.320 | 48.77 |
| | 445625 | | | | 11.91 | 04.320 | 51.45 |
| | | | | | 329.00* | | 1421.28* |
| | | 4.620% | AR STATE-TAX = | 468.52 | | | |
| | | 1.500% | 038 CNTY-TAX = | 37.50 | | TOTAL TAX ... | 506.02 |

Payable in full by the 15th of
th following month of shipment.
ent due date above

eights are furnished by sworn agents of the Southern/Western Weighing and Inspection Bureau. These weights are to govern settlements.

onth or part thereof that amounts due hereunder are not paid when due, there will be added to such amount a late charge computed at the
- per month or at the maximum rate permitted under applicable law or at such lesser rate as may be established by Vulcan from time to time
shall pay all costs of collection including a reasonable attorney's fee for services rendered by suit or otherwise in collecting past due invoices

| TOTAL | 10,647.11 |
|---|---|
| Discount Allowable. | |

Page  04 of 04

02-4400-34

No. _19580_

_Wiedger B(rothers)_

Address _____

School Dist. _HBR 170_

Vs.

LAWRENCE COUNTY

## CLAIM FOR ALLOWANCE

Filed on the _15 1997_ day of _____ , 19___

| AM | DOCUMENT FILED | PM | Clerk |
|----|----------------|-----|-------|
| By | 8|9|10|11|12|1|2|3|4|5 | | |
| | | | D.C. |

Examined and allowed the sum of

_____ $ _6580.77_

Less Fed. Withholding Tax .......... $ _____

Less Social Security ............... $ _____

Less State Tax .................... $ _____

Less Retirement ................... $ _____

Less Insurance .................... $ _____

Less Garnishment .................. $ _____

Net ............................... $ _6580.77_

This _15_ day of _September, 1997_

_____
County Judge

4.23
19580

_Job Site #2_

_Concrete $ 6,392.23_
_Wire     $  188.54_
          _$6,580.77_

# AFFIDAVIT TO COUNTY ACCOUNT

COUNTY OF LAWRENCE      WALNUT RIDGE, ARKANSAS _____ September , 19 97

TO _Hedges Brothers_ _____ DR. _____

| | | | see attached | 6580 | 77 | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

THE STATE OF ARKANSAS }

COUNTY OF LAWRENCE } SS.

I, _____ , do solemnly swear that the foregoing claim is just and correct, and that no part thereof has been paid previously; that the services charged for, or materials furnished, as the case may be, were actually rendered or furnished, and that the charges made therefor do not exceed the amount allowed by law, or customary charges, for similar services or materials furnished, when estimated and paid in lawful money of the United States; and that said accounts, claims, demands or fee bills are not enlarged, enhanced or otherwise made greater in consequence of, or by reason of any estimated, supposed or real depreciation in the value of county warrants.

Signed _____ SEP 20 1997 _____

Sworn to and subscribed before me this _____ day of _____ 19 _____

BILLIE GAIL, Dunlap County Clerk

AM   DOCUMENT FILED   PM
8 9 10 11 12 1 2 3 4 5                                   Clerk

By _____ D.C.

145

# LAWRENCE COUNTY QUORUM COURT
## JOURNAL OF PROCEEDINGS
July 11, 2016
5:30 p.m.

The Lawrence County Quorum Court met in regular session at 5:30
p.m. in the courtroom of the Lawrence County Courthouse with
Judge Freeman presiding.  Members present:  Briner, Clark,
Crafton, K. Jones, Latham, Moore, Richey and Wayland.  Absent:
None.

Minutes of the previous meeting, which were provided in advance,
were accepted by motion of Moore, seconded by Richey.  By voice
vote the motion carried.

A letter of resignation from Justice Jim Jones was read, K.
Jones moved, seconded by Moore to accept the resignation of
Justice Jim Jones.

The court went into executive session to discuss this
resignation and to discuss the person that they would like to
ask the governor to appoint to fill Mr. Jones' position.
Justices made the decision to ask that Glen Smith and Pardo
Roberts names be sent to the governor for consideration.

A resolution accepting the resignation of Justice Jim Jones was
discussed. Roll call vote For:  Briner, Clark, Crafton, K.
Jones, Latham, Moore, Richey and Wayland.  Against: None.

The Treasurers report, which was provided in advance was
discussed, Jones moved, seconded by Moore to approve the report
as presented.  By voice vote the motion carried.

745

All business being complete, Jones moved, seconded by Moore for adjournment.

The Lawrence County Quorum Court stands in adjournment.


_____
Dale Freeman, County Judge

_____
Tina Stowers, County Clerk

744

Roll call vote For:  Briner, Clark, Crafton, K. Jones, Latham,
Moore, Richey and Wayland.  Against: None.

A resolution was read to allow the Circuit Clerk to apply for a
grant from the Automated Records System Fund managed by the
Association of Arkansas Counties and administered by the
Automated Records Systems Fund Committee, this grant will be in
the amount of $87,000.00.  Richey moved, seconded by Moore to
approve the resolution as read.  Roll call vote For:  Briner,
Clark, Crafton, K. Jones, Latham, Moore, Richey and Wayland.
Against: None.

Justices discussed a Disaster City to be erected at the Walnut
Ridge Airport, this facility would be used by ASU to train
emergency personnel for emergency situations.  Latham moved,
seconded by Clark to support this plan.  By voice vote the
motion carried.

An ordinance was read that would set the regular Quorum Court
meeting at 7:00 pm on the second Monday of each month.  Crafton
moved, seconded by Wayland to accept the ordinance as read.
Roll call vote For:  Crafton, Moore and Wayland.  Against:
Briner, Clark, Jones, Latham and Richey.  By a voter of 3 to 5
the ordinance failed and will remain at 5:30 pm on the second
Monday of each month.

An ordinance was discussed that would give county employees a 3%
raise.  After some discussion as to whether or not to make this
retro-active or not Clark moved, seconded by Moore to make this
raise retro-active.  The ordinance was read with the 3% being
retro-active back to January 1, 2016 and part of the raise being
given in a lump sum payment, Clark moved, seconded by Moore to
approve the ordinance as read.  Roll call vote For:  Briner

54 Sq. Yards
4 - rolls concrete wire

8-26-97
Job 2





# INVOICE

READY MIX, INC.
P.O. Box 754
Walnut Ridge, Arkansas 72476
501 892-5212

Plant in Pocahontas, Walnut Ridge, Paragould, Corning, Piggott

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION: REB

PO#:

| SHIPPING TERMS | ORDER NO. | CUST NO. | SOLD BY | SHIP VIA | SHIP DATE | INV. DATE | INVOICE NO. | REFERENCE |
|---|---|---|---|---|---|---|---|---|
| NET/10TH | 25066 | 40060 | WR | 745 | DELIVERY | 08/26/97 | 08/26/97 | 25066 |

| PRODUCT CO | QUANTITY ORDERED | SHIPPED | LEFT ON | DESCRIPTION | PRICE | UNIT | NET |
|---|---|---|---|---|---|---|---|
| 3000 | 9 | 9 | | 3000 PSI CONCRETE | 58.50 | CYD | 526.50 |

SUB TOTAL          526.50

AR SALES TAX          24.35
LA COUNTY TAX          7.90
WR CITY TAX          5.27
TOTAL          564.02

Water added on Job: _____ Gallons Length ___ Time at ___ Authorized By _____

SIGNATURE



**Fronger Brothers**
READY MIX, INC.
P.O. Box 756
POCAHONTAS, ARKANSAS 72455
(501) 89...50...

Plants in Pocahontas, Walnut Ridge, Paragould, Corning, Piggott

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION: REB

PDB:

| SHIPPING TERMS | ORDER NO. | CUST NO. | SOLD BY | SHIP VIA | SHIP DATE | INV. DATE | INVOICE NO. | REFERENCE |
|---|---|---|---|---|---|---|---|---|
| NET/10TH | 25066 | 40060 WR | T- | DELIVERY | 08/26/97 | 08/26/97 | 25066 | |

| PRODUCT CO. | ORDERED | SHIPPED | B/O | DESCRIPTION | PRICE | UNITS | NET |
|---|---|---|---|---|---|---|---|
| 3000 | 9 | 9 | | 3000 PSI CONCRETE | | | |

Job #2
Brent Smith

AR
LA
WR

Water added on Job _____

Pallons ____

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION:ALBERT                              PO#:

NET/10TH      25087 40060 WR          DELIVERY 08/26/9708/26/97 25087

3000                    9      9     3000 PSI CONCRETE    58.50  CYD    526.50

SUB TOTAL       526.50

AR SALES TAX     24.35
LA COUNTY TAX     7.90
WR CITY TAX       5.27
TOTAL           564.02

Water added on Job: ___   Gallons:



READY MIX, Inc.
P.O. Box 754
POCAHONTAS, ARKANSAS 72455
(501) 892-8212

Plants in Pocahontas, Walnut Ridge, Paragould, Corning, Piggott

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION: REB

PO#:

| SHIPPING TERMS | ORDER NO. | CUST NO. | SOLD BY | SHIP VIA | SHIP DATE | INV. DATE | INVOICE NO. | REFERENCE |
|---|---|---|---|---|---|---|---|---|
| NET/10TH | 25067 | 40060 | WR P4 7 | DELIVERY | 08/26/97 | 08/26/97 | 25067 | |

| PRODUCT | ORDERED | SHIPPED | DESCRIPTION | PRICE | UNITS | NET |
|---|---|---|---|---|---|---|
| 3000 | 9 | 9 | 3000 PSI CONCRETE | | | |

Job # 2
Brent Smith

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION:RON G

PO#:

NET/10TH      25068 40060 WR        DELIVERY 08/26/9708/26/97 25068

3000                      9        9      3000 PSI CONCRETE      50.50  CYD    526.50
                                                                              --------
                                                           SUB TOTAL          526.50

                                                           AR SALES TAX        24.35
                                                           LA COUNTY TAX        7.90
                                                           WR CITY TAX          5.27
                                                           TOTAL              564.02

Water added on Job.



READY MIX, INC.
P.O. Box 757
POCAHONTAS, ARKANSAS 72465
(501) 892-5211

Plants at Pocahontas, Walnut Ridge, Paragould, Corning, Black Rock

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION:RON G

| SHIPPING TERMS | ORDER NO. | CUST NO. | ROUTE | SHIP VIA | SHIP DATES | INV DATE | INVOICE NO. | REFERENCE |
|---|---|---|---|---|---|---|---|---|
| NET/10TH | 25068 | 40060 WR | | DELIVERY | 08/26/97 | 08/26/97 | 25068 | |

| PRODUCT CO | ORDERED | SHIPPED | BACK | | | UNITS | | |
|---|---|---|---|---|---|---|---|---|
| 30000 | 9 | 9 | | 3000 PSI CONCRETE | | | | |

AR
LA
WR

Water added to job      Gallons 5½

LAWRENCE CO. ROAD DEPT                    CC-717
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

SHIP INSTRUCTION:FELIX                       PO#:

NET/10TH       25076 40060 WR        DELIVERY 08/26/9708/26/97 25076

| 3000 | | 9 | 9 | 3000 PSI CONCRETE | 58.50 | CYD | 526.50 |
|------|--|---|---|------------------|-------|-----|--------|

| | |
|---|---|
| SUB TOTAL | 526.50 |
| AR SALES TAX | 24.35 |
| LA COUNTY TAX | 7.90 |
| WR CITY TAX | 5.27 |
| TOTAL | 564.02 |

Water added on Job ___  gallons



LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION:FELIX

POH:

| SHIPPING TERM | | | | INV DATE | WORK NO. | REFERENCE |
|---|---|---|---|---|---|---|
| NET/10TH | 25076 40060 WR | DELIVERY 08/26/97 | 08/26/97 | 25076 | | |

| PRODUCT | ORDERED | | | PRICE | UNITS | NET |
|---|---|---|---|---|---|---|
| 3000 | 9 | 9 | 3000 PSI CONCRETE | | | |

JOB #2
Brent Smith

AR
LA
WR

Water added on Job.          Gate



Ready Mix, Inc.
P O Box 714
Walnut Ridge, Arkansas 72455
(501) 892-5212

Pocahontas, Walnut Ridge, Paragould, Corning, Piggott

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION:JAY                                    PO#:

| SHIPPING TERM | ORDER NO | P.O. NO | SHIP VIA | SHIP DATE | INV. DATE | INVOICE | REFERENCE |
|---|---|---|---|---|---|---|---|
| NET/10TH | 25078 40060 WR | | DELIVERY | 08/26/97 | 08/26/97 | 25078 | |

| PRODUCT CO. | QUANTITY ORDERED | SHIPPED | SHIP BO | DESCRIPTION | | UNIT | |
|---|---|---|---|---|---|---|---|
| 3000 | 9 | 9 | | 3000 PSI CONCRETE | 58.50 | CYD | 526.50 |

SUB TOTAL         526.50

AR SALES TAX      24.35
LA COUNTY TAX      7.90
WR CITY TAX        5.27
TOTAL            564.02

Water added on Job: _____ Gallons _____   Received By _____
                                              SIGNATURE



# Hedger Brothers

## READY MIX, INC.
P.O. Box 754
POCAHONTAS, ARKANSAS 72455
(501) 892-5212

Plants in Pocahontas, Walnut Ridge, Paragould, Corning, Piggott

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION: JAY

PO#:

| SHIPPING TERMS | ORDER NO. | CUST. NO. | SOLD BY | SHIP VIA | SHIP DATE | INV. DATE | INVOICE NO. | REFERENCE |
|---|---|---|---|---|---|---|---|---|
| NET/10TH | 25078 | 40060 | WR | DELIVERY | 08/26/97 | 08/26/97 | 25078 | |

| PRODUCT CO. | QUANTITY | | | DESCRIPTION | PRICE | UNITS | NET |
|---|---|---|---|---|---|---|---|
| | ORDERED | SHIPPED | B.O. | | | | |
| 3000 | 9 | 9 | | 3000 PSI CONCRETE | | | |

JOB #2

Beauty(illeg)

AR
LA
WR

Water added on Job: _____ Gallons Tandem     Truck out _____     Authorized By _____

NOTICE TO CONSIGNEE
When truck at your request is driven on premises to make delivery, we will not be responsible for damage.
The account is now due. A Finance Charge not to exceed the maximum allowable by state law will be assessed to all accounts over 30 days old.



