**IN THE UNITED STATES DISTRICT COURT**
**EASTER DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**CLEO WATKINS,** *et al.*                                                                    **PLAINTIFFS**

**v.**                                        **Case No. 3:17-cv-00272-KGB**

**LAWRENCE COUNTY, ARKANSAS,** *et al.*                                    **DEFENDANTS**

**<u>ORDER</u>**

Before the Court are the motions *in limine*, with supporting briefs of law incorporated, filed

by defendants Lawrence County, Arkansas; John Thomison, in his official capacity as County

Judge of Lawrence County; and William Powell, Donald Richey, Lloyd Clark, Heath Davis, Ernest

Briner, Ronald Ingram, Tracy Moore, Kenney Jones, and Alex Latham, in their official capacities

as members of the Lawrence County Quorum Court (Dkt. No. 134).   Plaintiffs Cleo Watkins;

Brenda Watkins; Pyles Family Farms, LLC; Victor Hutcherson; Alevella Hutcherson; Helen Mae

Knight, Trustee of the Helen Mae Knight Trust; Michael Watkins; Betty Watkins; and George

Carney have responded to defendants' motions *in limine* (Dkt. No. 143).   Also before the Court is

the second omnibus motion *in limine* of plaintiffs Cleo Watkins; Pyles Family Farms, LLC; Victor

Hutcherson; Alevella Hutcherson; Helen Knight; Michael Watkins; Betty Watkins; and George

Carney (Dkt. No. 137).   Defendants have responded to plaintiffs' second omnibus motion *in limine*

(Dkt. No. 142).   For the following reasons, the Court grants in part and denies in part the motions

*in limine* (Dkt. Nos. 134; 137).

As to those matters about which the Court grants an *in limine* motion in favor of either

party, all parties, their counsel, and witnesses are directed to refrain from making any mention

through interrogation, *voir dire* examination, opening statement, arguments, or otherwise, either

directly or indirectly, concerning the matters about which the Court grants an *in limine* motion,

without first approaching the bench and obtaining a ruling from the Court outside the presence of all prospective jurors and the jurors ultimately selected to try this case. Further, all counsel are required to communicate this Court's rulings to their clients and witnesses who may be called to testify in this matter.

## I.      Defendants' Motions *In Limine*

### A.      Plaintiffs' Tax Returns

Defendants move to exclude *in limine* plaintiffs' tax returns as irrelevant (Dkt. No. 134, at 1-2). Plaintiffs respond that they do not oppose defendants' motion *in limine* to exclude their tax returns at trial (Dkt. No. 143, at 2). The Court grants defendants' motion *in limine* to exclude plaintiffs' tax returns. If any party seeks to introduce plaintiffs tax returns for any purpose at trial, they must first approach the bench and obtain a ruling from the Court outside the presence of the jury.

### B.      Plaintiffs' Farm Service Administration Records

Defendants move for the Court to exclude *in limine* Farm Service Administration ("FSA") records as irrelevant because defendants contend that the FSA records will show crop yields for plaintiffs' farms, and defendants maintain that the Court has ruled such evidence inadmissible (*Id.*, (citing Dkt. No. 115, at 14-15)). At a pre-trial conference with the parties held November 10, 2021, defendants withdrew their motion *in limine* as to the FSA records (Dkt. No. 134, at 2). Accordingly, the Court denies as moot defendants' motion *in limine* to exclude the FSA records.

### C.      Defendants' Rainfall Data, And Summaries, And Request For Judicial Notice

Defendants ask the Court to declare admissible "data and summaries of data on rainfall and flow for the Cache River and surrounding areas" and ask the Court to take judicial notice of this data (Dkt. No. 134, at 2-3). Defendants assert that the data comes from the National Oceanic and

Atmospheric Administration ("NOAA"), an arm of the United States Department of Commerce, and the United States Geological Survey ("USGS"), an arm of the United States Department of the Interior (*Id.*, at 2).  Defendants claim the data is available to anyone on these websites, is self-authenticating, and is admissible under Federal Rule of Civil Procedure 44(a) (*Id.*).  Defendants argue the summaries of the data sets are admissible under Federal Rule of Evidence 1006 (*Id.*, at 2-3).

