# IN THE UNITED STATES DISTRICT COURT
## EASTER DISTRICT OF ARKANSAS
### NORTHERN DIVISION

**CLEO WATKINS,** *et al.*                                                                    **PLAINTIFFS**

**v.**                                    **Case No. 3:17-cv-00272-KGB**

**LAWRENCE COUNTY, ARKANSAS,** *et al.*                                          **DEFENDANTS**

## <u>ORDER</u>

Before the Court is the renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) of defendants Lawrence County, Arkansas; John Thomison, in his official capacity as County Judge of Lawrence County, Arkansas; and William Powell, Donald Richey, Lloyd Clark, Heath Davis, Ernest Briner, Ronald Ingram, Tracy Moore, Kenny Jones, and Alex Latham, in their official capacities as members of the Lawrence County Quorum Court (Dkt. No. 169). At trial, defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 prior to submission of the case to the jury. Fed. R. Civ. P. 50(a). Plaintiffs Cleo Watkins; Brenda Watkins; Pyles Family Farms, LLC; Victor Hutcheson;[1] Alvella Hutcheson;[2] Helen Knight, as Trustee of the Helen Mae Knight Trust; Michael Watkins; Betty Watkins; and George Carney responded to the motion for judgment as a matter of law at trial and responded to defendants' renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) (Dkt. No. 174). Defendants replied to plaintiffs' response to its renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) (Dkt. No. 177).

---

[1] The Clerk of the Court is directed to correct the spelling of Victor Hutcheson's name on the docket.

[2] The Clerk of the Court is directed to correct the spelling of Alvella Hutcheson's name on the docket.

For the reasons stated below, the Court denies defendants' renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) (Dkt. No. 169).

## I.        Procedural Background

Plaintiffs bring this action pursuant to Arkansas Code Annotated § 14-268-105; Arkansas Code Annotated § 18-15-703; the Takings Clause of the Fifth Amendment to the United States Constitution; the Takings Cause of Article Two, Section 22 of the Arkansas Constitution; 42 U.S.C. § 1983; the Arkansas Civil Rights Act ("ACRA"), Arkansas Code Annotated § 16-123-105(a); and *Ex parte Young*, 209 U.S. 123 (1908) (Dkt. Nos. 17, ¶¶ 55-190; 54, at 4; 150, ¶ 7). Plaintiffs ask this Court to award them judgment against defendants in the form of injunctive relief; actual damages; consequential damages; double damages pursuant to Arkansas Code Annotated § 18-15-702 and any other applicable statutory penalty; all other fees, costs, and expenses to which they may be lawfully entitled, including pre- and post-judgment interest; and other just and proper relief to which they may be entitled (Dkt. Nos. 17, at 26; 150, ¶ 7).

This matter concerns a bridge in Lawrence County, Arkansas, over the West Cache River Slough ("the Slough") (Dkt. Nos. 17, at 2; 150, ¶ 7).  Plaintiffs, farmers with agricultural fields in the East Cache River Basin, allege that defendants' actions have turned the bridge into a *de facto* dam causing substantial sediment buildup, choking off most of the Slough from the Cache River proper, and causing substantial flooding of plaintiffs' lands and destruction of their crops (*Id.*). Defendants deny the allegations.

Before trial, the parties entered a joint stipulation of partial dismissal dismissing plaintiffs' cause of action for public nuisance under Arkansas Code Annotated § 14-268-105 (Dkt. No. 62). Plaintiffs moved for partial summary judgment under Arkansas Code Annotated § 18-15-703 arguing the culvert bridge is a *de facto* dam, stoppage, or obstruction and that its construction

violated three separate laws (Dkt. No. 108, at 6-7). The Court reserved ruling on the legal issues giving the parties an opportunity to address further legal issues on that claim and denied plaintiffs' motion for partial summary judgment (Dkt. No. 108, at 11, 38). Defendants moved for summary judgment on all of plaintiffs' claims (Dkt. No. 53). Viewing the record evidence available to the Court at that stage of the litigation in the light most favorable to the plaintiffs, the Court denied defendants' summary judgment as to plaintiffs' public nuisance claim under § 18-15-703, takings claim under both the United States Constitution and the Arkansas Constitution, and additional constitutional claims brought pursuant to the ACRA (Dkt. No. 108, at 38). However, the Court granted defendants' motion for summary judgment as it relates to plaintiffs' federal and state equal protection claims and plaintiffs' Fourteenth Amendment substantive due process claims (*Id.*, at 31, 38). To the extent plaintiffs through their language suggest an Eighth Amendment violation, the Court found as a matter of law the Eighth Amendment inapplicable based on the undisputed record evidence (*Id.*, at 32). The Court also determined that the *Ex parte Young* doctrine confers no substantive rights (*Id.*, at 38).

