IN THE UNITED STATES DISTRICT COURT
EASTER DISTRICT OF ARKANSAS
NORTHERN DIVISION

**CLEO WATKINS,** *et al.*                                                                              **PLAINTIFFS**

v.                                    **Case No. 3:17-cv-00272-KGB**

**LAWRENCE COUNTY, ARKANSAS,** *et al.*                                             **DEFENDANTS**

**ORDER**

Before the Court is the request for injunctive relief of plaintiffs Cleo Watkins; Brenda Watkins; Pyles Family Farms, LLC; Victor Hutcheson; Alvella Hutcheson; Helen Knight, as Trustee of the Helen Mae Knight Trust; Michael Watkins; Betty Watkins; and George Carney (Dkt. Nos. 17, ¶ 158; 150). Following the trial of this matter, plaintiffs submitted a brief in support of their requested injunctive relief (Dkt. No. 173). Defendants Lawrence County, Arkansas; John Thomison, in his official capacity as County Judge of Lawrence County, Arkansas; and William Powell, Donald Richey, Lloyd Clark, Heath Davis, Ernest Briner, Ronald Ingram, Tracy Moore, Kenny Jones, and Alex Latham, in their official capacities as members of the Lawrence County Quorum Court responded to plaintiffs' brief in support of their requested injunctive relief (Dkt. No. 178). Plaintiffs replied in support of their requested injunctive relief (Dkt. No. 179). For the reasons stated below, having reviewed all filings, testimony, evidence, and argument, the Court denies plaintiffs' request for injunctive relief.

**I.    Background**

Plaintiffs bring this action pursuant to Arkansas Code Annotated § 14-268-105; Arkansas Code Annotated § 18-15-703; the Takings Clause of the Fifth Amendment to the United States Constitution; the Takings Clause of Article Two, Section 22 of the Arkansas Constitution; 42 U.S.C. § 1983; the Arkansas Civil Rights Act ("ACRA"), Arkansas Code Annotated § 16-123-

105(a); and *Ex parte Young*, 209 U.S. 123 (1908) (Dkt. Nos. 17, ¶¶ 55-190; 54, at 4; 150, ¶ 7). Plaintiffs ask this Court to award them judgment against defendants in the form of injunctive relief; actual damages; consequential damages; double damages pursuant to Arkansas Code Annotated § 18-15-702 and any other applicable statutory penalty; all other fees, costs, and expenses to which they may be lawfully entitled, including pre- and post-judgment interest; and other just and proper relief to which they may be entitled (Dkt. Nos. 17, at 26; 150, ¶ 7).

This matter concerns a bridge in Lawrence County, Arkansas, over the West Cache River Slough ("the Slough") (Dkt. Nos. 17, at 2; 150, ¶ 7). Plaintiffs, farmers with agricultural fields in the East Cache River Basin, allege that defendants' actions have turned the bridge into a *de facto* dam causing substantial sediment buildup, choking off most of the Slough from the Cache River proper, and causing substantial flooding of plaintiffs' lands and destruction of their crops (*Id.*). Defendants deny the allegations.

Before trial, the parties entered a joint stipulation of partial dismissal dismissing plaintiffs' cause of action for public nuisance under Arkansas Code Annotated § 14-268-105 (Dkt. No. 62). Plaintiffs moved for partial summary judgment under Arkansas Code Annotated § 18-15-703 arguing the culvert bridge is a *de facto* dam, stoppage, or obstruction and that its construction violated three separate laws (Dkt. No. 108, at 6-7). The Court reserved ruling on the legal issues giving the parties an opportunity to address further legal issues on that claim and denied plaintiffs' motion for partial summary judgment (Dkt. No. 108, at 11, 38). Defendants moved for summary judgment on all of plaintiffs' claims (Dkt. No. 53). Viewing the record evidence available to the Court at that stage of the litigation in the light most favorable to the plaintiffs, the Court denied defendants' summary judgment as to plaintiffs' public nuisance claim under Arkansas Code Annotated § 18-15-703, takings claim under both the United States Constitution and the Arkansas