INVOICE

READY MIX, INC.
P.O. Box 4
WALNUT RIDGE, ARKANSAS 72455
(501) 892-12

Plants in Pocahontas, Walnut Ridge, Paragould, Corning, Piggo

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION:RON C

| SHIPPING TERMS | ORDER NO. | | | | SHIP VIA | | | DATE INVC NO | REFERENCE |
|---|---|---|---|---|---|---|---|---|---|
| NET/10TH | 25088 40060 WR | | | DELIVERY 08/26/97 | 08/26/97 | | | 25088 | |

| PRODUCT CO. | | QUANT. ORDERED | QUANT. SHIPPED | | DESCRIPTION | PRICE | | NET |
|---|---|---|---|---|---|---|---|---|
| 3000 | | 9 | 9 | 3000 PSI CONCRETE | 58.50 | CYD | | 526.50 |

SUB TOTAL      526.50

AR SALES TAX      24.35
LA COUNTY TAX       7.90
WR CITY TAX       5.27
TOTAL      564.02

Water added on Jo'_____ Gallons by _____   _____   Received By _____
SIGNATURE



## *Hedger Brothers*

### READY MIX, INC.
P.O. Box 754
POCAHONTAS, ARKANSAS 72455
(501) 892-5212

Plants in Pocahontas, Walnut Ridge, Paragould, Corning, Piggott

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION:RON C

PO#:

| SHIPPING TERMS | ORDER NO. | CUST. NO. | SOLD BY | SHIP VIA | SHIP DATE | INV. DATE | INVOICE NO. | REFERENCE |
|---|---|---|---|---|---|---|---|---|
| NET/10TH | 25088 | 40060 | WR | DELIVERY | 08/26/97 | 08/26/97 | 25088 | |

| PRODUCT CO. | ORDERED | SHIPPED | B.O. | DESCRIPTION | PRICE | UNITS | NET |
|---|---|---|---|---|---|---|---|
| 3000 | 9 | 9 | | 3000 PSI CONCRETE | | | |

OOB #2

Brent

AR
LA
WR

Water added on Job: _____ Gallons _____ _____ _____ Authorized By _____
SIGNATURE

NOTICE TO CONSIGNEE:

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

SHIP INSTRUCTION:REB                          PO#:

NET/10TH      25129 40060 WR      PICK-UP   08/26/9708/26/97 25129

WIRE                    4      4    6X6 CONCRETE WIRE     44.00   EA      176.00
                                                                      ----------
                                                      SUB TOTAL        176.00

                                                AR SALES TAX             8.14
                                                LA COUNTY TAX            2.64
                                                WR CITY TAX              1.76
                                                TOTAL                  188.54



**Ready Mix, Inc.**
P.O. Box 754
Pocahontas, Arkansas 72455
(501) 892-5212

Plants in Pocahontas, Walnut Ridge, Paragould, Corning, others

| | |
|---|---|
| LAWRENCE CO. ROAD DEPT<br>COURT HOUSE BUILDING<br>WALNUT RIDGE, AR 72476 | LAWRENCE CO. ROAD DEPT<br>COURT HOUSE BUILDING<br>WALNUT RIDGE, AR 72476 |

SHIP INSTRUCTIONS: REP                            PO#:

| SHIPPING TERMS | ORDER NO. | CUST. NO. | SOLD BY | SHIP VIA | SHIP DATE | INV. DATE | INVOICE NO. | REFERENCE |
|---|---|---|---|---|---|---|---|---|
| NET/10TH | 25129 | 40060 | WR | PICK-UP | 08/26/97 | 08/26/97 | 25129 | |

| PRODUCT CO | ORDERED | SHIPPED | DESCRIPTION | PRICE | NET |
|---|---|---|---|---|---|
| WIRE | 4 | 4 | 6X6 CONCRETE WIRE | | |

AR
LA
WR

8-27-97
48 sq. yds.

Job 2

```
LAWRENCE CO. ROAD DEPT              CC-717
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476
```

SHIP INSTRUCTION:ALBERT                    PO#:

NET/10TH      25165 40060 WR        DELIVERY 08/27/9708/27/97 25165

```
3000              9       9    3000 PSI CONCRETE     58.50   CYD    526.50
                                                                  ----------
                                              SUB TOTAL            526.50

                                           AR SALES TAX             24.35
                                           LA COUNTY TAX             7.90
                                           WR CITY TAX              5.27
                                              TOTAL                564.02
```

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION:ALBERT

PO#:

REFERENCE

NET/10TH     25165 40060 WR

DELIVERY 08/27/9708/27/97 25165

3000                    9       9        3000 PSI CONCRETE

George Rne Joe # 2



**INVOICE**

Hedger Brothers
READY MIX, Inc
P.O. Box 754
Pocahontas, Arkansas 72455
(501) 892-5217

Plants in Pocahontas, Walnut Ridge, Paragould, Corning, Piggott

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION: RON C

PO#:

| SHIPPING TERMS | ORDER NO | CUST | ID | SHP VIA | SHIP DATE | INVA DATE | INVOICE NO | REFERENCE |
|---|---|---|---|---|---|---|---|---|
| NET/10TH | 25167 | 40060 | WR | DELIVERY | 08/27/97 | 08/27/97 | 25167 | |

| PRODUCT CO | QUANTITY ORDERED | QUANTITY SHIPPED | DESCRIPTION | PRICE | UNIT | NET |
|---|---|---|---|---|---|---|
| 3000 | 9 | 9 | 3000 PSI CONCRETE | 58.50 | CYD | 526.50 |

SUB TOTAL 526.50

AR SALES TAX 24.35
LA COUNTY TAX 7.90
WR CITY TAX 5.27
TOTAL 564.02

Water added on Job: _____ Gallons. Truck _____ Authorized By _____
SIGNATURE



*Redger Brothers*

## READY MIX, INC.
P.O. Box 754
POCAHONTAS, ARKANSAS 72455
(501) 892-5212

Plants in Pocahontas, Walnut Ridge, Paragould, Corning, Piggott

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION:RON C

| SHIPPING TERMS | ORDER NO. | CUST. NO. | SOLD BY | SHIP VIA | SHIP DATE | INV. DATE | INVOICE NO. | REFERENCE |
|---|---|---|---|---|---|---|---|---|
| NET/10TH | 25167 | 40060 | WR | | DELIVERY 08/27/97 | 08/27/97 | 25167 | |

| PRODUCT CO. | ORDERED | SHIPPED | B/O | DESCRIPTION | PRICE | UNITS | NET |
|---|---|---|---|---|---|---|---|
| 3000 | 9 | 9 | | 3000 PSI CONCRETE | | | |



AR
LA
WR

Water added on Job:_____ Gallons Time at_____ Temp at_____   Authorized By _____

NOTICE TO CONSIGNEE:
When truck at your request is driven on premises to make delivery, we will not be responsible for damages
This account is now due. A Finance Charge not to exceed the maximum allowable by state law will be

```
LAWRENCE CO. ROAD DEPT              CC-717
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476
```

SHIP INSTRUCTION:RON G                          PO#:

NET/10TH        25168 40060 WR      DELIVERY 08/27/9708/27/97 25168

3000                  9      9      3000 PSI CONCRETE   58.50  CYD   526.50
                                                                    ---------
                                                       SUB TOTAL    526.50

                                              AR SALES TAX    24.35
                                              LA COUNTY TAX    7.90
                                              WR CITY TAX      5.27
                                                 TOTAL       564.02

Water added on Job:



READY MIX, Inc.
P.O. Box 754
POCAHONTAS, ARKANSAS 72455
(501) 892-5212

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION: RON G #48

PO#:

| SHIPPING TERMS | | | | SLIP WR | SHIP DATE | INV. DATE | INVOICE NO. | REFERENCE |
|---|---|---|---|---|---|---|---|---|
| NET/10TH | 25168 | 40060 | WR | DELIVERY | 08/27/97 | 08/27/97 | 25168 | |

| | | 9 | 9 | 3000 PSI CONCRETE | | | |
|---|---|---|---|---|---|---|---|
| 3000 | | | | | | | |

AR
LA
WR

*George Rose Job #2*

Water added on Job _____ Gallons



LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC--717

SHIP INSTRUCTION: RON C

PO#:

| SHIPPING TERMS | ORDER NO./CUST NO. | | | | | REFERENCE |
|---|---|---|---|---|---|---|
| NET/10TH | 25183 40060 WR | | | DELIVERY 08/27/97 08/27/97 25183 | | |

| PRODUCT CO. | QTY ORDERED | QTY SHIPPED | | DESCRIPTION | PRICE | UNIT | NET |
|---|---|---|---|---|---|---|---|
| 3000 | 9 | 9 | | 3000 PSI CONCRETE | 58.50 | CYD | 526.50 |

SUB TOTAL           526.50

AR SALES TAX         24.35
LA COUNTY TAX         7.90
WR CITY TAX           5.27
TOTAL               564.02

Water added on Job: _____ Gallons

SIGNATURE



## *Hedger Brothers*

### READY MIX, INC.
P.O. BOX 754
POCAHONTAS, ARKANSAS 72455
(501) 892-5212

Plants in Pocahontas, Walnut Ridge, Paragould, Corning, Piggott

# INVOICE

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION:RON C

| SHIPPING TERMS | ORDER NO. | CUST. NO. | SOLD BY | SHIP VIA | SHIP DATE | INV. DATE | INVOICE NO. | REFERENCE |
|---|---|---|---|---|---|---|---|---|
| NET/10TH | 25183 | 40060 | WR | DELIVERY | 08/27/97 | 08/27/97 | 25183 | |

| PRODUCT CO. | QUANTITY ORDERED | SHIPPED | B.O. | DESCRIPTION | PRICE | UNITS | NET |
|---|---|---|---|---|---|---|---|
| 3000 | 9 | 9 | | 3000 PSI CONCRETE | | | |

AR
LA
WR

*JOB #2*
*Brant Smith*

Water added on Job: _____ Gallons. Time in _____ Time out _____ Authorized By _____

SIGNATURE

NOTICE TO CONSIGNEE
When truck at your request is driven on premises to make delivery we will not be responsible for damage.
This account is now due.

LAWRENCE CO. ROAD DEPT                    CC-717
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

SHIP INSTRUCTION:ALBERT                         PO#:

NET/10TH        25188 40060 WR        DELIVERY 08/27/9708/27/97 25188

| 3000 | 9 | 9 | 3000 PSI CONCRETE | 58.50 | CYD | 526.50 |

| | SUB TOTAL | 526.50 |
|---|---|---|
| AR SALES TAX | | 24.35 |
| LA COUNTY TAX | | 7.90 |
| WR CITY TAX | | 5.27 |
| TOTAL | | 564.02 |

READY MIX, INC.
P.O. Box 754
POCAHONTAS, ARKANSAS

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION:ALBERT

PO#:

| SHIP TERMS | | | | DATE | INVOICE NO. | REFERENCE |
|---|---|---|---|---|---|---|
| NET/10TH | 25188 40060 WR | | DELIVERY 08/27/97 | 08/27/97 | 25188 | |

| PRODUCT CO. | | | | PRICE | UNITS | NET |
|---|---|---|---|---|---|---|
| 30010 | 9 | 9 | 3000 PSI CONCRETE | | | |

AR
LA
WR

JOB # 2

_(signature)_

LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CC-717

SHIP INSTRUCTION:RON C                    PO#:

NET/10TH      25202 40060 WR      DELIVERY 08/27/9708/27/97 25202

3000              3      3    3000 PSI CONCRETE   58.50  CYD   175.50
                                                 ---------
                                   SUB TOTAL       175.50

Claim # 19580                      AR SALES TAX       8.12
                                   LA COUNTY TAX      2.63
                                   WR CITY TAX        1.76
                                   TOTAL            188.01

Water added on Job:



LAWRENCE CO. ROAD DEPT
COURT HOUSE BUILDING
WALNUT RIDGE, AR 72476

CT-717

SHIP INSTRUCTION:RON C                        POH:

NET/10TH:      25202 40060 WR        DELIVERY 08/27/9708/27/97 25202

3000                    3        3      3000 PSI CONCRETE

JOB #2

Water added on Job:

# Exhibit 4

CHARLES   FRIERSON,   III
ATTORNEY AT LAW
406 SOUTHWEST DRIVE · P.O. BOX 8007
JONESBORO, ARKANSAS 72403

PHONE (870) 932-6643
FAX (870) 931-0692

March 28, 2001

Hon. Alex Latham, County Judge
Lawrence County Courthouse
West Main Street
Walnut Ridge, AR  72476

Dear Judge Latham:

I write at the request of the Commissioners of Cache River Drainage District of Craighead, Jackson and Lawrence Counties.  The Commissioners have been approached by several landowners who have farming interests adjoining West Cache Ditch as it runs through Lawrence County.  These landowners claim substantial crop losses over the past two years or so due to increased water levels which they believe has been caused by the replacement of a wooden bridge with some culverts where West Cache turns south just south of Sedgwick.  I believe the County installed these culverts some two or three years ago.

The Commissioners have inspected this situation during recent water levels and did find that the water level upstream from this crossing was substantially higher than that downstream.  It is obvious that the structures are not adequate to permit the full flow of water.

It is the duty of this District, which has complete responsibility for West and East Cache, to see that flowage is not interfered with, whether by man-made objects or by natural siltation or drifts.

We, therefore, call upon the County to inspect this situation and to take remedial steps.  Whether this can be accomplished by further enlarging or rearranging the pipes that were installed or whether it requires the replacement of a wooden structure with more complete clearance, we do not know and will leave that to your judgment.

Since we are rapidly approaching crop season and the complaining parties do seem to have a point, we encourage your prompt attention to the matter.

Very truly,

Charles Frierson, III

CF:bg

cc:      Commissioners, Cache River Drainage District

Exhibit 4

# Exhibit 5

# Dick Jarboe

Attorney at Law

213 West Main
P.O. Box 549
Walnut Ridge, Arkansas 72476-0549

Telephone 870-886-3535
Fax 870-886-5901

April 27, 2001

Mr. Noyl Houston
Attorney at Law
P. O. Box 3076
Jonesboro, AR 72403

RE:  Lawrence County Bridge

Dear Noel:

I am currently the County Civil Attorney and I have visited with Judge Latham about your letter of April 17, 2001.  I am going to go out and look at this situation.

The bridge which was replaced was apparently condemned by the State and the only way the County could make this road accessible was with the railroad tank cars.  This was the only way that we could fix the situation.

I doubt very seriously that there is anything that the County is going to be able to do but I am going out with the Judge and take a look at that next week.

Very truly,

DICK JARBOE

DJ:ydp

pc:  Judge Alex Latham

Exhibit 5

NOYL HOUSTON

## Houston Law Firm, P.A.

ATTORNEYS AT LAW
A PROFESSIONAL ASSOCIATION
923 UNION
P.O. BOX 3076
JONESBORO, ARKANSAS 72403

TELEPHONE (870) 935-3730

TELEFAX (870) 935-0006

April 30, 2001

Mr. Dick Jarboe
Attorney at Law
P. O. Box 549
Walnut Ridge, AR  72476-0549



Re:  Cleo Watkins, Jr., et al v. Latham

Dear Dick:

Thank you for your letter of April 27th.