As a general matter, plaintiffs assert that defendants have not presented sufficient information to permit the Court to make an advanced evidentiary ruling because defendants have not referenced specific evidence or exhibits (Dkt. No. 143, at 3).

As to the rainfall data, plaintiffs argue that the rainfall data is not relevant and requires expert interpretation, analysis, and explanation which defendants cannot provide; defendants have not provided the underlying rainfall data to the Court for it to evaluate the data under Federal Rule of Evidence 201; the rainfall data is irrelevant; and if the Court determines the rainfall data should be excluded as plaintiffs argue in their second omnibus motion *in limine*, the Court should deny as moot the defendants' request for judicial notice (*Id.*, at 3-4).

With respect to defendants' request to present flow data from the USGS gage at Egypt, Arkansas, plaintiffs state that the USGS's flow data was reviewed and relied upon by their expert, so plaintiffs do not object to the Court taking judicial notice of the underlying flow data (*Id.*, at 4). Plaintiffs state, however, that defendants should produce the data for the Court to review before it takes judicial notice of the data (*Id.*).

As for defendants' request to use summaries of these data sets under Federal Rule of Evidence 1006, plaintiffs state that they are unaware of summaries of flow data and as to summaries of rainfall data, the defendants have not given the Court sufficient information (*Id.*, at

4).  Plaintiffs state that if the summaries referred to in defendants' motion are "lawyer-created charts" then defense counsel must testify regarding the chart in order for it to be admissible (*Id.*, at 5).  Plaintiffs assert that the person who created the chart included in defendants' summary judgment filing that compared Mark Johnson's flood days to rainfall dates around the time of the flood dates that are more than one half inch used judgment and must testify and be cross-examined regarding the selection and exclusion of data (*Id.*, at 6 (citing to Dkt. No. 55-13)).  Plaintiffs also state that testimony is required regarding a chart produced by defendants that provides the total precipitation for each year, as available, from 1990 through 2020 (*Id.* (citing to 143-1)).  Finally, plaintiffs address a chart defendants presented at summary judgment and characterized the data as Rainfall Totals Near Egypt, Arkansas, from 2008 to 2018 (*Id.* (citing Dkt. No. 55, ¶ 18 referencing Dkt. No. 55-14)).  Plaintiffs assert that they do not know of a witness who can testify to the information on page one of the chart, and, as to page two, the chart was prepared for and included as part of the Cache River Watershed Management Plan created by FTN Associates (*Id.*).  Plaintiffs argue that the charts are not admissible unless a witness is available for cross-examination at trial, so the Court should deny defendants' motion *in limine* as to defendants' summaries of data.

Federal Rule of Evidence 1006 permits summaries of voluminous data.  It is the Court's understanding that plaintiffs do not object to the veracity of the underlying data in defendants' summaries or to the veracity of the summary of the data, but rather plaintiffs object on relevance and to the lack of an expert witness who they deem qualified to testify about the summaries.

As the Court stated at the pre-trial conference, the Court generally views rainfall data from reliable government sources as relevant to issues in the case.  The Court will, however, withhold taking judicial notice of particular data at this stage because defendants have not identified for the Court the particular data of which they would like the Court to take judicial notice.  The Court will

4

also withhold ruling on the admissibility of any of defendants' summaries of data at this stage because defendants have not identified the particular summaries on which they would like the Court to rule.  The Court will also reserve ruling until trial on whether a particular witness is competent to testify regarding the data and whether the particular data that defendants are seeking to admit is relevant.

For these reasons, the Court grants in part and denies in part defendants' motion *in limine*, consistent with the rulings in this Order (Dkt. No. 134).