The case proceeded to a jury trial in November 2021 (Dkt. Nos. 151; 152; 153; 154; 155; 156). Before the case proceeded to the jury, the Court determined that, to the extent that plaintiffs sought relief on their inverse condemnation claims under Arkansas Code Annotated § 18-15-410, plaintiffs did not have standing based on the problematic language in the statute regarding the county. Further the Court concluded that, to the extent plaintiffs sought relief on their inverse condemnation claims under Arkansas Code Annotated § 18-15-202, addressing water and sewer facilities, that statute is inapplicable to the facts of this case. The Court also dismissed as a matter of law plaintiffs' nuisance claim under Arkansas Code Annotated § 18-15-703. Plaintiffs argued that the culvert bridge is a *de facto* dam, stoppage, or obstruction and that its construction violated

3

three or four separate laws including Ordinance 1991-3; § 404 of the Clean Water Act, 33 U.S.C. § 1344; and federal regulations promulgated under the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et seq.*, 44 C.F.R. § 60.1.

Noting that it had reserved ruling on the legal issues at the summary judgment stage, the Court found as a matter of law that, based upon the language of the statute as well as the Arkansas Supreme Court case of *Nahay v. Arkansas Irrigation Co.*, the statutory scheme when enacted in 1838 contemplated mill dams that were the primary subject of the legislation and that the culvert bridge at issue in this case is not a mill dam.  190 S.W.2d 965 (Ark. 1945).  Further, Ordinance 1991-3 established the rules and regulations for construction of buildings within a floodplain and required a "structure" with walls and a roof.  The culvert bridge structure does not have walls and a roof, so the Court concluded that the ordinance is not applicable.  The Court rejected application of the Clean Water Act based on Judge Marshall's Order early in this case finding that there is no private right of action under the Clean Water Act (Dkt. No. 12).  The Court noted that plaintiffs had not presented any evidence to support a violation of federal regulations under the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et seq.*, 44 C.F.R. § 60.1.  Finally, the Court concluded that, to the extent plaintiffs claimed a violation of the duties of a county judge under Arkansas Code Annotated § 14-14-1102, this is some evidence of negligence and that the county has immunity from claims that are based on negligence under Arkansas Code Annotated § 21-9-301.

Separate and apart from not recognizing the claim under Arkansas Code Annotated § 18-15-702, the Court found that there was a problem with plaintiffs' claim for double damages based on the statute of limitations.  The parties stipulated that, "[a]ny person who shall build or raise any dam or any other stoppage or obstruction in or across any water course without first obtaining

permission from the proper court according to law and shall there by work any material injury to any other person by overflowing his or her lands shall forfeit to the party injured double damages for the injury to be recovered in a civil action."  The parties further stipulated that the bridge structure was built in 1997, and the fifth culvert was added in 2003.  Accordingly, the Court concluded that, because under Arkansas law there is a three year statute of limitations for an injury to real property, the plaintiffs' claim for double damages under Arkansas Code Annotate § 18-15-702 is time barred, and plaintiffs had not alleged sufficient facts to establish equitable tolling.  The Court took the remainder of defendants' motion for judgment as a matter of law under advisement.

The case went to the jury on plaintiffs' takings claims pursuant to the Takings Clause of the Fifth Amendment to the United States Constitution; the Takings Cause of Article Two, Section 22 of the Arkansas Constitution; and 42 U.S.C. § 1983 (Dkt. No. 160).  The case was submitted to the jury on a verdict form that posed questions for each parcel owned by each plaintiff (Dkt. No. 163).  The jury returned verdicts in favor of plaintiffs (*Id.*).