Constitution, and additional constitutional claims brought pursuant to the ACRA (Dkt. No. 108, at 38). However, the Court granted defendants' motion for summary judgment as it relates to plaintiffs' federal and state equal protection claims and plaintiffs' Fourteenth Amendment substantive due process claims (*Id.*, at 31, 38). To the extent plaintiffs through their language suggest an Eighth Amendment violation, the Court found as a matter of law the Eighth Amendment inapplicable based on the undisputed record evidence (*Id.*, at 32). The Court also determined that the *Ex parte Young* doctrine confers no substantive rights (*Id.*, at 38).

The case proceeded to a jury trial in November 2021 (Dkt. Nos. 151; 152; 153; 154; 155; 156). Before the case proceeded to the jury, the Court determined that, to the extent that plaintiffs sought relief on their inverse condemnation claims under Arkansas Code Annotated § 18-15-410, plaintiffs did not have standing based on the problematic language in the statute regarding the county. Further the Court concluded that, to the extent plaintiffs sought relief on their inverse condemnation claims under Arkansas Code Annotated § 18-15-202, addressing water and sewer facilities, that statute is inapplicable to the facts of this case. The Court also dismissed as a matter of law plaintiffs' nuisance claim under Arkansas Code Annotated § 18-15-703. Plaintiffs argued that the culvert bridge is a *de facto* dam, stoppage, or obstruction and that its construction violated three or four separate laws including Ordinance 1991-3; § 404 of the Clean Water Act, 33 U.S.C. § 1344; and federal regulations promulgated under the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et seq.*, 44 C.F.R. § 60.1.

Noting that it had reserved ruling on the legal issues at the summary judgment stage, the Court found as a matter of law that, based upon the language of the statute as well as the Arkansas Supreme Court case of *Nahay v. Arkansas Irrigation Co.*, the statutory scheme when enacted in 1838 contemplated mill dams that were the primary subject of the legislation and that the culvert

bridge at issue in this case is not a mill dam. 190 S.W.2d 965 (Ark. 1945). Further, Ordinance 1991-3 established the rules and regulations for construction of buildings within a floodplain and required a "structure" with walls and a roof. The culvert bridge structure does not have walls and a roof, so the Court concluded that the ordinance is not applicable. The Court rejected application of the Clean Water Act based on Judge Marshall's Order early in this case finding that there is no private right of action under the Clean Water Act (Dkt. No. 12). The Court noted that plaintiffs had not presented any evidence to support a violation of federal regulations under the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et seq.*, 44 C.F.R. § 60.1. Finally, the Court concluded that, to the extent plaintiffs claimed a violation of the duties of a county judge under Arkansas Code Annotated § 14-14-1102, this is some evidence of negligence, and the Court concluded that the county has immunity from claims that are based on negligence under Arkansas Code Annotated § 21-9-301.

Separate and apart from not recognizing the claim under Arkansas Code Annotated § 18-15-702, the Court found that there was a problem with plaintiffs' claim for double damages based on the statute of limitations. The parties stipulated that, "[a]ny person who shall build or raise any dam or any other stoppage or obstruction in or across any water course without first obtaining permission from the proper court according to law and shall there by work any material injury to any other person by overflowing his or her lands shall forfeit to the party injured double damages for the injury to be recovered in a civil action." The parties further stipulated that the bridge structure was built in 1997, and the fifth culvert was added in 2003. Accordingly, the Court concluded that, because under Arkansas law there is a three-year statute of limitations for an injury to real property, the plaintiffs' claim for double damages under Arkansas Code Annotated § 18-15-702 is time barred, and plaintiffs had not alleged sufficient facts to establish equitable tolling.

The Court took the remainder of defendants' motion for judgment as a matter of law under advisement.