The way to fix the problem would be to install a proper bridge that does not impede the flow of the water.  A bridge could be constructed next to the concrete structure, and then the concrete be removed.  That way, those south of the bridge would have access while the new bridge is being constructed, assuming it does not take too long.

Please let me hear from you at your earliest convenience.

Best regards.

Sincerely,

Noyl Houston

NH/lw

cc:  Mr. Cleo Watkins, Jr.
     Mr. Kenneth Gibson
     Dr. Tom Bishop

# Exhibit 6

# Dick Jarboe

**Attorney at Law**

213 West Main
P.O. Box 549
Walnut Ridge, Arkansas 72476-0549

Telephone 870-886-3535
Fax 870-886-5901

May 3, 2001

Mr. Noyl Houston
Attorney at Law
P. O. Box 3076
Jonesboro, AR 72403

     RE:  Cleo Watkins, Jr., et al v. Latham

Dear Noyl:

     I have visited with the County Judge and the County has absolutely no funds to put in a concrete bridge.  I really don't know where that leaves us except to tell you that we don't have the money to solve your problem. According to the County Judge the railroad cars are not creating the problem anyway.

                Very truly,

                DICK JARBOE

DJ:ydp

pc:  Mr. Alex Latham

Exhibit 6

# Exhibit 7

DeLOACH/je/0737

CEMVM-CO-1

WATSON

CEMVM-CO-1

CASH

CEMVM-CO-1

CORNAGHIE

CEMVM-OC

KRUEGER

CEMVM-DE



**DEPARTMENT OF THE ARMY**
MEMPHIS DISTRICT, CORPS OF ENGINEERS
167 NORTH MAIN STREET B-202
MEMPHIS, TENNESSEE 38103-1894

June 8, 2001

REPLY TO
ATTENTION OF:

Regulatory Branch

Mr. Alex Latham
Lawrence County Judge
Lawrence County Courthouse
Walnut Ridge, Arkansas  72476

Dear Mr. Latham:

This letter is in regard to your county's project located near Sedgwick, (Section 4, Township 15N, Range 2E) in Lawrence County, Arkansas, at approximate latitude 35 -57-52.1907 and longitude 90 -52-31.0112 on the Podo Creek 7.5 minute quadrangle map.  A county road bridge across Cache River Ditch was replaced with four boxcar culverts that impede and restrict flow. Hydraulic analysis indicates potential adverse flooding upstream.  The footprint of fill or direct adverse impact to waters of the U.S. is approximately 0.13 acres.   You are in violation of Sections 301 and 404 of the Clean Water Act (33 U.S.C. Sections 1311 and 1344).

Since a permit has not been issued, it is required under law that you remove the fills associated with the culverted road crossing by August 31, 2001:  You may construct a bridged crossing provided it meets the requirements of the enclosed Nationwide Permit No. 14 and the Nationwide Permit Conditions pursuant to Federal Register, Volume 65, Number 47, dated March 9, 2000. Please advise us if you request authorization under this nationwide permit.

It is unlawful for you to perform any work that may involve the discharge of material into waters of the United States. You are advised that the unauthorized work on the property described above may subject you to civil and/or criminal prosecution, including administrative penalties and/or restoration.  If further unauthorized work as described above is performed after receipt of the letter, immediate legal action will be initiated on behalf of the United States Government.

Your response to this letter is required to avoid further appropriate action. Submit your agreement or disagreement of this order within 20 calendar days to the attention of          .          at the above address.  If problems exist regarding the immediate removal of the bridge, please discuss this in your reply.

Exhibit 7

ENCL.(2)

2

Should you wish to discuss the matter, please contact Judy O. DeLoach at (901) 544-0737, and refer to File Number: 200109011/Cache 2001-011(JO).

Sincerely,

Original signed by
*Major Gile 6-22-01*

Daniel W. Krueger
Colonel, Corps of Engineers
District Engineer

Enclosures

Copy furnished:
EPA, Region VI, Dallas, TX (Troy Hill, 6WQ-EM)
USFWS, Conway, AR
Noel Houston, Houston Law Firm, PO Box 3076,
    Jonesboro, AR  72403

Exhibit 8



**DEPARTMENT OF THE ARMY**
MEMPHIS DISTRICT, CORPS OF ENGINEERS
167 NORTH MAIN STREET B-202
MEMPHIS, TENNESSEE 38103-1894

May 13, 2003

REPLY TO
ATTENTION OF:

Regulatory Branch

Honorable Alex Latham
Judge, Lawrence County
Lawrence County Courthouse
Walnut Ridge, Arkansas 72476

SUBJECT: Unauthorized County Road Bridge Across Cache River Ditch

Dear Judge Latham:

This letter is in regard to your county road crossing project near Sedgwick, Section 4, Township 15N, Range 2E in Lawrence County, Arkansas, at approximate latitude 35-57-52.1907 and longitude 90-52-31.0112 on the Podo Creek 7.5 minute quadrangle map. A compliance inspection was conducted on April 30, 2003. Based on the inspection, you are now considered in compliance with Sections 301 and 404 of the Clean Water Act (33 U.S.C. Sections 1311 and 1344).

Per our correspondence dated June 8, 2001, the bridge crossing meets the requirements of Nationwide Permit No. 14 provided that the enclosed conditions are met. Please pay special attention to the general permit condition number 21 (Management of Water Flows). The crossing shall be maintained and debris shall be removed as needed to allow for the passage of normal or expected high flows.

A copy of this letter has been furnished to the Natural Resources Conservation Service in Walnut Ridge, Arkansas; USFWS in Conway, Arkansas; EPA in Dallas, Texas; and Mr. Houston, Houston Law Firm, PO Box 3076, Jonesboro, Arkansas.

If you have questions, contact Gregg Williams at (901) 544-3852, and refer to File Number 200109011.

Sincerely,

*Larry D. Watson*

Larry D. Watson
Chief
Regulatory Branch

Enclosures

Exhibit 8

# Exhibit 9

**GEORGE CARNEY**
4709 NW 77th Street
Oklahoma City, OK 73132

September 16, 2009

Regulatory Branch
Department of the Army
Memphis District, Corps of Engineers
167 North Main St., B-202
Memphis, TN 38103 - 1894

RE: West Cache River Relief Ditch

Dear Sir:

In the attached letter dated July 24, 2002, I brought it to your attention that the low-water (culvert) bridge in SEC 4, T15N, R2E on the West Cache River Relief Ditch would have an adverse affect on the Cache River. The sandbar (or delta as referenced in the letter) at the relief ditch inlet and Cash River 3/8 mile south of US 63 is now three times larger than in 2002. The sand bar, created by silt accumulations in front of the low-water bridge, is diverting floodwaters against the east bank of Cache River in the NW/4, NW/4, SEC 2. A 40-feet section of bank is completely eroded away. BUT MORE ALARMING, the next 10-year size flood will reroute the river into the old river runs on the east side of Cache River and destroy 1,000s of acres of crop land on the east side of the river. The low-water bridge has to be removed and replaced with a bridge that will return the West Cache Relief Ditch to its original function and design.

Although the preservation of Cache River is our main concern, the low water bridge also negates the original function and design of the West Cache River Relief Ditch. The term "low-water bridge" is misleading; the height of the subject bridge is too high above the streambed to function as a "low-water bridge". (There is a major difference in the function of a "relief ditch" and "drainage ditch".) The relief ditch was probably designed to carry 10-year floods. Floods of this magnitude have occurred 4 times in the last 2 years. The present "low-water bridge" will not allow the flow that was provided by the original timber bridge. Additionally, during flooding periods the upstream side of the culverts are plugged with floating debris before the flood recedes, essentially creating a dam. During major floods the "dam" in the relief ditch puts excessive (and unnecessary) pressure on the banks of Cache River.

To support my observations I'm also attaching a site visit report with photos. Your considerations on this matter will be appreciated.

Sincerely,


George Carney
COL, USAR (Ret), EN

Exhibit 9

**GEORGE CARNEY**
4709 NW 77th Street
Oklahoma City, OK 73132

September 16, 2009

Honorable Alex Latham, County Judge
Lawrence County Courthouse
West Main Street
Walnut Ridge, AR 72467

RE: West Cache River Relief Ditch

Dear Judge Latham:

In the attached letter dated July 24, 2002, I brought it to your attention that the low-water (culvert) bridge in SEC 4, T15N, R2E on the West Cache River Relief Ditch would have an adverse affect on the Cache River. The sandbar (or delta as referenced in the letter) at the relief ditch inlet and Cash River 3/8 mile south of US 63 is now three times larger than in 2002. The sand bar, created by silt accumulations in front of the low-water bridge, is diverting floodwaters against the east bank of Cache River in the NW/4, NW/4, SEC 2. A 40-feet section of bank is completely eroded away. BUT MORE ALARMING, the next 10-year size flood will reroute the river into the old river runs on the east side of Cache River and destroy 1,000s of acres of crop land on the east side of the river. The low-water bridge has to be removed and replaced with a bridge that will return the West Cache Relief Ditch to its original function and design.

Although the preservation of Cache River is our main concern, the low water bridge also negates the original function and design of the West Cache River Relief Ditch. The term "low-water bridge" is misleading; the height of the subject bridge is too high above the streambed to function as a "low-water bridge". (There is a major difference in the function of a "relief ditch" and "drainage ditch".) The relief ditch was probably designed to carry 10-year floods. Floods of this magnitude have occurred 4 times in the last 2 years. The present "low-water bridge" will not allow the flow that was provided by the original timber bridge. Additionally, during flooding periods the upstream side of the culverts are plugged with floating debris before the flood recedes, essentially creating a dam. During major floods the "dam" in the relief ditch puts excessive (and unnecessary) pressure on the banks of Cache River.

To support my observations I'm also attaching a site visit report with photos. Your considerations on this matter will be appreciated.

Sincerely,


George Carney

## CACHE RIVER SANDBAR
"Sedimentation Study"
September 10, 2009

A sandbar in Cache River about 3/8 mile south of US Highway 63 has tripled in size since I first noticed the sandbar in 2002. The sandbar (N/2, NW/4, NW/4, T15N, R2E) is at the inlet (opening) on the river's west bank for the West Cache River Relief Ditch. During periods of flooding the sandbar diverts the river's current against the east bank of Cache River. In the NW/4, NW/4, SEC 2 about 40 feet of the east bank is essentially destroyed (see Point "X", Photo Plate 3). Only a few feet of topsoil remains between the river at flood stage and an "old river run" next to the eroded spoil bank. When the river breaks through this point, floodwaters will damaged 1000s of acres of cropland on the east side of Cache River, and even threaten AR 230.

In 2002, I wrote letters to the Lawrence County county judge and the Corps of Engineers advising them that a culvert/concrete bridge ("low-water bridge") built in the Relief Ditch to replace a timber trestle bridge is causing the sandbar (see Photo 2a, Plate 1). The "low-water bridge" (SEC 4, T15N, R2E) is about 1.5 miles downstream (west) from the ditch's inlet (opening) on the west bank of Cache River. No corrective action was taken.

On September 4, Mr. Shannon Davis (Cache River Drainage District Commissioner) and I visited the "low-water bridge" across the relief ditch (see Photo Plate 1). Mr. Davis asked that I write a letter to the commission on my concerns about the dangers created by the "low-water bridge" and explain how it has contributed to the deterioration of the banks of Cache River.

The low-water bridge is composed of four 8-foot diameter steel culverts and one 9-foot diameter steel culvert. The culverts are 40 feet long. The "low-water bridge" is about 54 feet long. There is about 16 feet from the roadbed to the streambed (see Photo 1a).

On September 7, Mr. Cleo Watkins and I inspected the "low-water bridge". We numbered the culverts from north to south 1-5. We discovered that the upstream end of culverts #2 and #3 (the lowest two culverts) were approximately 2 feet lower than their downstream ends. Additionally, the bottom of culverts #2 and #3 on the upstream side is about two feet above the streambed. Because the bottom of the culvert ends on the downstream side are two feet higher than the culvert ends on the upstream side, the "low-water bridge" has created a 4-foot sediment basin [2 feet from streambed to bottom of culvert ends on the upstream side + 2 feet from bottom of culvert ends on upstream side to bottom of culvert ends on downstream side]. Because the sediment (bed load) of floodwaters cannot pass through the culverts, the sediment is "backing" into Cache River at the relief ditch inlet and thus creating the sandbar in Cache River.

It is possible that the county work crew that installed the culverts assumed they were for a drainage ditch and set the culverts to drain east toward Cache River. They did not realized they were working on a relief ditch and the water was to flow west from Cache River and back into Cache River about 15 miles downstream.

Additionally, the flow capacity of the "low-water bridge" is about 40% of what the relief ditch was designed for. The flow capacity is even less during flooding when it is plugged by floodwater debris, which occurs during every major flood.

George Carney

**WEST CACHE RIVER RELIEF DITCH**
**"Low-water bridge" in Sec 4 T15N R2E**

09/07/09
Plate 1

1a. Downstream side (looking south east). The "low-water bridge" looks ok; its the upstream side that is causing the damage. Note: For this report, the five culverts are numbered left (north) to right (south) 1thru 5.



1b. "Low-water bridge" (2006 Aerial view). Note silt deposits east (right) of low-water bridge.



1c. Silt deposits (looking east) on upstream side of "low-water bridge". Note: the man in the yellow shirt has pushed a 4-foot pole through the silt to the top of the streambed. His left foot is on top of the pole.



1d. Center of "low-water bridge" (looking south). The landowner is pointing to the same pole in Photo 1c. The silt is 3'4" thick. The bottom of the silt deposit (original stream bed) is about 4 feet below the bottom of the downstream end of the two lowest culverts. **Note: the highest elevation of the two lowest culverts (in this case the downstream side) controls the thickness of the upstream silt deposits.**



**WEST CACHE RIVER RELIEF DITCH**
**"Low-water bridge" in Sec 4 T15N R2E**

09/07/09

Plate 2

2a. Upstream side (looking west).  The woody debris is the result of normal flooding.  **Note: The silt deposits between the "low-water bridge" and the sand bar in Cache River is caused because the culverts in the "low-water bridge" are set to high above the streambed.**



2b. Upstream side (looking south).  Man is standing on culvert #4. Using the tree in background as a reference, it is apparent the culverts are set lower on the upstream side than on the down stream side.



2c. Upstream side (looking south).  Man is standing on upstream end of culvert # 3.  (Culvert #3 is the lowest culvert.) Note: his hat is about 2 feet below the level of roadbed.