## II.     Plaintiffs' Second Omnibus Motion *In Limine*

Plaintiffs generally argue that the evidence they seek to exclude in their motion *in limine* is not relevant as set forth in Federal Rule of Evidence 401, and, if the Court finds the evidence relevant, the Court should exclude the evidence applying the balancing test set forth in Federal Rule of Evidence 403 (Dkt. No. 138, at 1-2).  The Court will discuss separately each category of evidence plaintiffs seek to exclude *in limine*.

### A.     Evidence Of Replacement Costs And Lawrence County's Finances

Plaintiffs seek to exclude *in limine* evidence regarding potential costs of replacing the culvert structure and Lawrence County, Arkansas's lack of funding (Dkt. No. 137, at 1-2). Defendants respond that they do not intend to offer evidence regarding replacement costs or Lawrence County's finances (Dkt. No. 142, ¶ 1).  The Court grants plaintiffs' motion *in limine* to exclude evidence regarding potential costs of replacing the culvert structure and Lawrence County, Arkansas's lack of funding (Dkt. No. 137, at 1-2).  If any party seeks to introduce evidence regarding potential costs of replacing the culvert structure or Lawrence County, Arkansas's lack of funding for any purpose at trial, they must first approach the bench and obtain a ruling from the Court outside the presence of the jury.

### B.  Evidence Of Rainfall

Plaintiffs seek to exclude *in limine* testimony and other evidence of rainfall on grounds that defendants have not disclosed any expert qualified to opine on the subject under Federal Rule of Evidence 701 and on grounds the evidence is irrelevant under Federal Rules of Evidence 401 and 403.  Plaintiffs cite to *Hendricks v. United States*, 14 Cl. Ct. 143, 149 (1987), to assert that defendants' witnesses cannot testify that the recent rainfall is excessive compared to historical rainfall and that rainfall causes the plaintiffs' properties to flood (Dkt. No. 138, at 5).  Plaintiffs urge that expert testimony is needed to establish "actual facts and application of those facts to an ultimate issue in the case" and seek exclusion of such testimony in part because "[d]efendants did not disclose any experts qualified to opine in the areas of meteorology, climatology, hydrology, or geography" who can "frame the issue of rainfall for the jury."  Plaintiffs ask the Court to exclude all evidence of rainfall (*Id.*, at 5-6).

Defendants respond that lay witnesses can offer opinion testimony under Federal Rule of Evidence 701 so long as it is:  "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." (*Id.*, ¶ 2 (quoting  Fed. R. Evid. 701)).  Defendants assert that farmers who live near the bridge at issue in the case have firsthand knowledge and experience with rainfall and its effects on the fields in the area and can offer lay testimony as to how rainfall affects flooding on these farms because they have witnessed it for years and deal with flooding on their own farms (*Id.*, ¶ 3).  Defendants state that no defense witness will "blindly assert that recent rainfall is excessive compared to historical rainfall," but defendants do intend to introduce data showing recent rainfall totals in comparison to historical totals based on "government data on localized rainfall." (*Id.*, ¶ 4).  Defendants also

6

assert that witness testimony "will be limited to things they have witnessed with their own eyes." (*Id*., ¶ 5 (citing to *Herriman v. United States.*, 8 Cl. Ct. 411, 420 (1985), for the proposition that "lay testimony would not be probative of causation except insofar as the lay witness had observed the phenomena which they were to address")). Defendants argue that the rainfall data is self-authenticating under Federal Rule of Civil Procedure 44(a) (*Id*., ¶ 6 (citing *Minnehaha County, S.D. v. Kelley*, 150 F.2d 356, 361 (8th Cir. 1945)). Defendants assert that in *Herriman* and *Minnehaha County, S.D.*, the courts admitted the data "with the insight that the fact finder could afford less weight to the rainfall data and corresponding testimony." (*Id*., ¶ 7).