After the jury returned their verdicts, defendants asked the Court if their Rule 50 motion was still under advisement.  The Court confirmed that the sufficiency of the evidence portion of the motion for the takings claims was still under advisement.  The Court advised defendants that it could set briefing for a motion for new trial if defendants requested for the Court to do so.

Defendants renewed their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) (Dkt. No. 169).  In their renewed motion for judgment as a matter of law, defendants argue plaintiffs did not meet their burden of proof that any actions taken by defendants caused any reduction in the fair market rental value of plaintiffs' properties (Dkt. No. 169, ¶ 4). Defendants rely on the pleadings of the parties, the testimony and other proof presented at trial,

the arguments made at trial in support of their Rule 50 motion, and their brief in support of their motion to support their renewed motion for judgment as a matter of law (*Id.*, ¶ 5).

Plaintiffs respond to defendants' renewed motion for judgment as a matter of law that defendants advance arguments in their motion for judgment as a matter of law under Federal Rule of Civil Procedure Rule 50(b) that they did not raise at trial, that plaintiffs presented sufficient evidence to prove their takings claims, and that the damages the jury awarded are supported by the evidence (Dkt. No. 174).

Defendants replied to plaintiffs' response to their renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). Defendants assert that they made all of their arguments in their initial Rule 50(a) motion that they advance in their renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), and defendants maintain that damages are a necessary element of a taking and that plaintiffs must offer more than speculative evidence of damages to prove liability (Dkt. No. 177).

### A.      Legal Standard

Judgment as a matter of law should be rendered when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1); *Stults v. American Pop Corn Co.*, 815 F.3d 409, 418 (8th Cir. 2016).  "In deciding a motion for judgment as a matter of law, the court shall:

> (1) Resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.

*Stults*, 815 F.3d, at 418 (citing *Jones v. Edwards*, 770 F.2d 739, 740 (8th Cir. 1985)).

### B.      Analysis

As an initial matter, plaintiffs incorporate by reference any responsive argument they made during or immediately after trial (Dkt. No. 174).  Plaintiffs admit that they do not have the benefit of a trial transcript, but plaintiffs state that "[d]efendants may be trying to advance some new arguments now, for the first time" in their renewed motion for judgment as a matter or law under Federal Rule of Civil Procedure 50(b) (Dkt. No. 174, at 3).  Plaintiffs do not identify the arguments made by defendants that plaintiffs consider to be "new."  Plaintiffs argue, however, that the Court should not permit defendants to raise arguments that defendants failed to raise at trial (Dkt. No. 174, at 3).

"Rule 50(b) allows the moving party to renew its Rule 50(a) motion after the jury renders its verdict, but a party may not advance new arguments in its Rule 50(b) motion that were not properly raised in its Rule 50(a) motion." *Miller v. Huron Reg'l Med. Ctr.*, 936 F.3d 841, 847–48 (8th Cir. 2019) (citing *Milhauser v. Minco Prods., Inc*., 701 F.3d 268, 273 (8th Cir. 2012)).

From the Court's review of the record, defendants did not raise and could not have raised in their Rule 50(a) motion at trial their argument that the jury returned verdicts with dollar values that were not mentioned by plaintiffs' counsel or their expert at trial.  Additionally, defendants raise for the first time in their reply to the response to the renewed motion for judgment as a matter of law that plaintiffs' damages expert, Jim Grisham, did not offer testimony of damages regarding plaintiff George Carney's farm and yet the jury returned a verdict for Mr. Carney (Dkt. No. 177, at 2).  The Court concludes that it will not consider these arguments at this stage because defendants raised them for the first time in their renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and in their reply to plaintiffs' response to defendants' renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b).

From the Court's review of the record, defendants raised their remaining arguments when making their motion under Federal Rule of Civil Procedure 50(a) at trial.[3]