The case went to the jury on plaintiffs' takings claims pursuant to the Takings Clause of the Fifth Amendment to the United States Constitution; the Takings Cause of Article Two, Section 22 of the Arkansas Constitution; and 42 U.S.C. § 1983 (Dkt. No. 160). The case was submitted to the jury on a verdict form that posed questions for each parcel owned by each plaintiff (Dkt. No. 163). The jury returned verdicts in favor of plaintiffs (*Id.*).

After the jury returned the verdicts, defendants asked the Court if their Rule 50 motion was still under advisement. The Court confirmed that the sufficiency of the evidence portion of the motion for the takings claims was still under advisement. The Court advised defendants that the Court could set briefing for a motion for new trial if defendants requested for the Court to do so.

Following the trial, defendants renewed their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), and plaintiffs submitted a brief in support of their requested injunctive relief—an injunction that enjoins defendants from future violations of plaintiffs' constitutional rights and instructs defendants to demolish the culvert bridge and remove all remnants of the same (Dkt. Nos. 169; 173, at 8). Plaintiffs responded to defendants' renewed motion for judgment as a matter of law (Dkt. No. 174). Defendants responded to plaintiffs' brief in support of their requested injunctive relief (Dkt. No. 178). Plaintiffs replied in support of their requested injunctive relief (Dkt. No. 179). The Court denied defendants' renewed motion for judgment as a matter of law, concluding that reasonable jurors could find an unconstitutional taking had occurred warranting an award of damages (Dkt. No. 180). In this Order, the Court addresses plaintiffs' request for injunctive relief.

**II.     Analysis**

The decision whether to grant or deny injunctive relief lies within the sound discretion of the district court. *Calzone v. Summers*, 942 F.3d 415, 420 (8th Cir. 2019); *see also* 11A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 2946 Availability of Injunctive Relief—Equitable Defenses, 11A Fed. Prac. & Proc. Civ. § 2946 (3d ed. 2013) ("Inasmuch as the decision whether to grant a temporary-restraining order, preliminary injunction, or permanent injunction is based on the trial court's exercise of its equitable discretion, a district judge may decline to grant, either in whole or in part, plaintiff's request for injunctive relief, even though plaintiff may be entitled to some relief.").

Plaintiffs only seek one form of injunctive relief under 42 U.S.C. § 1983 and the ACRA[1] and that is that the Court enjoins defendants from further violating plaintiffs' rights under the constitution and the ACRA by instructing defendants to demolish the culvert bridge and remove all remnants of the same.

A plaintiff seeking prospective injunctive relief must show an injury in fact, a causal connection between that injury and the challenged conduct, and a likelihood that a favorable decision by the court will redress the alleged injury. *Elder v. Gillespie*, Case No. 3:19-cv-00155 KGB, 2020 WL 2813524, at *7 (E.D. Ark. May 29, 2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A plaintiff who seeks injunctive relief must show "a threat of future or ongoing harm." *Park v. Forest Serv. of the United States*, 205 F.3d 1034, 1037 (8th Cir. 2000).

---

[1] The parties agree that injunctive relief is available under 42 U.S.C. § 1983 (Dkt. Nos. 173, at 2; 178, at 3). Plaintiffs also assert a claim under the ACRA, and under the ACRA plaintiffs may seek equitable relief. Ark. Code Ann. § 16-123-105(a). Under the ACRA, courts may look to federal precedent under 42 U.S.C. § 1983 for guidance in applying the state law, and because § 1983 permits injunctive relief, injunctive relief is also permitted under the ACRA. Ark. Code Ann. § 16-123-105(c).

An injury resulting from past conduct alone is insufficient to support a claim for injunctive relief. *Id.* Moreover, speculation regarding future injury is inadequate to warrant injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). To succeed on their claim for injunctive relief, plaintiffs must show that the threat of injury is real and immediate. *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).