2d. Downstream side (looking south).  Man is standing on downstream end of culvert #3.  Note: his hat is about the level of the roadbed.  **(The downstream end of Culvert #3 is about 2 feet underline higher than the upstream end.)**



**WEST CACHE RIVER RELIEF DITCH**
"Low-water bridge" in Sec 4 T15N R2E

3. Cache River East Bank Erosion (NW/4, NW/4, SEC  2 T15N, R2E).  (2006 Photo). The inlet  (Point C) for West Cash River Relief Ditch is .5 mile south of US 63 Cache River Bridge.  Since 2006 floodwaters have severely eroded the east bank of Cache River from Point A to Point B. Note: in 2006 the east bank was essentially destroyed at Point X. It is probably that the next 10-year flood will cut across into the old river run at Point "X" and start a new channel that will cut south along the east side of Cache River all the way to AR 230, or farther.

George Carney
4709 NW 77th Street
Oklahoma city, OK   73132

July 24, 2002

Hon. Alex Latham, County Judge
Lawrence County Courthouse
West Main Street
Walnut Ridge, AR 72467

RE:  West Cache River Relief Ditch

Dear Judge Latham:

As a property owner in Lawrence County, I would like to bring to your attention a serious
drainage situation in our county – the deterioration of the design and function of the West
Cache River Relief Ditch between its source just south of Highway 63 and a downstream
low-water bridge. The low-water bridge blocks the flow of floodwater.

The deterioration of the Cache River Relief Ditch is adversely impacting our farmlands
and water quality.  When the Cache River is above flood stage the excess water that
should be going down the relief ditch floods out farms in both Lawrence and Craighead
Counties.

The West Cache River Relief Ditch is filling up with sediment, another direct result of
the low-water bridge.  The water in Cache River doesn't have to reach the high-water
mark for this process to occur as the low-water bridge acts as a sedimentation dam.  The
West Cache River Relief Ditch is so full of sediment that a delta is forming out into
Cache River at the relief ditch's inlet.  The delta is changing the course of the river,
which in turn will adversely affect irreplaceable wetlands on the east side of Cache River.
(Those wetlands, by the way, are accessed in Lawrence County).

We must protect our agriculture resources and water quality. The grateful citizens of our
county will appreciate your timely attention to this matter.

Sincerely,

George Carney
George Carney

# Exhibit 10



Exhibit 11



Exhibit 12

15 May, 2001

To: ▮▮▮▮▮▮▮▮ , Regulatory Branch, USACE Memphis District
From: ▮▮▮▮▮▮▮ , Hydraulics Branch
Via: ▮▮▮▮▮▮ , Hydraulics Branch

Subj:   WEST CACHE RIVER DITCH RURAL ROAD CROSSING

A cursory analysis of the rural roadway crossing of the West Cache River Ditch has been completed.  It is located near Sedgwick, (Section 4 Township 15N Range 2E) in Lawrence County, Arkansas, at approximate latitude 35 –57-52.1907 and longitude 90 – 52-31.0112 on the Podo Creek 7.5 minute quadrangle map.  An existing county road bridge across the West Cache River Ditch was replaced with four boxcar culverts (8' diameter).

**Analysis of Change in Water Surface Elevations for Bridge and Culvert Crossings**

Analysis of the previous conditions and existing culverts indicates potential adverse flooding upstream.  One year flows result in a 0.3 of a foot increase in upstream flow lines due to the culverts.  Bank-full flow occurs between the one and two-year flow event and results in a 0.5 foot increase in flow lines due to the culverts, which is considered significant upstream impacts.  Also, one culvert appears to be partially distorted with a damaged inlet and one other has a damaged inlet, which could further reduce flow capacity through the culverts.  Since this analysis shows induced damages upstream of the culverts, it is felt that the culverts were not adequately sized.  Information should have be provided showing calculations used in the design.  The information should have included a surveys of the existing culverts and road crossing, a survey of the previously existing bridge if available, and channel data that could be used to model water surface elevations.

Flowmaster by Haestad Methods was used to calculate the flow occurring at bank full conditions, which was about 247ft, NGVD.  The cross section geometry was input and calibrated in Flowmaster.  The resulting flow was 779cfs at bank-full for previous conditions.

CulvertMaster by Haestad Methods was used to analyze the flow through the culverts and the resulting headwater.  Four culverts, eight-foot diameter, were modeled using 1.01-year, bank full, and 2-year flow quantities.  The tailwater elevation (downstream water surface elevation) was based on the existing backwater model information.  The roadway was modeled as an embankment 50ft wide at the toe and 3:1 side slopes.  The roadbed toe elevation was 237ft.  The roadbed surface was set at elevation 245.5ft, which attempts to replicate the 'dip' as the road crosses the ditch.  This produces a conservative headwater elevation using a bank-full elevation of 247ft.  The road will be overtopped and weir flow will be modeled before reaching bank-full conditions, thereby reducing headwater elevations.  The roadbed surface was modeled at this elevation because a survey of the new crossing was not available.

Exhibit 12
ENCL. (1)

Flows 2-year and greater are large enough to cause out of bank flooding conditions regardless of the culverts and were not analyzed. CulvertMaster results for the 1-year flows and bank full flows are summarized below.

**Existing Conditions: Culverts**

|  | 1.01 year | Bank Full |
|---|---|---|
| **Flow, cfs** | 604 | 779 |
| **WS Elev, ft** | 245.98 | 247.47 |

Comparing the existing culvert crossing against the previous bridge crossing flowlines shows an increased headwater elevation occurring behind the culvert crossing. These values are .3ft for the 1.01 flow condition and .5ft for the bank full condition (bank full occurs at elevation 247ft).

This analysis shows that the culverts have an effect on water surface elevations in the location of the bridge. Culverts should have been sized to closely match the flow capacity and conveyance capability of the bridge that was replaced, which could help reduce the upstream water surface elevation to an acceptable level.

Sincerely,

▮▮▮▮▮▮▮

Copy to:

▮▮▮▮▮

2

Exhibit 13

Memo For File: 10/5/2009

Subj.: Field Inspection of Possible Violation, Cache River Relief Ditch Bridge, Lawrence Co., AR

I met with Cleo Watkins and George Carney at the location of the bridge crossing of the Cache River Relief Ditch on October 2, 2009. The Cache River Relief Ditch is a Section 404 RPW. Mr. Carney explained to me the problems he is experiencing with bank erosion on his property which he believes is originating as a result of the bridge crossing. Mr. Carney provided me with aerial drawings, photographs, and a narrative description with respect to his concerns; copies of which are in the project file.

It was noticeable during the survey that the pipes were mostly clogged and regular maintenance will be required to keep the pipes open. Both Mr. Carney and Mr. Watkins told me that the bridge was constructed by the County Mayor in 2002 or just before. I stepped off the approximate dimensions of the bridge crossing and made a sketch (field notes in file).

I explained to Mr. Watkins, in a phone call on 10/5/2009, that since the bridge crossing is over five years old it is past our statute of limitations to proceed with further enforcement action. I also explained to Mr. Watkins, that if Mr. Carney plans to protect areas of unstable banks on his property, to please contact Josh Bright/USACE as he handles permitting issues in Lawrence County.

Exhibit 13

Exhibit 14



**PPGMR LAW, PLLC**
**101 MORGAN KEEGAN DRIVE, SUITE A | LITTLE ROCK, AR 72202**
**P.O. BOX 251618 | LITTLE ROCK, AR 72225-1618**
**TEL: (501) 603-9000 | FAX: (501) 603-0556 | PPGMRLAW.COM**
**LITTLE ROCK | EL DORADO**

**JULIE DEWOODY GREATHOUSE**
JULIE@PPGMRLAW.COM

June 3, 2016

Mr. Dale Freeman
Lawrence County Judge
obo Lawrence County, Arkansas
315 W. Main St. Room 1
Walnut Ridge, AR 72476

RE: Clean Water Act violations – Lawrence County Road 717 Bridge (Arkansas)

Dear Mr. Freeman:

We represent several farmers living north of Jonesboro, Arkansas who have been, and continue to be, adversely affected by Lawrence County's improper installation of a "bridge" on county road 717 over the Cache River relief slough. Approximate longitude and latitude coordinates are 35.964815, -90.875704.

This letter serves as a 60-day notice of violations of Sections 301 and 404 of the Clean Water Act pursuant to 33 U.S.C. § 1365. Section 301 of the Clean Water Act requires a National Pollutant Discharge Elimination System permit for the bridge. There is no record from ADEQ that Lawrence County ever applied for or received a Section 301 permit for the bridge. Section 404 of the Clean Water Act requires any person proposing to place dredge or fill material into waters of the United States or adjacent wetlands to obtain a permit from the U.S. Army Corps of Engineers. There is no record from the COE that Lawrence County applied for or received a Section 404 permit for the bridge.

Because this bridge was unlawfully constructed, our clients and others in the community have experienced repeated flooding that threatens their safety and livelihood. The crossing is routinely clogged with debris and causes sediment to build upstream, eliminating the slough's purpose as a relief. My clients are open to a resolution that does not involve litigation. Be advised, however, that if this problem is not properly addressed within the next 60 days, we will file a Clean Water Act citizen suit, along with pursuing all other legal remedies available.

Sincerely,

Julie DeWoody Greathouse

cc:     Mr. Mike McAlister, Acting Legal Supervisor, Arkansas Department of Environmental Quality
         Offices of Regional Counsel & Regional Administrator, EPA Region 6
         Lt. Col. Rhett Blackmon, Acting Commander, U.S. Army Corps of Engineers, Memphis District
         Mr. Randy Young, Director, Arkansas Natural Resources Commission

Exhibit 14

# Exhibit 15

RX Date/Time          09/08/2016    14:29                                      P.003
  09-08-'16 21:28 FROM-                                       T-881   P0003/0032 F-693

ORDINANCE # _9_

Whereas, the Flood Insurance Study (FIS) and/or Flood Insurance Rate Map (FIRM) for
Lawrence County, Arkansas is scheduled to be updated by the Federal Emergency Management
Agency (FEMA);

Whereas, revisions to flood insurance studies and flood insurance rate maps require that these
new documents be adopted by Lawrence County, AR.
Whereas, this ordinance replaces Ordinance No. 1991-3 dated March 3, 1991 to formally adopt
the new flood insurance study and flood insurance rate map;

BE IT ENACTED BY THE {   Quorum Court     }OF {   Lawrence County       }
ARKANSAS, AN ORDINANCE TO BE ENTITLED: "AN ORDINANCE PROVIDING FOR
THE ESTABLISHMENT OF A FLOOD DAMAGE PREVENTION PROGRAM FOR
{   Lawrence County   } AND FOR OTHER PURPOSES."

## SECTION 1. STATUTORY AUTHORITY

The Legislature of the State of Arkansas has in Ark. Code Ann. § 14-268-101 et seq., delegated
the responsibility of local governmental units to adopt regulations to minimize flood losses.
Therefore, the {Quorum Court} of {      Lawrence County      }, Arkansas, does hereby
ordain as follows:

## SECTION 2. FINDINGS OF FACT

A. The Federal Emergency Management Agency (FEMA) has identified Special Flood Hazard
   Areas of {    Lawrence County, Arkansas    } in the current scientific and engineering
   report entitled "The Flood Insurance Study (FIS) for {      Lawrence County, Arkansas
   and incorporated areas}," dated {  December 18, 2012    }, with an effective Flood
   Insurance Rate Map (FIRM) dated {   December 18, 2012}.

B. These Special Flood Hazard Areas are subject to periodic flooding events that result in loss
   of life and property, pose health and safety hazards, disrupt commerce and governmental
   services, and cause extraordinary public expenditures for flood protection and relief, all of
   which adversely affect the public health, safety and general welfare.

C. These periodic flooding events are exacerbated by the cumulative effect of floodplain
   developments which cause an increase in flood heights and velocities, and by the placement
   of inadequately elevated, inadequately floodproofed or otherwise unprotected structures or
   uses vulnerable to floods into Special Flood Hazard Areas. Such structures or uses are
   inherently hazardous to other lands because of their adverse impact on flooding events.

Exhibit 15

## SECTION 3.  STATEMENT OF PURPOSE

The purpose of this ordinance is to promote the public health, safety and general welfare, to prevent adverse impacts from any floodplain development activities, and to minimize public and private losses due to flooding events in identified Special Flood Hazard Areas.  This ordinance advances the stated purpose through provisions designed to:

A.  Protect human life and health;

B.  Protect natural floodplains against unwise development;

C.  Eliminate adverse impacts of necessary floodplain development;

D.  Minimize expenditure of public monies on flood control projects;

E.  Minimize the need for rescue and relief efforts associated with flooding and generally undertaken at the expense of the general public;

F.  Minimize prolonged business interruptions due to flooding events;

G.  Minimize damage to public facilities and utilities such as water and gas mains, electric, telephone and sewer lines, streets and bridges located in Special Flood Hazard Areas;

H.  Minimize future flood blight areas to help maintain a stable tax base; and

I.  Provide for notice to potential buyers when property is in a Special Flood Hazard Area.

## SECTION 4.  LANDS TO WHICH THIS ORDINANCE APPLIES

The ordinance shall apply to all Special Flood Hazard Areas within the jurisdiction of {   Lawrence County, Arkansas   }

## SECTION 5.  METHODS OF REDUCING FLOOD LOSSES

This ordinance uses the following methods to accomplish the stated purpose:

A.  This ordinance restricts or prohibits structures or uses in Special Flood Hazard Areas that adversely impact health, safety or property during flooding events;

B.  This ordinance requires protection against flood damage for structures or uses vulnerable to floods at the time of initial construction, or after substantial improvement of the structure, or after substantial damage has occurred;

RX Date/Time          09/08/2016    14:29                                                P.005
   09-08-'16 21:28 FROM-                                    T-881   P0005/0032 F-693

C. This ordinance controls the alteration of natural floodplains, stream channels and natural protective barriers which are involved in the accommodation and transport of flood waters;

D. This ordinance controls floodplain development (structural development, placement of manufactured structures, clearing, grading, mining, drilling, dredging, placement of fill, excavating, watercourse alteration, drainage improvements, roadway or bridge construction, individual water or sewer installations and other activities) which may increase flood damage by increasing flood elevations, flood water velocities, or flood discharge patterns;

E. This ordinance regulates the construction of flood barriers which unnaturally divert floodwaters or which may adversely impact other lands.

## SECTION 6. <u>FLOOD DAMAGE PREVENTION CODE ADOPTED BY REFERENCE.</u>

There is hereby adopted by reference a "**Flood Damage Prevention Code for { Lawrence County }, Arkansas,**" dated {November 12, 2012} The code shall include:

> ARTICLE 1 DEFINITIONS
> ARTICLE 2 ADMINISTRATION
> ARTICLE 3 PROVISIONS FOR FLOOD HAZARD REDUCTION

A copy of the referenced code shall be filed in the office of the { County Judge } and shall be available for inspection and copying by any person during normal office hours.