As the Court stated at the pre-trial conference, the Court generally views rainfall data from reliable government sources as relevant to issues in the case. Accordingly, the Court denies plaintiffs' motion to exclude *in limine* defendants' evidence of rainfall. Consistent with the Court's discussion with counsel during the pretrial conference on these motions, any party may object to particular testimony and evidence at trial, including but not limited to plaintiffs objecting to what they contend is improper expert testimony, not properly supported or disclosed, and improper causation testimony.

### C.     Landowners Near County Road 717

Plaintiffs seek to exclude *in limine* defendants' testimony and other evidence from nearby landowners to the effect that the culvert structure does not divert water onto their properties (Dkt. No. 137, ¶ 6). Plaintiffs state the evidence is not relevant to this case because "[t]here is a myriad of geographical, ecological, and hydrological explanations as to why some properties flood while others do not." (*Id*., ¶ 7). Plaintiffs argue further that neighboring landowners, as lay witnesses, are not qualified to testify about why their land does or does not flood. (*Id*. (citing Fed. R. Evid.

701)).  Plaintiffs also assert that the lay witness testimony from non-parties is irrelevant, unhelpful, and should be excluded (*Id*., ¶ 8 (citing Fed. R. Evid. 401; 403)).

Defendants state that the landowner and farmer witnesses who they have identified own properties numbered and shaded pink in figure one of Mr. Johnson's report (Dkt. No. 142, ¶ 8). Defendants assert that they intend to call some witnesses in the area with farm properties near plaintiffs to "describe flooding conditions and rain conditions with which they are very familiar" and that the testimony is relevant because the conditions on the non-plaintiff landowners' properties is not different than that on plaintiffs' properties (*Id*., ¶ 10-12).  Defendants also assert that the testimony of non-plaintiff landowners is relevant to establish that any flooding suffered by plaintiffs is the same or similar to that suffered by non-parties and to establish that plaintiffs' claimed damages are not unique for purposes of proving inverse condemnation (*Id*., ¶ 13).

The Court denies plaintiffs' motion to exclude *in limine* defendants' testimony and other evidence from nearby landowners based on personal experience (Dkt. No. 137).  Consistent with the Court's discussion with counsel during the pretrial conference on these motions, any party may object to particular testimony and evidence at trial, including but not limited to plaintiffs objecting to what they contend is improper expert testimony not properly supported or disclosed and improper causation testimony.

### D.    Crop Insurance

Plaintiffs seek to exclude *in limine* evidence that they maintain crop insurance policies or made crop insurance claims as irrelevant and prejudicial (Dkt. No. 137, ¶ 9 (citing Fed. R. Evid. 401; 403)).  Defendants state that they do not intend to offer evidence that plaintiffs made any type of insurance claim for crops they may have lost due to flooding because such evidence would be barred by the collateral source rule (Dkt. No. 142, ¶ 14).  The Court grants plaintiffs' motion *in*

*limine* to exclude evidence that plaintiffs maintained crop insurance policies or made crop insurance claims on crop insurance policies (Dkt. No. 137).

Defendants stated in their brief and at the pre-trial conference that they intend to offer testimony about the United States Department of Agriculture's ("USDA") prevented planting policies (Dkt. No. 142, ¶ 15). Defendants argue that the USDA's prevented planting policy does not fall under the collateral source rule because prevented planting involves a decision made by a landowner not to plant a crop even before the insured has ever suffered a loss. Defendants assert that the evidence is relevant because, if plaintiffs participated in the prevented planting program, that participation will negate the damages element to their claims. Plaintiffs object to defendants' introduction of any prevented planting evidence because they argue that the applicable standard of damages in the case is fair market rental value and that their expert already accounted for this by not including prevented planting crops in his calculation of damages.

The Court denies plaintiffs' motion to exclude *in limine* evidence regarding their participation in the USDA's prevented planting program.