Defendants argue that they are entitled to judgment as a matter of law because plaintiffs did not meet their burden of proof that any action taken by defendants caused any reduction in the fair market rental value of plaintiffs' property (Dkt. Nos. 169, ¶ 4; 170, at 3-5). Defendants contend that none of the plaintiffs' witnesses "gave any testimony that [plaintiffs' expert Marc] Johnson's theory of additional flooding caused a reduction in the rental value of their properties." (Dkt. No. 170, at 4). Defendants assert that plaintiffs' damages expert Mr. Grisham "testified to the total rental value of Plaintiffs' farms based on acres planted each year using the average yield per acre for four Lawrence County farms that he manages." (Dkt. No. 170, at 4). Defendants contend that neither Mr. Grisham nor any of plaintiffs' representatives gave any testimony as to whether the rental value of plaintiffs' properties had actually been affected in any given year (Dkt. No. 170, at 4). Defendants argue that, because "rental value of a farm is determined as a percentage of crop yield, it is something that can be measured tangibly by comparing actual yield to expected yield. Plaintiffs chose not to do that. Since they did not, any reduction in rental value is speculative and without a causal link to Defendants' bridge" (*Id*., at 4).

Plaintiffs respond to defendants' renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) (Dkt. No. 174). Plaintiffs argue that defendants create

---

[3]   In making their motion at trial under Federal Rule of Civil Procedure 50(a), defendants did not specifically refer the Court to the Eighth Circuit Court of Appeals' decision in *Hinz v. Neuroscience, Inc.* 538 F.3d 979 (8th Cir. 2008). Defendants did, however, in arguing their Rule 50(a) motion maintain that plaintiffs failed to put on any evidence of a reduction in the fair market rental value of their land and that plaintiffs failed to make a connection between flood water that was on their land and Mr. Grisham's theory about crop yields and what plaintiffs' properties should have produced. The Court will consider defendants' citation to *Hinz* as support generally for defendants' Rule 50(a) argument that plaintiffs failed to prove sufficiently damages at trial.

confusion between liability and damages. Plaintiffs contend that whether they presented sufficient evidence to support the jury's damage award is a separate issue from whether they adequately established liability for their takings claim (Dkt. No. 174, at 4).

The Court will address separately defendants' takings and damages arguments while acknowledging the two are related closely.

### 1. Takings Claims

Defendants cite to *Daniel v. City of Ashdown* for the proposition that "[a] taking occurs when a governmental act substantially diminishes the value of a landowner's land." 232 S.W.3d 511 (Ark. Ct. App. 2006). Plaintiffs maintain defendants' definition of a taking is too simplistic (Dkt. No. 174). At trial, the Court instructed the jury that a taking occurs when government action results in "an appropriation of, or damages to, or a substantially diminished value of plaintiff's property." (Dkt. No. 160, at 19). *See* U.S. Const. amend. V (". . . nor shall private property be taken for public use, without just compensation." (emphasis added)); Ark. Const. art. II, § 22 ("[P]rivate property shall not be taken, appropriated, or damaged *for public use*, without just compensation therefor."). The Court also instructed the jury that:

> In determining whether a[n] interference with a plaintiff's property rights is a taking by defendants, you may consider:
>
> a.  The time or duration of the interference with plaintiff's property, and
>
> b.  The degree to which the interference is intended or is the foreseeable result of authorized government action, and
>
> c.  The character of the land at issue, and
>
> d.  The owner's reasonable investment-backed expectations regarding the land's use, and
>
> e.  The severity of the interference

(Dkt. No. 160, at 21).  *See Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 38-39 (2012).

Plaintiffs argue that they presented sufficient evidence for the jury to prove their takings claims (Dkt. No. 174, at 4-8).  Defendants contend that none of the plaintiffs' witnesses "gave any testimony that [Mr.] Johnson's theory of additional flooding cause[s] a reduction in the rental value of their properties" to support plaintiffs' takings claims (Dkt. No. 170, at 4).

After resolving factual conflicts in favor of plaintiffs, assuming as true all facts supporting plaintiffs, and giving plaintiffs the benefit of all reasonable inferences, the Court concludes that plaintiffs submitted sufficient evidence that would allow reasonable jurors to conclude that the tracts of land at issue in this case experienced increased flooding during the decade after the culvert bridge structure was installed, that the increased flooding damaged plaintiffs' land and impeded their ability to farm and otherwise use their property, that the culvert bridge structure was the cause of the increased flooding, and that the flooding caused damage to plaintiffs' properties in order to establish an unconstitutional taking.