Prior to 1997, a wooden or timber bridge existed on Lawrence County Road 717 (*see* Dkt. No. 108). In 1997, upon removing the wooden or timber bridge, Lawrence County constructed the culvert bridge with four culverts on County Road 717. In 2003, Defendants added a fifth culvert to the bridge upon instruction of the United States Corp of Engineers (hereinafter "the Corp") (Dkt. No. 160, at 6). The Corp conducted a compliance inspection on April 30, 2003, determined defendants were in compliance with §§ 301 and 404 of the Clean Water Act, and issued a permit under § 404 of the Clean Water Act, Nationwide Permit No. 14, for the culvert bridge on May 13, 2003 (Joint Exhibits 39, 40). The culvert bridge remains a fully permitted bridge.

On September 16, 2009, separate plaintiff George Carney, who previously worked as a civil engineer for the Corp, sent a letter to the Corp regarding the culvert bridge enclosing a Cache River sedimentation study (Dkt. No. 160, at 8). On the same day, he sent a letter to County Judge Alex Latham regarding same (*Id.*). On October 5, 2009, the Corp conducted a field inspection of the culvert bridge (*Id.*). The Corp representative noticed at the time that the pipes were mostly clogged, and regular maintenance of the culvert bridge would be required to keep the pipes open, though since the culvert bridge was over five years old it was past the Corp's statute of limitations to proceed with further enforcement action (Dkt. Nos. 54, at 4; 55-5).

According to the record in this case, neither separate plaintiff Mr. Carney nor any of the other plaintiffs did anything after the Corp inspection in October 2009 until plaintiffs' lawyer sent

a letter to Lawrence County Judge Dale Freeman regarding the culvert bridge on June 3, 2016 (Dkt. No. 160, at 8).  Plaintiffs filed this lawsuit October 10, 2017, seeking injunctive relief in the form of removal of the properly permitted culvert bridge (Dkt. No. 1, ¶ 141).

Having considered all of the evidence, testimony, and argument presented in this case, the Court determines that plaintiffs' request for extreme injunctive relief in the form of removal of the properly permitted culvert bridge structure which has been in existence for over two decades in its current form, and for decades prior to that in a different form, providing Lawrence County property owners access to their property and county residents access to County Road 717, when considered in the light of plaintiffs' delay in seeking injunctive relief in this situation and viewed in the light of plaintiffs' proof presented at trial, is inequitable.

At trial plaintiffs, or their representatives familiar with each of the parcels at issue in this case, most of whom are not Lawrence County property owners but who live in and around the area and have for decades, testified to knowledge of years of increased flooding on their properties since defendants installed the culvert bridge structure.  Plaintiffs or their representatives familiar with the parcels at issue testified that they were familiar with farming operations on their properties, that some had families that had farmed the parcels for decades, and that they observed more frequent and worsened flooding after the culvert bridge was installed as compared to before when the timber bridge was in place.  Several plaintiffs or their representatives familiar with the parcels testified that it takes less rain to flood their properties than it did in the past since the culvert bridge structure was constructed.  Some plaintiffs or their representatives familiar with the parcels testified to roads and homes on their properties, that historically never flooded, beginning to flood on their properties after the culvert bridge structure was installed.  It is clear from the record that at least one plaintiff, Mr. Carney, was asserting there were problems with the culvert bridge as

early as 2009, yet plaintiffs delayed seeking injunctive relief until October 2017 when plaintiffs filed a lawsuit demanding destruction of the properly permitted culvert bridge.

County Judge John Thomison testified that County Road 717 is used by school buses and farm implements. Judge Thomison stated that by taking the bridge away he would breach a duty he owes to landowners in the area that own property between the Cache ditch and the Cache River. To Judge Thomison's knowledge, the culvert bridge on County Road 717 is the only passage to the West Cache ditch on what is called "the island," above Highway 230. According to Judge Thomison, it has never been a possibility for the County to remove the bridge.