## SECTION 7. <u>ABROGATION AND GREATER RESTRICTIONS</u>

This ordinance does not repeal, abrogate, or impair any existing easements, covenants, or deed restrictions. Whenever there is a conflict or overlap between this ordinance and another ordinance, easement, covenant, or deed restriction, the instrument with the more stringent restrictions applies.

## SECTION 8. <u>INTERPRETATION</u>

In the interpretation and application of this ordinance, all provisions must:

A. Be considered as minimum requirements;

B. Be liberally construed in favor of the governing body; and

C. Be deemed to neither limit nor repeal any other powers granted under State statutes.

## SECTION 9. <u>WARNING AND DISCLAIMER OF LIABILITY</u>

The degree of flood protection required by this ordinance is considered reasonable for regulatory purposes. Documented scientific and engineering data form the basis for these requirements. On rare occasions, flooding events greater than those considered for this ordinance will occur. In addition, flood heights may increase over time due to man-made or natural causes. This ordinance does not imply that land outside Special Flood Hazard Areas will be free from flooding, nor that strict adherence to this ordinance protects uses permitted within Special Flood Hazard Areas from all flood damages. This ordinance specifically does not create liability on the part of the community, nor any official or employee of the community, for any flood damages that result while strictly following this ordinance, or from any lawful administrative decision made under the provisions of this ordinance.

RX Date/Time          09/08/2016    14:29                                      P.007
   09-08-'16 21:28 FROM-                                        T-881   P0007/0032 F-693

## SECTION 10.  COMPLIANCE

Constructing, locating, substantially altering or changing the use of any structure or land after the effective date of this ordinance requires full compliance with the provisions of this ordinance and all other applicable regulations.

## SECTION 11.  PENALTY FOR NON-COMPLIANCE

Flood hazards are reduced by compliance with the provisions of this code.   Accordingly, enforcement of this ordinance discourages non-compliance and is a recognized mechanism for flood hazard reduction.

A.  The Floodplain Administrator must enforce the provisions of this ordinance and is authorized to

B.  Issue cease and desist orders on non-compliant floodplain development projects;

C.  Issue citations for non-compliance;

D.  Request that FEMA file a 1316 Action (Denial of Flood Insurance) against non-compliant properties; and

E.  Take any other lawful action necessary to prevent or remedy any instance of non-compliance with the provisions of this ordinance.

   (1)  It is a misdemeanor to violate or fail to comply with any provision of this ordinance.

   (2)  Any person found, in a court of competent jurisdiction, guilty of violating this ordinance is subject to fines of not more than $500 per day for each violation; in addition the defendant is subject to payment of all associated court costs and costs involved in the case.

RX Date/Time          09/08/2016      14:29                                              P.008
  09-08-'16  21:28  FROM-                                        T-881   P0008/0032  F-693

**SECTION 12.  <u>SEVERABILITY</u>**

If any court of competent jurisdiction finds that any section, clause, sentence, or phrase of this
ordinance is invalid or unconstitutional, that finding in no way affects the validity of the
remaining portions of this ordinance.

**SECTION 13. EMERGENCY CLAUSE**

 It is hereby found and declared by {_____<u>Lawrence County, Arkansas</u>_____} that severe
flooding has occurred in the past within its jurisdiction and will certainly occur within the future;
that flooding is likely to result in infliction of serious personal injury or death, and is likely to
result in substantial injury or destruction of property within its jurisdiction; in order to effectively
comply with minimum standards for coverage under the National Flood Insurance Program; and
in order to effectively remedy the situation described herein, it is necessary that this ordinance
become effective immediately.

Therefore, an emergency is hereby declared to exist, and this ordinance, being necessary for the
immediate preservation of the public peace, health and safety, shall be in full force and effect
from and after its passage and approval.

APPROVED: _____
              Dale Freeman, County Judge


PASSED: November 12, 2012

ATTEST: _____
             Tina Stowers, County Clerk

CERTIFICATION

I, the undersigned, Tina Stowers, do hereby certify that the above is a

true and correct copy of an ordinance duly adopted by the  Quorum Court of

Lawrence County, Arkansas, at a regular meeting duly convened on November 12, 2012.

_____
Tina Stowers, County Clerk

# FLOOD DAMAGE PREVENTION CODE
## FOR { Lawrence County, Arkansas }, {November 12, 2012}

## ARTICLE 1  DEFINITIONS

Unless specifically defined below, words or phrases used in this Code have their common usage meaning to give the most reasonable application to this Code.

Additional definitions for floodplain management terms can be found at Part §59.1 of 44 CFR.

**44 CFR (Emergency Management and Assistance – National Flood Insurance Program Regulations)** Parts 59-75 contain Federal regulations upon which local floodplain managements are based

**44 CFR § 65.12** – contains the section of the Federal regulations which involves revision of flood insurance rate maps to reflect base flood elevations caused by proposed encroachments.

**"100-year flood"** is any flood with a 1% chance of occurring in any given year. The term is misleading, because of its statistical derivation. A "100-year flood" may occur many times in any given 100-year period, or it may not occur at all in 100 years.

**"500-year flood"** is any flood with a 0.2% chance of occurring in any given year. As with the 100-year flood, this term is also misleading, because of its statistical derivation. A "500-year flood" may occur many times in any given 500-year period, or it may not occur at all in 500 years.

**"Accessory Structures"** are structures which are on the same parcel of property as the principle structure and the use of which is incidental to the use of the principle structure (such as garages and storage sheds).

**"Adverse impact"** means any negative or harmful effect.

**"AE or A1-30 Risk Zones"** are special flood hazard areas where detailed studies have determined base flood elevations. AE has replaced A1-30 in newer flood maps.

**"AH Risk Zones"** are special flood hazard areas characterized by shallow flooding with ponding effects (where floodwaters accumulate in depressions and linger until absorbed or evaporated).

**"AO Risk Zones"** are special flood hazard areas characterized by shallow flooding with sheet flow (where floodwaters flow in a broad, shallow sheet rather than through a narrow channel).

RX Date/Time        09/08/2016     14:29                                      P.010
09-08-'16 21:28 FROM-                                    T-881  P0010/0032 F-693

*"A Risk Zones"* are special flood hazard areas without detailed studies, where base flood elevations have not been determined.

*"Appeal Board"* means a person or persons specifically designated to render decisions on variance applications and floodplain management complaints.

*"Automatic"* entry and exit of floodwaters means that the water must be able to enter and exit with no intervening action from a person.

*"Base flood"* means the flood having a one percent chance of being equaled or exceeded in any given year.

**"Basement"** is any enclosed area that is below grade on all sides.

**"BFE"** is the acronym for Base Flood Elevation.

*"Buoyancy"* is the upward force exerted by water. Buoyancy can cause underground tanks to float free and can lift structures off foundations.

*"Certificates of Compliance"* are formal documents issued by floodplain administrators certifying that completed projects comply with the requirements of the local Code.

*"CFR"* is the acronym for the Code of Federal Regulations. The Code of Federal Regulations is the codification of the general and permanent rules published in the Federal Register by the executive departments and agencies of the Federal Government. It is divided into 50 titles that represent broad areas subject to Federal regulation. The Federal regulations pertaining to the national Flood Insurance Program are found in title 44, Emergency Management and Assistance.

*"Clearing"* is the act of cutting timber or shrubs from an area

*"Commercial business park"* is typically an area of offices or light industrial usage, although retail, service, or industrial usage is sometimes included in supporting roles. For example, a commercial business park of office complexes may also include restaurants which service these offices.

*"Concrete deadman anchors"* are heavy steel rods embedded in buried sections of concrete, used to secure items in place under tension.

*"Covenant"* is a clause in a contract that requires one party to do, or refrain from doing, certain things. A covenant frequently appears as a restriction that a lender imposes on a borrower.

P.011
RX Date/Time          09/08/2016     14:29
09-08-'16 21:29 FROM-                                    T-881  P0011/0032 F-693

*"Crawlspace"* is a type of structural foundation where the space beneath the lowest floor is typically not deep enough to allow a person to stand and not all four walls are below grade.

*"Critical Facilities"* include: Governmental facilities that are considered essential for the delivery of critical services and crisis management (such as data and communication centers and key governmental complexes); facilities that are essential for the health and welfare of the whole population (such as hospitals, prisons, police and fire stations, emergency operations centers, evacuation shelters and schools); mass transportation facilities (such as airports, bus terminals, train terminals); lifeline utility systems (including potable water, wastewater, oil, natural gas, electric power and communications systems); high potential loss facilities (such as nuclear power plants or military installations); hazardous material facilities (such as industrial facilities housing or manufacturing or disposing of corrosives, explosives, flammable materials, radioactive materials and toxins.

*"D Zones"* areas in which the flood hazard has not been determined, but may be possible

*"Deed restriction"* refers to a clause in a deed that limits the future uses of the property in some respect. Deed restrictions may impose a vast variety of limitations and conditions, for example, they may limit the density of buildings, dictate the types of structures that can be erected, prevent buildings from being used for specific purposes or even from being used at all.

*"Development"* means any man-made change to improved or unimproved real estate. It includes, but not limited to, construction, reconstruction, or placement of a building, or any addition or substantial improvements to a building. "Development" also includes the installation of a manufactured home on a site, preparing a site for a manufactured home, or installing/parking a travel trailer. The installation of utilities, construction of roads, bridges, culverts or similar projects are also "developments." Construction or erection of levees, dams, walls, or fences; drilling, mining, filling, dredging, grading, excavating, paving, or other alterations of the ground surface are "developments." Storage of materials including the placement of gas and liquid storage tanks are "developments," as are channel modifications or any other activity that might change the direction, height, or velocity of flood or surface waters. "Development" will normally not include maintenance of existing drainage ditches, gardening, plowing, planting, harvesting of crops, or similar practices that do not involve filling, grading, or construction of levees.

*"Development Permit"* refers to the permit required for placing a "development" in the floodplain.

*"Easements"* are rights or permissions held by one person to make specific, limited use of land owned by another person.

*"Elevation Certificate"* refers to FEMA form 81-31, which for the purposes of this Code must be properly completed by a Professional Engineer, Surveyor or Architect licensed to practice in the State of Arkansas.

3

*"Erosion"* is the process of soil removal by moving water.

*"Existing Structure"* means, for floodplain management purposes, a structure which is in place before any reconstruction, rehabilitation, addition, or other improvement takes place.

*"Existing Manufactured Home Park or Subdivision"* means a manufactured home park or subdivision for which the construction of facilities for servicing the lots on which the manufactured homes are to be affixed (including, at a minimum, the installation of utilities, the construction of streets, and either final site grading or the pouring of concrete pads) is completed before the effective date of the floodplain management regulations adopted by a community.

*"Expansion to an Existing Manufactured Home Park or Subdivsion"* - means the preparation of additional sites by the construction of facilities for servicing the lots on which the manufactured homes are to be affixed (including the installation of utilities, the construction of streets, and either final site grading or the pouring of concrete pads).

*"Federal Emergency Management Agency"*, or FEMA, is the Federal agency responsible for administering the National Flood Insurance Program.

*"FEMA"* is the acronym for the Federal Emergency Management Agency.

*"Fill"* refers to the placement of natural sand, dirt, soil, rock, concrete, cement, brick or similar material at a specified location to bring the ground surface up to a desired elevation.

*"FIRM"* is the acronym for Flood Insurance Rate Map.

*"Flood Fringe"* refers to the portion of the 100-year floodplain which is outside the floodway (See definition of floodway below.)

*"Flood Insurance Rate Map"* (or "FIRM") refers to the official flood map of a community on which FEMA has categorized Special Flood Hazard Areas into risk premium zones.
flood maps

*"Flood Insurance Study"* (or "FIS") is the official report provided by FEMA. It contains flood profiles, floodway tables, engineering methods, and other descriptive and technical data.

*"Floodplain Management"* means the operation of an overall program of corrective and preventive measures for reducing flood damage, including but not limited to emergency preparedness plans, flood control works and floodplain management regulations.

*"Flooding events"* are general or temporary conditions of partial or complete inundation of normally dry land areas from the overflow of inland or tidal waters, or from the unusual and rapid accumulation or runoff of surface waters from any source.

*"Floodplain"* refers to any land area susceptible to inundation by floodwaters from any source. For the purposes of this Code, floodplain refers to the land area susceptible to being inundated by the base flood.

*"Floodplain Administrator"* refers to the community official designated in the local Flood Damage Prevention Code as responsible for the Code's administration.

*"Floodplain Development Permit"* is a permit issued by the local Floodplain Administrator and is required before beginning any development in an area designated as a Special Flood Hazard Area on the community's FIRM.

*"Floodproofing"* is a combination of structural and nonstructural additions, changes, or adjustments to structures that reduce or eliminate the risk of flood damage.

*"Floodproofing Certificate"* refers to FEMA form 81-65, which for the purposes of this Code must be properly completed by a Professional Engineer or Architect licensed to practice in the State of Arkansas.

*"Floodway"* or *"Regulatory Floodway"* refers to a stream channel and the land to either side of the stream channel that must remain undeveloped and open in order to allow floodwaters to pass without increasing the base flood elevation more than a designated height. For the purposes of this Code, the height is one foot (1 ft.). Severe restrictions or prohibitions are imposed on development within the floodway.

*"Flow-through openings"* are openings specifically designed to allow floodwaters to flow into and out of enclosed spaces, minimizing the danger of foundation or wall collapse from lateral hydrostatic pressure.

*"Functionally dependent use"* means a use which cannot perform its intended purpose unless it is located or carried out in close proximity to water. The term includes only docking facilities, port facilities that are necessary for the loading and unloading of cargo or passengers, and ship building and ship repair facilities, but does not include long-term storage or related manufacturing facilities.

*"Grade"* means the surface of the ground.

*"Grading"* means to smooth the surface of the ground, typically with heavy construction equipment.

RX Date/Time        09/08/2016      14:29                                    P.014
09-08-'16 21:29 FROM-                                          T-881  P0014/0032 F-693

*"Highest Adjacent Grade" (HAG)* means the highest natural elevation of the ground surface prior to construction next to the proposed walls of a structure.

*"Historical Structure"* means any structure that is:

1. Listed individually in the National Register of Historic Places (a listing maintained by the Department of Interior) or preliminarily determined by the Secretary of the Interior as meeting the requirements for individual listing on the National Register;

2. Certified or preliminarily determined by the Secretary of the Interior as contributing to the historical significance of a registered historic district or a district preliminarily determined by the Secretary to qualify as a registered historic district;

3. Individually listed on a state inventory of historic places in states with historic preservation programs which have been approved by the Secretary of the Interior; or

4. Individually listed on a local inventory or historic places in communities with historic preservation programs that have been certified either:

   a. By an approved state program as determined by the Secretary of the Interior or;
   b. Directly by the Secretary of the Interior in states without approved programs.