### E.   Cache River Drainage District

Plaintiffs seek to exclude *in limine* evidence regarding the Cache River Drainage District ("CRDD") (Dkt. No. 137, ¶¶ 10-12). Plaintiffs argue that the evidence is irrelevant because CRDD operates along the entire course of the Cache River, and plaintiffs maintain that this case concerns localized flooding in proximity to the culvert structure and that efforts along the entire river do not have any bearing on whether the culvert structure causes flooding of plaintiffs' properties (*Id.*, ¶ 12 (citing Fed. R. Evid. 401; 403)).

Defendants contend that plaintiffs' arguments as to why the CRDD evidence should be excluded are misplaced because they intend to offer evidence that plaintiffs' farms are in the exact

downstream area that witnesses will testify has suffered increased flooding from upstream projects; defendants' witnesses have firsthand knowledge about the projects and have witnessed the effects of the projects; and a jury can distinguish between the CRDD and plaintiffs' properties, which are a subsection of the CRDD (*Id.*, ¶¶ 17-21).

The Court denies plaintiffs' motion *in limine* to exclude defendants' evidence regarding the CRDD (Dkt. No. 137).

### F.      Dr. Shawkat Ali

Plaintiffs ask the Court to exclude *in limine* the testimony of defendants' expert Dr. Shawkat Ali (Dkt. No. 137, ¶¶ 13-15).  Plaintiffs incorporate their briefing on their first motion to exclude Dr. Ali's testimony (*Id.*, ¶ 15 (citing Dkt. Nos. 46, 47)).  In their motion to exclude Dr. Ali's testimony *in limine*, plaintiffs continue to assert that Dr. Ali's methodology is unreliable or unaccepted among the Arkansas engineering community and that he is not qualified to opine on what caused plaintiffs' properties to flood because it is outside of his expertise as an engineer (*Id.*, ¶ 14).

Defendants argue that plaintiffs' citation to Arkansas Code Annotated § 17-30-305(a)(1)(j) as a reason to exclude Dr. Ali's testimony is misplaced because that is a provision regarding instances that lead to suspension or revocation of a professional engineer's license and because there is no prohibition in the statue that would prevent the Court from allowing Dr. Ali to testify as an expert witness or prohibit the Court from admitting Dr. Ali's opinions (Dkt. No. 142, ¶¶ 22-23).  Defendants assert that plaintiffs do not approve of a United States Army Corp of Engineers' assessment of flow capacity of the bridge but that there is no doubt that the assessment was prepared by the United States Army Corp of Engineers; that Dr. Ali has testified that, as a

professional engineer, he may safely rely on tests utilized or completed by engineers of the United States Army Corp of Engineers; and that plaintiffs present no authority to the contrary (*Id.*, ¶ 24).

For the reasons stated in the Court's prior order (Dkt. No. 107, at 21-23), the Court denies plaintiffs' motion to exclude *in limine* Dr. Ali's opinions and testimony (Dkt. No. 137).

### G.   Altercation

Plaintiffs move to exclude *in limine* testimony regarding an alleged altercation between Scotty Joe Turner and plaintiff Cleo Watkins (Dkt. No. 137, ¶¶ 16-17).  Defendants state they do not intend to offer evidence regarding the alleged altercation (Dkt. No. 142, ¶ 25).  The Court grants plaintiffs' motion to exclude *in limine* testimony regarding an alleged altercation between Scotty Joe Turner and plaintiff Cleo Watkins (Dkt. No. 137).  If any party seeks to introduce evidence regarding the altercation between Scotty Joe Turner and plaintiff Cleo Watkins, they must first approach the bench and obtain a ruling from the Court outside the presence of the jury.

### H.   Improper Evidence

Plaintiffs ask the Court to exclude *in limine* the following exhibits they expect defendants to offer into evidence:

- 19 photographs taken by defendant Lawrence County Judge John Thomison in February 2019, that purport to show flooding events on the Cache River and on the West Cache River Slough (Dkt. No. 74-1, at 2-20);

- the Cache River Watershed-Based Management Plan (Dkt. No. 51-7); and

- Engineering Services Contract from B.A. Engineering (Dkt. No. 91-6).