Plaintiffs or their representatives familiar with each of the parcels at issue in this case testified to years of increased flooding on their properties since defendants installed the culvert bridge structure.  Plaintiffs or their representatives familiar with the parcels at issue testified that they were familiar with farming operations on their properties, that some had families that had farmed the parcels for decades, and that they observed more frequent and worsened flooding after the culvert bridge was installed as compared to before when the timber bridge was in place.  Several plaintiffs or their representatives familiar with the parcels testified that it takes less rain to flood their properties than it did in the past since the culvert bridge structure was constructed.  Some plaintiffs or their representatives familiar with the parcels testified to roads and homes on their properties, that historically never flooded their properties, beginning to flood their properties

after the culvert bridge structure was installed.  Plaintiffs or their representatives familiar with the parcels at issue testified that increased flooding on their properties had impaired their ability to farm and caused other damage to their properties.  Some plaintiffs testified to not being able to make crops on consecutive years.  Other plaintiffs testified to not being able to produce a single crop since the culvert bridge structure was installed.  Plaintiff Michael Watkins testified that floods destroyed dirt work he completed on his property.  Michael Watkins and Avella Hutcheson testified that they sold parcels of property because they were unable to farm them due to increased flooding on the parcels.  Mr. Carney testified that over an acre of his farm had eroded away in recent years due to flooding.

Plaintiffs presented testimony from their expert Mr. Johnson, a hydraulic engineer.  *See Hendricks v. United States*, 14 Cl. Ct. 143, 149 (1987) ("Causation of flooding is a complex issue which must be addressed by experts.").  Mr. Johnson testified from modeling results, his personal observations, and his experience in the field that the culvert bridge structure causes increased flood elevations and duration of flooding on plaintiffs' properties as compared to the previous timber bridge, and that the increased flood elevations, flood duration, and increased area of flooding will continue to occur in the future (Joint Trial Exhibits 1, 2, 3, and 4).  Mr. Johnson's report identified 156 events totaling 862 days over the past 12 years after the culvert bridge structure was installed when flows occurred between 2,000 and 5,500 cfs that would have caused increased flood elevations and durations to occur on plaintiffs' parcels (Joint Exhibit 4, Table 3).  Defendants cross-examined Mr. Johnson and argued to the jury that Mr. Johnson's theory of additional flooding had not caused a reduction in the rental value of plaintiffs' properties.  Additionally, defendants presented testimony from their own expert, Dr. Shawkat Ali, who presented alternative causes for flooding on plaintiffs' properties.

Plaintiffs presented testimony and documentary evidence that showed defendants were aware of the flooding issues for years and did not act in response (Dkt. No. 160, at 6-9). Additionally, plaintiffs or their representatives familiar with the parcels at issue presented evidence that defendants had not paid them or their representatives just compensation for the damage to their properties or the interference with their farming operations as a result of the flooding on their properties.

Finally, plaintiffs presented testimony from Mr. Grisham, who owns Farm Financial Consultants, LLC, through which he offers farm consulting services to a number of clients in East Arkansas. Mr. Grisham was asked to provide an expert opinion in this matter on damages plaintiffs suffered, and he provided a report dated May 13, 2019, which was later supplemented on September 27, 2021 (Joint Trial Exhibits 6 and 7).[4]

Mr. Grisham was asked to determine the fair market rental value for plaintiffs' properties, except for Mr. Carney's property, and made those determinations in two ways: (1) by using information unique to plaintiffs' properties and (2) by determining a reasonable per-acre rental value based on comparable properties (*Id.*). Mr. Grisham also calculated the annual interest that each plaintiff could have obtained if they had been compensated in the year that flooding occurred (*Id.*). Mr. Grisham calculated both the annual rental value and a daily rental figure for the properties at issue in this case, except for Mr. Carney's property, while stipulating that it is common practice in the industry to rent cropland annually or for several years at a time (*Id.*).

---

[4] Mr. Grisham's report did not include an assessment of damages for Mr. Carney's property. During closing argument, plaintiffs' counsel noted for the jury that Mr. Carney's damages were not separately set out in Mr. Grisham's report. Plaintiffs' counsel urged the jury to award damages of half of the amount that Mr. Grisham had calculated for Pyles Family Farms, LLC because Mr. Carney's tracts, 18 and 19, are about half of the size as the Pyles Family Farms, LLC tract.