Emmet Ray Stone testified at trial that he relies on the existence of the culvert bridge every day to accesses his 529 acres of farmland on "the island." He testified that his previous year's crop was one of the better ones he has had. According to Mr. Stone, everybody that farms in the area experiences flooding on their property and that, when his property is flooded, the river is at full capacity downstream of the pipes. Mr. Stone testified that a "common everyday flood" happens "almost every year." He also stated that he pulls some water out of the West Cache to irrigate his property. Mr. Stone testified that his ability to plant and bring in a crop depends on rainfall events. Plaintiffs asked Mr. Stone if he would be okay if for some reason Lawrence County was made to remove the culvert bridge and replace it with another bridge as long as he could still get his combine over it. Mr. Stone answered that he had no reason not to be okay with it. However, the Court observes that nothing in the injunctive relief requested by the plaintiffs mentions a replacement for the culvert bridge–only removal of the existing bridge.

Further, when making its determination on whether to award plaintiffs the injunctive relief they seek, the Court also evaluates plaintiffs' claims of injury and the alleged threat of future or ongoing harm. Based on all of the evidence, testimony, and argument presented, the Court

9

considers the proof, the nature and strength of it, and weighs the equities in reaching its result to deny plaintiffs' request for injunctive relief.

For example, the Court will not disturb the jury's award of damages, but the Court observes that plaintiffs' damages expert Jim Grisham did not offer an opinion on damages for separate plaintiff Mr. Carney (Joint Exhibits 6, 7).  Further, as defendants argued, neither Mr. Grisham nor any plaintiff gave any testimony as to whether the rental value of plaintiffs' properties had actually been affected in any given year.  Defendants asserted that rental value of farm property is determined as a percentage of crop yield, which is something that can be measured tangibly by comparing actual yield to expected yield.  On cross-examination, defendants elicited testimony from Mr. Grisham that he did not obtain yield figures for any plaintiffs and did not use actual yield figures for any year to calculate rental value of plaintiffs' land.  Mr. Grisham did, however, derive a mathematical yield per year based on an average yield of four Lawrence County farms that he managed, not tied to any plaintiffs' actual yield as no plaintiff claimed to have maintained yield information for the relevant time.  Defendants argued that, because plaintiffs did not present evidence comparing actual to expected crop yield for each of plaintiffs' parcels, plaintiffs' damages were speculative.  Defendants' arguments resonate with the Court.  Those arguments form the basis in part of the Court's uncertainty regarding plaintiffs' ability to establish damages moving forward.

Also by way of example, defendants elicited testimony on cross-examination from Mr. Grisham to the effect that plaintiffs' expert Marc Johnson's flood days, which were used by Mr. Grisham to arrive at his calculations on alleged damages, might not affect farming operations on certain days because the flooding was not occurring during planting or harvest.  This also seems reasonable to the Court and weakens plaintiffs' ability to establish damages moving forward.

Finally, as a further example, according to the Court's review of Mr. Johnson's testimony on direct and cross examination, as well as a review of the model he used during his testimony, Mr. Johnson's model does not project that flooding occurs on all of the properties highlighted on his model.  The testimony Mr. Johnson offered in regard to certain properties indicated that he was uncertain whether flooding would occur on those properties based upon his work in the case.  Moreover, Mr. Johnson offered testimony that, as compared to the prior timber bridge, the culvert bridge through his calculations obstructed flow based solely on the design of the bridge alone yet the culvert bridge has existed in some form since 1997.  During his testimony, Mr. Johnson also conceded that, in observing the culvert bridge, it looked like there was possibly debris blocking part of the culverts that form the basis of the bridge.  Based upon the proof presented at trial, the Court harbors doubt as to plaintiffs' assertions of future or ongoing harm warranting the extreme injunctive relief plaintiffs seek here.

The Court reaches its determination having considered all of the filings, evidence, testimony, and argument presented in this case.  The Court determines that plaintiffs have not met their burden of showing entitlement to the injunctive relief they seek pursuant to 42 U.S.C. § 1983 or the ACRA.

**III.    Conclusion**

The Court denies plaintiffs' request for injunctive relief under 42 U.S.C. § 1983 and the ACRA.

So ordered this 31st day of March, 2023.

_____
Kristine G. Baker
United States District Court Judge