*"Hydrodynamic forces"* are the forces and stresses associated with moving water, including impacts from objects carried in the water.

*"Hydrostatic flood forces"* are the forces and stresses associated with standing floodwaters.

*"Lacustrine Flooding"* is flooding associated with a lake.

*"Lateral forces"* are the horizontal hydrostatic forces associated with standing water. Water exerts an equal force in all directions, and as little as three feet of standing water can generate sufficient lateral force to collapse a foundation or wall.

P.015
RX Date/Time        09/08/2016     14:29
09-08-'16 21:29 FROM-                              T-881  P0015/0032 F-693

**"Lowest floor"** refers to the lowest floor of the lowest enclosed area (including Basement). For a typical slab-on-grade construction, the lowest floor is the top of the first floor of the structure. For a typical basement foundation construction, the elevation of the lowest floor is the top of the basement floor. For a typical crawlspace foundation construction, the elevation of the lowest floor is the top of the first floor of the structure. For a typical split-level construction, the elevation of the lowest floor is the top of the first living area floor. For a manufactured home installation, the elevation of the lowest floor will be the bottom of the lowest I-Beam. The garage floor and crawlspaces are not the lowest floor as long as there are no living areas in the garage and it is used solely for storage, parking vehicle and entry to the structure, provided that such enclosure is not built so as to render the structure in violation of the applicable non-elevation design requirements of Section 60.3 of the National Flood Insurance regulations.

**"Manufacture Homes"** or **Structures** means a structure, transportable in one or more sections, which is built on a permanent chassis and is designed for use with or without a permanent foundation when attached to the required utilities. The term ``manufactured home'' does not include a ``recreational vehicle''.

**"Manufactured Home Park or Subdivision"** means a parcel (or contiguous parcels) of land subdivided into two or more manufactured home lots for rent or sale.

**"Mean Sea Level"** (MSL) means, for the purposes of the NFIP, the National Geodetic Vertical Datum (NGVD) of 1929 or other datum, to which base flood elevations shown on a community's FIRM are referenced.

**"Mixed Use Structures"** are structures with both a business and a residential component, but where the area used for business is less than 50% of the total floor area of the structure.

**"New Construction"** means, for floodplain management purposes, structures for which the "start of construction" commenced on or after the date of a floodplain management regulation adopted by a community and includes any subsequent improvements to such structures.

**"New Manufactured Home Park or Subdivision"** - means a manufactured home park or subdivision for which the construction of facilities for servicing the lots on which the manufactured homes are to be affixed (including at a minimum, the installation of utilities, the construction of streets, and either final site grading or the pouring of concrete pads) is completed on or after the effective date of floodplain management regulations adopted by a community.

**"No Adverse Impact principle"** is a principle of restricting or prohibiting land development that does harm or "adversely affects" someone else's property or land.

**"Nonresidential Structures"** are structures used only for commercial or public purposes, such as businesses, schools, churches, etc...

*"No-Rise Certificates"* are formal certifications signed and stamped by a Professional Engineer licensed to practice in the State of Arkansas, demonstrating through hydrologic and hydraulic analyses performed in accordance with standard engineering practice that a proposed development will not result in any increase in flood levels within the community during the occurrence of a base flood event.

*"Piers"* are columns of masonry or other structural material (commonly cement blocks stacked up to support a manufactured home), usually rectangular, used to support other structural members. For the purpose of this ordinance, piers must be permanent in nature.

*"Pilings"* are steel tubes driven to rock or a suitable soil bearing layer and connected to the foundation of a structure.

*"Ponding"* is a flooding effect where floodwaters accumulate in shallow depressions and linger until absorbed or evaporated.

*"Recreational vehicles"* means a vehicle which is:
  (i)    built on a single chassis;
  (ii)   400 square feet or less when measured at the largest horizontal projections;
  (iii)  designed to be self-propelled or permanently towable by a light duty truck; and
  (iv)   designed primarily not for use as a permanent dwelling but as temporary living quarters for recreational, camping, travel, or seasonal use.

*"Risk Zones"* categorize special flood hazard areas into groupings by the specific risk of flooding. Zones A, AE or A1-30, AO, and AH are Special Flood Hazard Areas. See "X Risk Zones" in this section.

*"Riverine flooding"* is flooding associated with a river or stream channel.

*"RV"* is the acronym for recreational vehicle.

*"Screw augers"* are any type of anchor that twists into the soil, typically to a depth of 4 feet or more. They are not suitable for securing manufactured homes against floodwaters because saturated grounds often soften and fail to hold the anchor in place.

*"Section 404 Wetlands Permit"* is a permit required under Section 404 of the Clean Water Act for the discharge of dredged and fill material into any surface water of the United States. The US Army Corps of Engineers issues Section 404 permits.

*"SFHA"* is the acronym for Special Flood Hazard Area.

*"Shallow flooding"* means a depth of less than 3 feet.

8

RX Date/Time          09/08/2016       14:29                                           P.017
  09-08-' 16 21:30 FROM-                                                    T-881  P0017/0032 F-693

*"Slab anchors"* are anchors where the hook of the anchor is wrapped around a horizontal rebar in the slab before the concrete is poured.

*"Special flood hazard areas"* are geographical areas identified on FEMA flood maps as being at-risk for flooding. The maps further categorize these areas into various flood risk zones A, AE or A1-30, AH, and AO.

*"Start of Construction"* includes substantial improvement and means the date the building permit was issued, provided the actual start of construction, repair, reconstruction, rehabilitation, addition placement, or other improvement was within 180 days of the permit date. The actual start means either the first placement of permanent construction of a structure on a site, such as the pouring of slab or footings, the installation of piles, the construction of columns, or any work beyond the stage of excavation; or the placement of a manufactured home on a foundation. Permanent construction does not include land preparation, such as clearing, grading and filling; nor does it include the installation of streets and/or walkways; nor does it include excavation for basement, footings, piers or foundations or the erection of temporary forms; nor does it include the installation on the property of accessory buildings, such as garages or sheds not occupied as dwelling units or not part of the main structure. For a substantial improvement, the actual start of construction means the first alteration of any wall, ceiling, floor, or other structural part of a building, whether or not that alteration affects the external dimensions of the building.

*"State Coordinating Agency"* is the agency that acts as a liaison between FEMA and a community for the purposes of floodplain management. The Arkansas Natural Resources Commission is the State Coordinating Agency for Arkansas.

*"Stream channels"* are depressed natural pathways through which water of any quantity routinely flows.

*"Structural development"* is a development that includes the placement or construction of a structure.

*"Structure"* means for floodplain management purposes, a walled and roofed building, including a gas or liquid storage tank that is principally above ground, as well as a manufactured home.

*"Substantial damage"* is damage of any origin where the cost to restore a structure to its original undamaged state would equal or exceed 50% of the market value of the structure before any damage occurred. In determining whether substantial damage has occurred, estimators must use standard contractor and materials costs. There are no exceptions for homeowners who make their own repairs or for discounted or free raw materials.

P.018
T-881  P0018/0032  F-693

09/08/2016   14:29
09-08-'16 21:30 FROM-

RX Date/Time

*"Substantial improvement"* is any reconstruction, remodeling, addition or improvement to a structure with a cost equaling or exceeding 50% of the market value of the structure before any improvement. Improvements to correct identified violations of local health, sanitary or safety Codes are not substantial improvements, regardless of the cost, as long as they are the minimum improvement necessary to bring the structure up to Code. Alterations to historical structures are also exempted, as long as the improvement does not affect the structure's official status of "historical structure."

*"Uses vulnerable to floods"* are simply any land or structural uses that may be negatively affected by a flood.

*"Variance"* is a formal, written permission from the Appeals Board to construct or develop in a way that is inconsistent with the requirements of this Code. The variance only deals with this Code – the Appeals Board has no authority to waive any other governmental requirement, and has no say in the cost of flood insurance.

*"Violation"* - means the failure of a structure or other development to be fully compliant with the community's floodplain management regulations. A structure or other development without the elevation certificate, other certifications, or other evidence of compliance required in this Code is presumed to be in violation until such time as that documentation is provided.

*"Watercourse alteration"* refers to any change that occurs within the banks of a watercourse.

*"Water Surface Elevation"* - means the height, in relation to the National Geodetic Vertical Datum (NGVD) of 1929 (or other datum, where specified), of floods of various magnitudes and frequencies in the floodplains of coastal or riverine areas.

*"X Risk Zones"* are a special group of insurance risk zones. One type, shown as non-shaded areas on FEMA issued flood maps, indicates a zone where flooding is not expected to occur. The second type, shown as shaded areas of FEMA flood maps, indicates a flood hazard area that is expected to be affected by the 500-year flood, but not by the 100-year base flood.

## SECTION E. <u>PROCEDURES FOR VARIANCE FROM THE REQUIRMENTS OF THIS CODE</u>

(1) Applicants must submit petitions for variances directly to the Appeal Board (Section E).

(2) Variances may only be issued:

    a) if showing a good and sufficient cause;

    b) granting of the variance will not result in any adverse impact upon other lands;

    c) if granting of the variance will not result in any additional threats to public safety;

    d) if granting of the variance will not result in extraordinary public expense;

    e) if granting of the variance does not create a nuisance, cause fraud on or victimization of the public, or conflict with existing laws or ordinances;

    f) if granting of the variance will not result in increased flood heights or an increase in expected flood velocities;

    g) if the requested variance is the minimum necessary, considering the flood hazards, to afford the necessary relief; and

    h) upon determination that the requested variance is necessary to avoid an extraordinary hardship to the applicant.

(3) Variances may not be issued for developments inside a regulatory floodway unless

    a) all requirements of 44 CFR §65.12 are first met; or

    b) the following requirements are met:

        1. a No-Rise Certificate signed and sealed by a Professional Engineer licensed to practice in the State of Arkansas is submitted to document that no increase in the base flood elevation would result from granting a variance for the proposed development;

        2. protective measures are employed to minimize damages during flooding events; and

        3. the variance does not result in any adverse impact to other lands.

(4) Examples of developments for which variance petitions may be appropriate include but are not limited to

a) the new construction of, or substantial improvement to, a structure on a lot of 1/2 acre or less in size that is surrounded by contiguous lots with existing structures constructed below the base flood elevation;

b) for the reconstruction, rehabilitation or restoration of an historical structure, provided that:

    1. the proposed repair or rehabilitation will not preclude the structure's continued designation as a historic structure; and

    2. the variance is the minimum necessary to preserve the historic character and design of the structure.

c) the new construction of, substantial improvement to, or other development necessary to conduct a functionally dependent use, provided that:

    1. the criteria outlined in Article 2, Section E, (3) and (4) and Article 2, Section F are met, and

    2. the structure or other development is protected by methods that minimize flood damages during the base flood and create no additional threats to public safety.

## SECTION F.  APPEAL BOARD

(1) Within { Lawrence County }, Arkansas the { Quorum Court } is the designated Appeal Board.

(2) The Appeal Board will consider an appeal only with allegations of an error in any requirement, decision, or determination made by the Floodplain Administrator in the enforcement or administration of this Code.

(3) Upon consideration of the factors noted in Article 2, Sections E and F, and the intent of this ordinance, the Appeal Board may attach such conditions to the granting of variances as it deems necessary to further the purpose and objectives of this ordinance.

(4) Appeal Board decisions are binding only upon the requirements of this Code, and have no bearing on the decision of any lending institution to require the purchase of flood insurance or on the rate determination of such insurance.

(5) Any time the Appeal Board issues a variance, it must provide the applicant with a formal written warning of an increased risk of flood damage due to removal of restrictions designed to lessen such risks. The notice must also warn of a corresponding increase in the cost of flood insurance, since the cost of such insurance will be commensurate with the increased risk.

(6) Aggrieved parties may appeal any decision of the Appeal Board to a court of competent jurisdiction.

T-881   P0021/0032   F-693
P.021
09/08/2016   14:29
09-08-'16 21:31 FROM-
RX Date/Time

16

# ARTICLE 3 <u>PROVISIONS FOR FLOOD HAZARD REDUCTION</u>

## SECTION A.  <u>GENERAL STANDARDS</u>

The following standards apply to <u>all developments in Special Flood Hazard Areas</u>, regardless of the type of proposed development or the Risk Zone of the proposed site.

1. **All new construction or substantial improvements shall be designed (or modified) and adequately anchored to prevent flotation, collapse or lateral movement of the structure** resulting form hydrodynamic and hydrostatic loads, including the effects of buoyancy;

2. **All new construction or substantial improvements** shall be constructed by methods and practices that **minimize flood damage;**

3. **All new construction or substantial improvements** shall be constructed with **materials resistant to flood damage;**

4. **All critical facilities** constructed or substantially improved in Special Flood Hazard Areas (SFHA) must be constructed or modified to **exceed 500-year flood protection** standards **or** located outside the SFHA.

5. **The placement or construction of all new structures must be in full compliance with the provisions of this Code**

6. For the purposes of this Code, all **mixed-use structures are subject to the more stringent requirements of residential structures.**

7. **A substantial improvement or substantial damage to an existing structure triggers a requirement to bring the entire structure into full compliance** with the provisions of this Code.  The existing structure, as well as any reconstruction, rehabilitation, addition, or other improvement, must meet the standards of new construction in this Code.

8. **Any improvement to an existing structure that is less than a substantial improvement requires the improvement, but not the existing structure, to be in full compliance with the provisions of this Code.**

17

RX Date/Time        09/08/2016      14:29        T-881   P0023/0032 F-693
09-08-' 16 21:31 FROM-

9. All manufactured homes to be placed within a Special Flood Hazard Area on a community's FIRM shall be **installed using methods and practices which minimize flood damage.** For the purposes of this requirement, manufactured homes must be elevated and anchored to resist flotation, collapse, or lateral movement. Methods of anchoring may include, but are not limited to, use of over-the-top or frame ties to ground anchors. This requirement is in addition to applicable State and local anchoring requirements for resisting wind forces. Screw augers or expanding anchors will not satisfy the requirement of this provision.

10. The design or location of **electrical, heating, ventilation, plumbing, and air conditioning equipment for new structures,** or for any improvements to an existing structure, must prevent water from entering or accumulating within the components during base flood events.

11. The design of **all new and replacement water supply systems** must minimize or eliminate infiltration of floodwaters into the system during base flood events.

12. The design of **all new and replacement sanitary sewage** systems must minimize or eliminate infiltration of floodwaters into the system during flooding events, and must prevent sewage discharge from the systems into floodwaters.