Dkt. No. 137, ¶ 18.  The Court addresses each category of documents.

### 1.   19 Photographs

Plaintiffs seek to exclude *in limine* 19 photographs taken by defendant Lawrence County Judge John Thomison in February 2019, that purport to show flooding events on the Cache River and on the West Cache River Slough (Dkt. No. 74-1, at 2-20).  The Court denied without prejudice plaintiffs' motion to strike at least one of Mr. Thomison's photographs at an earlier stage of this lawsuit (Dkt. No. 115, at 6).  The Court stated at that time that it would at the trial of this matter permit all parties or no parties to introduce demonstrative exhibits not disclosed during discovery (*Id.*).

The Court does not, however, understand plaintiffs to be moving to exclude admission of the photographs at trial based on defendants' failure to disclose the photographs during discovery. Instead, plaintiffs argue that the photographs are unreliable because they purport to depict data gathered for a survey measurement, but defendants have not provided identification of the individual group managing the survey instrument, the qualifications of the surveyor involved, the results of these readings, or the survey (Dkt. No. 138, at 13).  Plaintiffs assert that the defendants do not have an expert who can testify regarding the information and application of that information to the fact in this case (*Id.*, at 13-14).

Defendants argue that Mr. Thomison's photographs are descriptive, easily authenticated, and simply factual (Dkt. No. 142, ¶ 26).  Defendants state that Mr. Thomison will testify at trial; that Mr. Thomison will identify the photographs as ones that he took on his cell phone showing the streams and fields on the dates shown; and that Mr. Thomison will not attempt to interpret them through any type of expert testimony (*Id.*).  Defendants assert that any objection made by plaintiffs in an effort to exclude the photographs goes to the weight of the evidence presented, not to its relevance or reliability (*Id.*).

The Court denies plaintiffs' motion to exclude *in limine* Mr. Thomison's photographs (Dkt. No. 138, at 12-13).

### 2.      Cache River Watershed-Based Management Plan

Plaintiffs contend that the Court should exclude *in limine* the Cache River Watershed-Based Management Plan from FTN Associates (Dkt. No. 138, at 13).  Following the pre-trial hearing, Counsel for plaintiffs notified the Court and opposing counsel that plaintiffs are withdrawing their objection to the admission of the Cache River Watershed-Based Management Plan.  The Court denies as moot plaintiffs' motion to exclude *in limine* the Cache River Watershed-Based Management Plan (*Id.*).

### 3.      Engineering Services Contract From B.A. Engineering

Plaintiffs contend that the Court should exclude *in limine* the Engineering Services Contract from B.A. Engineering because it is an engineering report that defendants did not obtain for purposes of this litigation and because defendants have not designated anyone from B.A. Engineering as an expert in this matter (Dkt. No. 138, at 13).  Plaintiffs acknowledge that defendants have listed Bernie Auld, whose signature appears on the Engineering Service Contract, as a potential witness, but they assert that defendants do not have an expert who can testify regarding the information in the Engineering Services Contract (*Id.*, at 13-14).

Defendants assert that they seek to use the Engineering Services Contract with B.A. Engineering as an exhibit or as a demonstrative aid to ensure that "the jury is aware of the dredging project which will commence immediately on the East Cache River and the West Cache River Slough providing for dredging of both ditches of two feet of sedimentation from each streambed to alleviate flooding in the area (Dkt. No. 142, ¶ 28).

The Court denies plaintiffs' motion to exclude *in limine* the Engineering Services Contract from B.A. Engineering (Dkt. No. 137).

## IV.    Conclusion

For the above reasons, the Court grants in part and denies in part defendants' motions *in limine* and grants in part and denies in part plaintiffs' second omnibus motion *in limine* (Dkt. Nos. 134, 137).

It is so ordered, this the 12th day of November, 2021.

Kristine G. Baker
United States District Court Judge

14