Though Mr. Grisham states that in his years of leasing land he has never leased a farm by the day, he understands that damages may be awarded on a per-day basis in cases like this one (*Id.*). The daily rent figure was based on flood days as calculated by Mr. Johnson. Defendants cross-examined Mr. Grisham and elicited testimony to the effect that Mr. Johnson's flood days might not affect farming operations because the flooding was not occurring during planting or harvest. The jury was instructed, however, that it could compensate plaintiffs for any loss of the property's fair market rental value *or* usable value during the time that a plaintiff was deprived of its use (Dkt. No. 160, at 22).

Reviewing the evidence presented at trial, there was sufficient evidence from which the jury could find that that flooding caused by defendants' culvert bridge structure resulted in an unconstitutional taking of plaintiffs' property.

## 2.    Damages

Defendants argue that the plaintiffs did not meet their burden of proof to show that any action taken by defendants caused a reduction in the rental value of plaintiffs' property (Dkt. No. 170, at 3-4). Plaintiffs maintain that the damages awarded by the jury are supported by the evidence (Dkt. No. 174, at 8-9).

Plaintiffs' damages must be shown with reasonable certainty. "The principle that damages must be shown to a reasonable certainty, which is borrowed from the law of contract remedies, is not incompatible with the rule that a plaintiff need not prove the precise amount of damages; both principles require that the quantum of damages be shown to a reasonable approximation." *Ark. Game & Fish Comm'n v. United States*, 736 F.3d 1364, 1379 (Fed. Cir. 2013) (citing *Ind. Mich. Power Co. v. United States,* 422 F.3d 1369, 1373 (Fed. Cir. 2005) (damages must be shown "with reasonable certainty," but "the amount of damages need not be 'ascertainable with absolute

exactness or mathematical precision'"); *Precision Pine & Timber, Inc. v. United States,* 596 F.3d 817, 833 (Fed. Cir. 2010) (evidence must be sufficient to enable finder of fact to make a "fair and reasonable approximation" of damages; that is, a party seeking damages must prove them with "reasonable certainty," which "requires more than a guess, but less than absolute exactness"); *Huntley v. United States,* 135 F. Supp. 542, 546 (Cl. Ct. 1955) ("All that is required is such reasonable certainty that damages may not be based wholly upon speculation," and "may be estimated with a fair degree of accuracy.")).

Defendants argue that neither Mr. Grisham nor any plaintiffs gave any testimony as to whether the rental value of their properties had actually been affected in any given year (Dkt. No. 170, at 4). Defendants assert that rental value of farm property is determined as a percentage of crop yield, which is something that can be measured tangibly by comparing actual yield to expected yield. Defendants argue that because plaintiffs did not present evidence comparing actual to expected crop yield for each of plaintiffs' parcels, plaintiffs' damages are speculative (*Id.*).

Defendants point to *Hinz v. Neuroscience, Inc.*, to argue that the Eighth Circuit Court of Appeals affirmed the grant of a Rule 50(b) motion based on the lack of a reasonable basis for approximating the plaintiffs' loss (Dkt. No. 170, at 4). 538 F.3d 979 (8th Cir. 2008). Dr. Martin Hinz and Neuroresearch Clinics, Inc., sued Neuroscience, Inc., and Gottfried Kellermann for breach of a settlement agreement. *Id.* at 981. A jury returned a verdict for Dr. Hinz awarding damages. *Id.* The district court reversed the damage award on Mr. Kellermann's motion for judgment as a matter of law. *Id.* The Eighth Circuit Court of Appeals affirmed the district court's reversal of the damage award on the motion for judgment as a matter of law. *Id.*

At trial, Dr. Hinz had offered evidence of a declining growth rate in his business to show he suffered damages from the defendants' conduct. *Id.* at 984. Dr. Hinz introduced evidence that

14

his profits would have been greater if Mr. Kellermann had not breached the settlement agreement. *Id*. Specifically, Dr. Hinz presented evidence that from September 2002 to August 2003, before the settlement agreement, he had an 88.2% growth rate in actual revenues. *Id*. For the three years after the settlement agreement, the growth rate was 28.4%, 10.5%, and 18.8%. *Id*. Dr. Hinz concluded that he would have maintained a growth rate of 88.2% in the three years after the settlement agreement but for defendants' breach of the settlement agreement. *Id*. at 984-85.