13. The placement of **on-site waste disposal systems** must avoid impairment to, or contamination from, the disposal system during base flood events.

14. **Construction of basement foundations in any Special Flood Hazard Area is prohibited.**

15. New construction and substantial improvements, with **fully enclosed areas (such as garages and crawlspaces)** below the lowest floor that are usable solely for parking of vehicles, building access or storage in an area other than a basement and which are below the base flood elevation shall be designed to automatically equalize hydrostatic flood forces on exterior walls by allowing for the entry and exit of floodwaters. Designs for meeting this requirement must either be certified by a registered professional engineer or architect or meet or exceed the following minimum criteria:

   (a) A minimum of two openings on separate walls having a total net area of not less than 1 square inch for every square foot of enclosed area subject to flooding shall be provided.

   (b) The bottom of all openings shall be no higher than 1 foot above grade.

   (c) Openings may be equipped with screens, louvers, valves, or other coverings or devices provided that they permit the automatic entry and exit of floodwaters.

18

RX Date/Time          09/08/2016    14:29                                      P.024
   09-08-'16 21:31 FROM-                                    T-881  P0024/0032 F-693

16.  The placement of recreational vehicles (RV) in Special Flood Hazard Areas must either

(a) be temporary, as demonstrated by the RV being fully licensed, being on wheels or a jacking system, attached to the site only by quick disconnect type utilities and security devices, having no permanently attached additions, and being immobile for no more than 180 consecutive days; or else

(b) meet all provisions of this Code applicable to manufactured home structures.

17.  All proposals for the development of a residential subdivision, commercial business park or manufactured home park/subdivision must have public utilities and facilities such as sewer, gas, electrical and water systems located and constructed to minimize or eliminate flood damage.

18.  All proposals for the development of a residential subdivision, commercial business park or a manufactured home park/subdivision must include an adequate drainage plan to reduce exposure to flood hazards.

19.  All proposals for the development of a commercial business park or a manufactured home park/subdivision must include an adequate evacuation plan for the escape of citizens from affected nonresidential structures during flooding events.

## SECTION B.  RISK ZONE SPECIFIC STANDARDS

In addition to the General Standards, the following standards apply to specific development types in specific Risk Zones.  Risk Zones listed in this Code that do not appear on the current FIRM are not applicable.

---

### (1) In AE or A1-30 Risk Zones:
### Special Flood Hazard Areas with base floods determined

a)  **For Residential Structures in Zone AE or A1-30:**

1.  For all new residential structures, the top surface of the lowest floor must have an elevation {   2 feet or more   } above the published BFE.  This elevation must be documented on an Elevation Certificate properly completed by a Professional Engineer, Surveyor or Architect licensed to practice in the State of Arkansas.

19

2. For all substantial improvements or substantial damage to existing residential structures, the entire structure becomes subject to the requirements of a new residential structure.

3. For any reconstruction, rehabilitation, addition, or other improvement to an existing residential structure that is less than a substantial improvement, only the improved area, but not the entire structure, becomes subject to the requirements of a new residential structure.

b) **For Nonresidential Structures in Zone AE or A1-30:**

1. All new commercial, industrial or other nonresidential structures must either:

   a. have the lowest floor (including basement) elevated { __2 feet or more__ } above the base flood level or

   b. be floodproofed such that, together with attendant utility and sanitary facilities, be designed so that below { __an elevation of 3 feet above__ } the base flood level the structure is watertight with walls substantially impermeable to the passage of water and with structural components having the capability of resisting hydrostatic and hydrodynamic loads and effects of buoyancy.

   c. A registered professional engineer or architect shall develop and/or review structural design, specifications, and plans for the construction, and shall certify on a Floodproofing Certificate that the design and methods of construction are in accordance with accepted standards of practice as outlined in this subsection. A record of such certification which includes the specific elevation (in relation to mean sea level) to which such structures are floodproofed shall be maintained by the Floodplain Administrator.

2. For all substantial improvements or substantial damage to existing commercial, industrial or other nonresidential structures the entire structure becomes subject to the requirements of a new nonresidential structure.

3. For any reconstruction, rehabilitation, addition, or other improvement to an existing nonresidential structure that is less than a substantial improvement, only the improved area, but not the entire structure, becomes subject to the requirements of a new nonresidential structure.

20

RX Date/Time          09/08/2016     14:29                                    P.026
09-08-'16 21:32 FROM-                                    T-881   P0026/0032 F-693

c) **For Manufactured Homes in Zone AE or A1-30:**

1.  All manufactured homes that are placed or substantially improved on sites:

    a.  outside of a manufactured home park or subdivision,
    b.  in a new manufactured home park or subdivision,
    c.  in an expansion to an existing manufactured home park or subdivision, or
    d.  in an existing manufactured home park or subdivision on which a manufactured home has incurred "substantial damage" as a result of a flood, be elevated on a permanent foundation such that the lowest floor of the manufactured home is elevated { ___2 feet or more___ } above the base flood elevation and be securely anchored to an adequately anchored foundation system to resist flotation, collapse, and lateral movement.

2.  Require that manufactured homes be placed or substantially improved on sites in an existing manufactured home park or subdivision on the community's FIRM that are not subject to the provisions of paragraph (1.) of this section be elevated so that either:

    a.  the lowest floor of the manufactured home is { ___2 feet or more___ } above the base flood elevation, or
    b.  the manufactured home chassis is supported by reinforced piers or other foundation elements of at least equivalent strength that are no less than 36 inches in height above grade and be securely anchored to an adequately anchored foundation system to resist flotation, collapse, and lateral movement.

3.  For all substantial improvements or substantial damage to existing manufactured home, the entire structure becomes subject to the requirements of a new manufactured home.

4.  For any reconstruction, rehabilitation, addition, or other improvement to an existing manufactured home that is less than a substantial improvement, only the improved area, but not the entire structure, becomes subject to the requirements of a new manufactured home.

d) **When a regulatory floodway has not been designated,** the Floodplain Administrator must require that no new construction, substantial improvements, or other development (including fill) shall be permitted **within Zones A1-30 and AE** on the community's FIRM, unless it is demonstrated that the cumulative effect of the proposed development, when combined with all other existing and anticipated development, will not increase the water surface elevation of the base flood more than one foot at any point within the community.

## (2) Floodways
### High risk areas of stream channel and adjacent floodplain

a) **Developments in regulatory floodways are prohibited, <u>unless</u>**

   1. A **No-Rise Certificate**, signed and stamped by a Professional Engineer licensed to practice in the State of Arkansas, is submitted to demonstrate through hydrologic and hydraulic analyses performed in accordance with standard engineering practice that the proposed development would not result in any increase in flood levels within the community during the occurrence of a base flood event; <u>or</u>

   2. All requirements of 44 CFR §65.12 are first met.

b) **No Manufactured Home may be placed in a regulatory floodway,** regardless of elevation height, anchoring methods, or No-Rise Certification.

---

## (3) <u>In AH or AO Risk Zones:</u>
### Special Flood Hazard Areas of shallow flooding

a) **For Residential Structures in Zones AH or AO:**

   1. All new residential structures must be constructed with the top surface of the lowest floor elevated { __2 feet or more__ } above the published BFE, or { __2 feet or more__ } above the highest adjacent grade in addition to the depth number specified (at least 2 feet if no depth number is specified) on the community's FIRM.  This elevation must be documented on an Elevation Certificate properly completed by a Professional Engineer, Surveyor or Architect licensed to practice in the State of Arkansas.

   2. For all substantial improvements or substantial damage to existing residential structures the entire structure becomes subject to the requirements of a new residential structure.

   3. For any reconstruction, rehabilitation, addition, or other improvement to an existing residential structure that is less than a substantial improvement, only the improved area, but not the entire structure, becomes subject to the requirements of a new residential structure

RX Date/Time      09/08/2016      14:29                                      P.028
  09-08-' 16 21:32 FROM-                                    T-881   P0028/0032 F-693

b) **For Nonresidential Structures in Zones AH or AO:**

1. All new commercial, industrial or other nonresidential structure must either:

   a. have the top surface of the lowest floor elevated { ___2 feet or more___ } above the published BFE, or { __2 feet or more__ } above the highest adjacent grade in addition to the depth number specified (at least 2 feet if no depth number is specified) on the community's FIRM, with documentation on an Elevation Certificate properly completed by a Professional Engineer, Surveyor or Architect licensed to practice in the State of Arkansas; or
   
   b. be floodproofed such that the structure, together with attendant utility and sanitary facilities be designed so that below { __3 feet or more__ } above the published BFE in Zone AH, or { __3 feet or more__ } above the base specified flood depth in an AO Zone, the structure is watertight with walls substantially impermeable to the passage of water and with structural components having the capability of resisting hydrostatic and hydrodynamic loads of effects of buoyancy.

2. For all substantial improvements or substantial damage to existing commercial, industrial or other nonresidential structures the entire structure becomes subject to the requirements of a new nonresidential structure.

3. For any reconstruction, rehabilitation, addition, or other improvement to an existing nonresidential structure that is less than a substantial improvement, only the improved area, but not the entire structure, becomes subject to the requirements of a new nonresidential structure.

RX Date/Time        09/08/2016    14:29                                                    P.029
09-08-'16 21:32 FROM-                                    T-881   P0029/0032 F-693

c)  **For Manufactured Homes in Zones AH or AO:**

1.  All manufactured homes that are placed or substantially improved on sites:

    a.  outside of a manufactured home park or subdivision,
    b.  in a new manufactured home park or subdivision,
    c.  in an expansion to an existing manufactured home park or subdivision, or
    d.  in an existing manufactured home park or subdivision on which a manufactured home has incurred "substantial damage" as a result of a flood, be elevated on a permanent foundation such that the lowest floor of the manufactured home is elevated { __2 feet or more__ } above the published BFE, or { __2 feet or more__ } above the highest adjacent grade in addition to the depth number specified (at least 2 feet if no depth number is specified) on the community's FIRM, and be securely anchored to an adequately anchored foundation system to resist flotation, collapse, and lateral movement.

2.  Require that manufactured homes be placed or substantially improved on sites in an existing manufactured home park or subdivision on the community's FIRM that are not subject to the provisions of paragraph 1. of this section be elevated so that either:

    a.  the lowest floor of the manufactured home meets the elevation standard of paragraph 1., or
    b.  the manufactured home chassis is supported by reinforced piers or other foundation elements of at least equivalent strength that are no less than 36 inches in height above grade and be securely anchored to an adequately anchored foundation system to resist flotation, collapse, and lateral movement.

3.  For all substantial improvements or substantial damage to existing manufactured home, the entire structure becomes subject to the requirements of a new manufactured home.

4.  For any reconstruction, rehabilitation, addition, or other improvement to an existing manufactured home that is less than a substantial improvement, only the improved area, but not the entire structure, becomes subject to the requirements of a new manufactured home.

d) Where FEMA has not established a regulatory floodway in Zone in Zones AH or AO, no Floodplain Development Permit may be issued unless a detailed engineering analysis is submitted along with the application that demonstrates the increase in base floodwater elevation due to the proposed development and all cumulative developments since the publication of the current FIRM will be less than 1 foot.

e) **Require adequate drainage paths** around structures on slopes, to guide flood waters around and away from proposed structures.

## (4) <u>In "A" Risk Zones</u>:
## Special Flood Hazard Areas with <u>no base flood elevations determined</u>

a) **In Zone A, The applicant or the applicant's agent must determine a base flood elevation prior to construction. The BFE will be based on a source or method approved by the local Floodplain Administrator.**

b) **For Residential Structures in Zone A:**

   1. For all new residential structures, the top surface of the lowest floor must have an elevation { __2 feet or more__ } above the BFE. This elevation must be documented on an Elevation Certificate properly completed by a Professional Engineer, Surveyor or Architect licensed to practice in the State of Arkansas.

   2. For all substantial improvements or substantial damage to existing residential structures, the entire structure becomes subject to the requirements of a new residential structure.

   3. For any reconstruction, rehabilitation, addition, or other improvement to an existing residential structure that is less than a substantial improvement, only the improved area, but not the entire structure, becomes subject to the requirements of a new residential structure.

c) **For Nonresidential Structures in Zone A:**

   1. All new commercial, industrial or other nonresidential structures must either:

      a. have the lowest floor (including basement) elevated { __2 feet or more__ } above the base flood level or

b. be floodproofed such that, together with attendant utility and sanitary facilities, be designed so that below { an elevation of 3 feet above }the base flood level the structure is watertight with walls substantially impermeable to the passage of water and with structural components having the capability of resisting hydrostatic and hydrodynamic loads and effects of buoyancy.

c. A registered professional engineer or architect shall develop and/or review structural design, specifications, and plans for the construction, and shall certify on a Floodproofing Certificate that the design and methods of construction are in accordance with accepted standards of practice as outlined in this subsection. A record of such certification which includes the specific elevation (in relation to mean sea level) to which such structures are floodproofed shall be maintained by the Floodplain Administrator.

2. For all substantial improvements or substantial damage to existing commercial, industrial or other nonresidential structures the entire structure becomes subject to the requirements of a new nonresidential structure.

3. For any reconstruction, rehabilitation, addition, or other improvement to an existing nonresidential structure that is less than a substantial improvement, only the improved area, but not the entire structure, becomes subject to the requirements of a new nonresidential structure.

**d) For Manufactured Homes in Zone A:**

1. All manufactured homes that are placed or substantially improved on sites:

   a. outside of a manufactured home park or subdivision,
   b. in a new manufactured home park or subdivision,
   c. in an expansion to an existing manufactured home park or subdivision, or
   d. in an existing manufactured home park or subdivision on which a manufactured home has incurred "substantial damage" as a result of a flood, be elevated on a permanent foundation such that the lowest floor of the manufactured home is elevated { 2 feet or more } above the base flood elevation and be securely anchored to an adequately anchored foundation system to resist flotation, collapse, and lateral movement.

RX Date/Time          09/08/2016      14:29                                    P.032
 09-08-'16 21:32 FROM-                                    T-881   P0032/0032 F-693

2. Require that manufactured homes be placed or substantially improved on sites in an existing manufactured home park or subdivision on the community's FIRM that are not subject to the provisions of paragraph (1.) of this section be elevated so that either:

   a. the lowest floor of the manufactured home is {  2 feet or more  } above the base flood elevation, or
   b. the manufactured home chassis is supported by reinforced piers or other foundation elements of at least equivalent strength that are no less than 36 inches in height above grade and be securely anchored to an adequately anchored foundation system to resist flotation, collapse, and lateral movement.

3. For all substantial improvements or substantial damage to existing manufactured home, the entire structure becomes subject to the requirements of a new manufactured home.