The Eighth Circuit Court of Appeals concluded that the evidence presented by Dr. Hinz was not a reasonable basis for approximating loss for several reasons. *Id*. at 985. First, Mr. Kellermann was selling products with Mucuna pruiens, a product Dr. Hinz and Mr. Kellermann had developed, even during the September 2002 to August 2003 period when Dr. Hinz realized the 88.2% growth rate; therefore, the court concluded it was speculation that the declining growth rate in Dr. Hinz's revenues was due to Mr. Kellermann's activities. *Id*. Also, Dr. Hinz did not introduce his or Mr. Kellermann's customer lists or show which customers Mr. Kellermann sold breaching products to that were Dr. Hinz's former or prospective customers. *Id*. Additionally, the growth rate included all of Dr. Hinz's products and was not limited to products that competed directly with defendants' products. *Id*. Dr. Hinz also did not introduce evidence of the market industry or the relative growth rate of the market over the time period. *Id*. Because of the newness of the market, the court determined it was typical of the market to be uncertain and speculative. *Id*. The Eighth Circuit Court of Appeals concluded that Dr. Hinz did not present a reasonable basis for calculating damages and that the district court did not err in reversing the jury award. *Id*.

Defendants maintain that like in *Hinz*, plaintiffs introduced evidence suggesting that the bridge in question "causes two inches or less of extra water to sit on their fields when there is a flood" and that plaintiffs' damages expert "only testified as to what crop yield should have been

on their property without ever comparing it to actual crop yield." (Dkt. No. 170, at 5).  Defendants assert that the jury was left to speculate as to whether the flooding actually caused plaintiffs to suffer damage (Dkt. No. 170, at 5).  Plaintiffs assert that *Hinz* is not applicable because it is a case about damages, and plaintiffs are not required to prove damages to establish their takings claims.

The Court disagrees that plaintiffs are not required to prove damages in order to establish their takings claims.  The Court instructed the jury that in order to establish their takings claims plaintiffs had "the burden of proving . . . that defendants intentionally took action or acted in a manner where the foreseeable result was an appropriation of, or damage to, or a substantially diminished value of plaintiff's property, and . . . that plaintiff's resulting injuries were not merely consequential or incidental " (Dkt. No. 160, at 19).  Plaintiffs were required to prove damage to or substantially diminished value of their property in order to establish their takings claims and to prove that the resulting injuries were not merely consequential or incidental.

Plaintiffs further assert that damages are not part of a takings claim because the Court gave a nominal damages instruction.  Plaintiffs contend that, because the Court instructed the jury on nominal damages, the jury was not required to fix any amount of damages if it found that a taking occurred (Dkt. No. 174, at 7).   The Court gave a nominal damages instruction, however, because it is appropriate for a case brought pursuant to 42 U.S.C. § 1983.  *See Eighth Circuit Manual of Model Jury Instructions* (Civil), Civil 4.71 (2021).   Further, the nominal damages instruction provides that "[i]f you find in favor of a plaintiff, but you find that the plaintiff's damages have no monetary value, then you *must* return the verdict for that plaintiff in the nominal amount of One Dollar ($1.00)."  *Id*. (emphasis added).  The nominal damages instruction assumes that plaintiffs have damages as a result of a constitutional violation but that the damages may have no monetary value.  *Id*.

16

The Court rejects plaintiffs' contention that *Hinz* is distinguishable on the grounds that plaintiffs are not required to prove damages in order to establish their takings claims. The Court concludes that *Hinz* is distinguishable from this case because, although in *Hinz* and this case plaintiffs or their representatives offered damages testimony, in this case plaintiffs also presented evidence of damage also from a damages expert. Mr. Grisham testified to a reasonable degree of certainty based on data from comparable farms in East Arkansas, building on plaintiffs testimony that they were unable to make crops on their properties due to flooding caused by the culvert bridge structure. Additionally, *Hinz* is distinguishable from this case because this case involves a takings claim and not a breach of contract claim.