4. For any reconstruction, rehabilitation, addition, or other improvement to an existing manufactured home that is less than a substantial improvement, only the improved area, but not the entire structure, becomes subject to the requirements of a new manufactured home.

e) **Base flood elevation data and a regulatory floodway**, utilizing accepted engineering practices, shall be generated for subdivision proposals and other proposed development including the placement of **manufactured home parks and subdivisions which is greater than 50 lots or 5 acres, whichever is lesser**, if not otherwise provided.

Exhibit 16



Exhibit 16

## NOTES TO USERS

This map is for use in administering the National Flood Insurance Program. It does not necessarily identify all areas subject to flooding, particularly from local drainage sources of small size. The community map repository should be consulted for possible updated or additional flood hazard information.

## LEGEND

### SPECIAL FLOOD HAZARD AREAS SUBJECT TO INUNDATION BY THE 1% ANNUAL CHANCE FLOOD

**FIRM**
FLOOD INSURANCE RATE MAP

LAWRENCE COUNTY, ARKANSAS
AND INCORPORATED AREAS

PANEL 425 OF 450

MAP NUMBER
05075C0425D

EFFECTIVE DATE
DECEMBER 18, 2012

Federal Emergency Management Agency

# Exhibit 17



**PPGMR LAW, PLLC**
101 MORGAN KEEGAN DRIVE, SUITE A  |  LITTLE ROCK, AR 72202
P.O. BOX 251618  |  LITTLE ROCK, AR 72225-1618
TEL: (501) 603-9000  |  FAX: (501) 603-0556  |  PPGMRLAW.COM
LITTLE ROCK  |  EL DORADO

**MICAH GOODWIN**
MICAH@PPGMRLAW.COM

September 8, 2016

Mr. Dale Freeman
Lawrence County Judge
315 W. Main
Room 1
Walnut Ridge, AR 72476

re:     Lawrence County Road 717 Bridge

Dear Mr. Freeman,

I am writing to request a copy of any and all memoranda, documentation, letters, notes, and quorum court minutes addressing the Lawrence County Road 717 bridge, in accordance with the Arkansas Freedom of Information Act.  In particular, I request copies of any and all documentation concerning the construction plans for this bridge (including engineering or architectural reports), as well as any and all communications with the U.S. Army Corp of Engineers or other governmental body concerning the bridge's construction or modification in any way.  If no engineering or architectural reports for this bridge exist, please note as such in your response.

PDF or other electronic format is preferred, if possible.  If electronic copies are not available, please let me know if copying and shipping costs will exceed $50.

Thank you for your attention to this matter.  Please call or email if you have any questions.

Sincerely,

Micah Goodwin

cc:     Mr. Dick Jarboe

Exhibit 17

# Exhibit 18

**STATE OF ARKANSAS**
**Lawrence County Courthouse**
315 W. Main, Room 1
Walnut Ridge, AR 72476

**Dale Freeman**
County Judge

(870) 886-1110
FAX: (870) 886-1125

September 16, 2016

Ms. Micah Goodwin
PPGMR Law, PLLC
P.O. Box 251618
Little Rock, AR 72225-1618

Re:  Lawrence County Road 717 Bridge

Dear Ms. Micah Goodwin

Enclosed is the information Lawrence County has on Lawrence County Road Bridge 717.

County Judge Dale Freeman had an automobile accident and is off work at this time.

Thank You,

Ann Pulliam
Lawrence County Judge's Office

Exhibit 18



**DEPARTMENT OF THE ARMY**
MEMPHIS DISTRICT, CORPS OF ENGINEERS
167 NORTH MAIN STREET B-202
MEMPHIS, TENNESSEE 38103-1894

May 13, 2003

REPLY TO
ATTENTION OF:

Regulatory Branch

Honorable Alex Latham
Judge, Lawrence County
Lawrence County Courthouse
Walnut Ridge, Arkansas 72476

SUBJECT:  Unauthorized County Road Bridge Across Cache River Ditch

Dear Judge Latham:

This letter is in regard to your county road crossing project near Sedgwick, Section 4, Township 15N, Range 2E in Lawrence County, Arkansas, at approximate latitude 35-57-52.1907 and longitude 90-52-31.0112 on the Podo Creek 7.5 minute quadrangle map.  A compliance inspection was conducted on April 30, 2003.  Based on the inspection, you are now considered in compliance with Sections 301 and 404 of the Clean Water Act (33 U.S.C. Sections 1311 and 1344).

Per our correspondence dated June 8, 2001, the bridge crossing meets the requirements of Nationwide Permit No. 14 provided that the enclosed conditions are met.  Please pay special attention to the general permit condition number 21 (Management of Water Flows).  The crossing shall be maintained and debris shall be removed as needed to allow for the passage of normal or expected high flows.

A copy of this letter has been furnished to the Natural Resources Conservation Service in Walnut Ridge, Arkansas; USFWS in Conway, Arkansas; EPA in Dallas, Texas; and Mr. Houston, Houston Law Firm, PO Box 3076, Jonesboro, Arkansas.

If you have questions, contact Gregg Williams at (901) 544-3852, and refer to File Number 200109011.

Sincerely,

Larry D. Watson
Chief
Regulatory Branch

Enclosures

AUG/04/2014/MON 11:55 AM   WomackPhelpsMcNeill        FAX No. 8709322553                P.006



DEPARTMENT OF THE ARMY
MEMPHIS DISTRICT, CORPS OF ENGINEERS
167 NORTH MAIN STREET B-202
MEMPHIS, TENNESSEE 38103-1894

October 30, 2002

REPLY TO
ATTENTION OF:

Regulatory Branch

Honorable Alex Latham
Judge, Lawrence County
Lawrence County Courthouse
Walnut Ridge, Arkansas 72476

SUBJECT: Unauthorized County Road Bridge Across Cache River Ditch

Dear Judge Latham:

This letter is in regard to your county road crossing project near Sedgwick, Section 4, Township 15N, Range 2E in Lawrence County, Arkansas, at approximate latitude 35-57-52.1907 and longitude 90-52-31.0112 on the Podo Creek 7.5 minute quadrangle map. A county road bridge across Cache River Ditch was replaced with four boxcar culverts that impede and restrict flow. Hydraulic analysis indicates potential adverse flooding upstream. The footprint of fill or direct adverse impact to waters of the U.S. is approximately 0.13 acres. You are in violation of Sections 301 and 404 of the Clean Water Act (33 U.S.C. Sections 1311 and 1344).

You have been previously informed that you may install another 8-foot-diameter culvert at the bottom elevation of the channel or remove all fill and install a bridge. If a written agreement to install another culvert or construct a bridge is not received by November 15, 2002, initial civil prosecution will begin.

A copy of this letter has been furnished to the Natural Resources Conservation Service in Walnut Ridge, Arkansas; USFWS in Conway, Arkansas; EPA in Dallas, Texas; and Mr. Houston, Houston Law Firm, PO Box 3076, Jonesboro, Arkansas.

If you have questions, contact Judy O. DeLoach at (901) 544-0737, and refer to File Number 200109011/Cache 2001-011(JO).

Sincerely,

Jack V. Scherer
Colonel, Corps of Engineers
District Engineer

# ARKANSAS OFFICE OF EMERGENCY SERVICES
# ACT 411/752  PROJECT APPLICATION

| COUNTY | COUNTY JUDGE / MAYOR | POINT OF CONTACT | TELEPHONE # |
|---|---|---|---|
| Lawrence | Alex A. Latham | County Judge's Office | 1-870-886-1110 |

## CATEGORY

☐ Immediate and necessary uninsured needs for individuals and families whose primary residence was destroyed or made uninhabitable as a result of disaster damages and who have not previously received state or federal assistance under the Individual and Family Grant Programs of Temporary Housing Programs from State OES/DHS and/or FEMA

☐ For the local share (12.5%)for FEMA funded Public Assistance (PA projects, or local share (65%) on state only PA projects related to disaster damages.

☐ For local PA projects which resulted from disaster but did not qualify under FEMA of State OES guidelines for federal and /or state assistance.

☐ To upgrade local emergency warning, direction and control and/of communications systems utilized in alerting and warning the public of impending disaster.

☑ For hazard mitigation projects to upgrade facilities susceptible to disaster damage (NOTE: This may also include "local share for federal or state hazard mitigation projects authorized under disaster recovery funding for the eligible period)

| SITE # | LOCATION (BE SPECIFIC) |
|---|---|
| 2 | Bridge #14507, 1 mile South of Hwy. 63 Sedgwick on County Road 717 |

| INSPECTOR | DATE SURVEYED |
|---|---|
|  |  |

## DESCRIPTION OF PROJECT, COST BREAKDOWN AND SCOPE OF WORK

See Attachment

## TOTAL COST OF PROJECT

$52,895.06

Signature of County Judge/Mayor

THIS   PROJECT SHOULD  BE COMPLETED  WITHIN 6 MONTHS  AFTER APPROVAL OF FUNDS.

## SUMMARY OF DOCUMENTATION IN SUPPORT OF AMOUNT CLAIMED
## FOR ELIGIBLE DISASTER WORK

APPLICANT: Lawrence County            GOV'S EP # _____

| Applicant's Reference No. (Warrant, Voucher, Claim or Schedule No.) | Delivery date of articles or performance of services | DOCUMENTATION List documentation (Applicant's payroll, material out of applicant's stock, applicant owned equipment and name of vendor or contractor) by category and line item in the approved project application and give a brief description of the articles or services. | Line item in Approved Project Application (Dollars) | Applicant's Eligible Cost (Dollars) | (Cents) |
|---|---|---|---|---|---|
| | | Job Site #2<br>County Road 717 – Sedgwick<br>West Cache Ditch – Bridge #14507 | | | |
| | | Labor | | | |
| L-2 | 8-1-97<br>Thru<br>8-27-97 | 412 Hours @ $8.23 | | $3,390 | 76 |
| | | 93 Hours @ $10.00 | | $930 | 00 |
| | | Total Labor = $4320.76 | | | |
| | | Equipment – Applicant Owned | | | |
| E-2 | 8-1-97<br>Thru<br>8-27-97 | (5) Dump Trucks 6cy 175hp – 180 Hours @ $13.00 | | $2,340 | 00 |
| | | (1) Excavator 100cy – 60 Hours @ $30.00 | | $1,800 | 00 |
| | | (1) Excavator 50cy – 16 Hours @ $23.00 | | $368 | 00 |
| | | (1) Foreman's Truck 8cy – 72 Hours @ $16.00 | | $1,152 | 00 |
| | | (1) Laborers Truck 1 Ton – 60 Hours @ $9.50 | | $570 | 00 |
| | | (3) Pickups 8cy – 100 Hours @ $16.00 | | $1,600 | 00 |
| | | (1) Equipment Trailor – 4 Hours @ $8.50 | | $34 | 00 |
| | | (1) Welder 56hp – 21 Hours @ $7.00 | | $147 | 00 |
| | | (1) 672-A John Deere Grader 210hp – 16 Hours @ $31.00 | | $496 | 00 |
| | | (1) 720 Champion Grader 210hp – 16 Hours @ $31.00 | | $496 | 00 |
| | | Total Equipment = $9003.00 | | | |
| CL-2 | 8-7-97<br>Thru<br>8-11-97 | Contracted Labor – Welder | | | |
| | | Marts Welding | | $735 | 00 |
| | | Total Contracted Labor = $735.00 | | | |
| | | Materials | | | |
| M-2 | 7-24-97<br>Thru<br>8-27-97 | Northside Steel<br>(4) Railroad tank cars 8'6" x 60' @ $5400.00 each + $1199.00 tax | | $22,799 | 00 |
| | | Certified Steel<br>Flat Steel – $602.75 + $42.92 tax | | $645 | 67 |
| | | Vulcan Materials<br>127 loads riprap = 1668.02 tons @ $4.32 a ton + $369.30 tax | | $7,575 | 14 |
| | | Hedger Brothers<br>102 sq. yds. concrete @ $58.50 a yd. + $425.23 tax | | $6,392 | 23 |
| | | Hedger Brothers<br>(4) rolls of concrete wire @ | | $188 | 54 |
| | | Total Materials = $37,600.58 | | | |
| | | TOTAL COST | | $51,659 | 34 |

JOB SITE #2   Sedgwick - County Road 717 - West Cache Ditch
BRIDGE #14507, 1 mile South of Hwy. 63 Sedgwick on County Road 717

Replace 100' x 16' wood bridge with (4) 8'6" x 40' + 20' extension Railroad tank cars
To provide safer bridge for school bus traffic, mail carriers & heavy farm equipment

## MATERIALS

(4) Railroad tank cars 8'6" x 60' @ $5400.00 each = $21,600.00
150 square yards of concrete @ $66.00 a sq. yd. = $9,900.00
(4) rolls of concrete wire @ $44.00 a roll = $176.00
150 loads of 200# riprap - 14 tons a load = 2100 tons @ $5.46 a ton = $11,466.00
8 posts @ $9.95 each = $79.60
8 signs @ $19.50 each = $156.00
TOTAL MATERIALS = $43,377.60

## LABOR

(5) Truck Drivers - 4 days x 8 hrs. a day = 32 hrs. x 5 = 160 hrs. x $8.23 = $1,316.80
(2) Excavator Operators - 5 days x 8 hrs. a day = 40 hrs. x 2 = 80 hrs. x $8.23 = $658.40
(1) Foreman - 5 days x 8 hrs. = 40 hrs. x $10.00 = $400.00
(4) Laborers - 5 days x 8 hrs. = 40 hrs. x 4 = 160 hrs. x $8.23 = $1,316.80
(1) Welder - 8 hrs. x 4 tank cars = 32 hrs. x $10.00 = $320.00
(1) Driver for equipment tractor trailor = 2 hrs. x $8.23 = $16.46
TOTAL LABOR = $4,028.46

## EQUIPMENT

(1) Excavator 100 cy - 5 days x 8 hrs. a day = 40 hrs. x $30.00 = $1,200.00
(1) Excavator 50 cy - 5 days x 8 hrs. a day = 40 hrs. x $23.00 = $920.00
(1) Equipment Trailor - 2 hrs. x $8.50 = $17.00
(1) Truck Tractor - 2 hrs. x $14.00 = $28.00
(5) Dump Trucks 6 cy 175 hp  4 days x 8 hrs. a day = 32 hrs. x 5 = 160 hrs. x $13.00 = $2080.00
(1) Foreman's Truck  - 8 cy 5 days x 8 hrs. = 40 hrs. x $16.00 = $640.00
(1) Laborers' Truck 1 ton -  5 days x 8 hrs. = 40 hrs. x $9.50 = $380.00
(1) Welder 56 hp - 8 hrs. x 4 tank cars = 32 hrs. x $7.00 = $224.00
TOTAL EQUIPMENT = $5,489.00

TOTAL COST = $52,895.06





