The jury was instructed that it could calculate plaintiffs' damages for the reasonable expense of necessary repairs to any property which was damaged and/or any loss of the property's fair market rental value *or* usable value during the time that a plaintiff was deprived of its use (Dkt. No. 160, at 22). Plaintiffs or their representatives familiar with each of the parcels at issue in this case testified to increased flooding on their properties since defendants installed the culvert bridge structure. Plaintiffs or their representatives familiar with the parcels at issue testified that they were familiar with farming operations on their properties, that some had families that had farmed the parcels for decades, and that they observed more frequent and worsened flooding after the culvert bridge was installed as compared to before when the timber bridge was in place. Plaintiffs or their representatives familiar with the parcels at issue testified that increased flooding on their properties after the culvert bridge structure was installed had impaired their ability to farm and caused other damage to their properties. Some plaintiffs testified to not being able to make crops on their properties on consecutive years after the culvert bridge structure was installed. Other plaintiffs testified to not being able to produce a single crop on their properties since the culvert

bridge structure was installed.  Plaintiff Michael Watkins testified that floods caused by the culvert bridge structure destroyed dirt work he completed on his property.  Michael Watkins and Ms. Hucheson testified that they sold parcels of property because they were unable to farm them due to increased flooding on the parcels caused by the culvert bridge structure.  Mr. Carney testified that over an acre of his farm had eroded away in recent years due to flooding caused by the culvert bridge structure.

Mr. Johnson testified from modeling results, his personal observations, and his experience in the field that the culvert bridge structure causes increased flood elevations and duration of flooding on plaintiffs' properties as compared to the previous timber bridge, and he testified that the increased flood elevations, flood duration, and increased area of flooding will continue to occur in the future (Joint Trial Exhibits 1, 2, 3, and 4).  Mr. Johnson's report identified 156 events totaling 862 days over the past 12 years after the culvert bridge structure was installed when flows occurred between 2,000 and 5,500 cfs that would have caused increased flood elevations and durations to occur on plaintiffs' parcels (Joint Exhibit 4, Table 3).

Plaintiffs presented testimony and exhibits from Mr. Grisham who approximated the amount of damages incurred by plaintiffs due to the culvert bridge structure interfering with plaintiffs' farming operations, not the damage itself (Joint Trial Exhibits 6 and 7).  Mr. Grisham calculated both an annual rent amount for each plaintiff, except for Mr. Carney, and a daily rent figure for each plaintiff, except for Mr. Carney.  The daily rent figure was based on flood days as calculated by Mr. Johnson.

Defendants elicited testimony on cross-examination from Mr. Grisham to the effect that Mr. Johnson's flood days might not affect farming operations on certain days because the flooding was not occurring during planting or harvest.  On cross-examination, defendants also elicited

18

testimony from Mr. Grisham that he did not obtain yield figures for any plaintiffs and did not use actual yield figures for any year to calculate rental value of plaintiffs' land.  Mr. Grisham did, however, derive a mathematical yield per year based on an average yield of four Lawrence County farms that he managed, not tied to any plaintiffs' actual yield as no plaintiff claimed to have maintained yield information for the relevant time, and Mr. Grisham determined the price also based on the four Lawrence County farms.

Damages are not required to be proved with absolute exactness.  *Precision Pine & Timber Inc. v. United States,* 596 F.3d 817, 833 (Fed. Cir. 2010).  It is sufficient that a jury can make a "fair and reasonable approximation" of damages.  *Id.*  The jury had before it plaintiffs' claims of flooding and interference with farming operations, plaintiffs' testimony regarding damage to their property, at least one plaintiff's claim of repairs made to his property, Mr. Johnson's testimony regarding flood days and flooding caused by the culvert bridge, Mr. Grisham's daily rent figures, and Mr. Grisham's damages calculations for loss of fair market rental value for all plaintiffs except for Mr. Carney (Joint Exhibits 1-4, 6-7).  After resolving factual conflicts in favor of plaintiffs, assuming as true all facts supporting plaintiffs, and giving plaintiffs the benefit of all reasonable inferences, the Court concludes that plaintiffs submitted sufficient evidence from which a reasonable jury could award plaintiffs damages for the unconstitutional taking of their property.

## V.      Conclusion

The Court concludes that reasonable jurors could find an unconstitutional taking and award plaintiffs damages for the unconstitutional taking of their property. The Court denies defendants' renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) (Dkt. No. 169).

So ordered this 29th day of September, 2022.

_____
Kristine G. Baker
United States District Court Judge