IN THE UNITED STATES DISTRICT COURT
EASTER DISTRICT OF ARKANSAS
NORTHERN DIVISION

CLEO WATKINS, *et al.*                                                                  PLAINTIFFS

v.                                        Case No. 3:17-cv-00272-KGB

LAWRENCE COUNTY, ARKANSAS, *et al.*                                      DEFENDANTS

<u>**ORDER**</u>

Before the Court is the motion for bill of costs and attorney fees of plaintiffs Cleo Watkins; Brenda Watkins; Pyles Family Farms, LLC; Victor Hutcheson; Alvella Hutcheson; Helen Knight, as Trustee of the Helen Mae Knight Trust; Michael Watkins; Betty Watkins; and George Carney (Dkt. No. 189). Defendants Lawrence County, Arkansas; John Thomison, in his official capacity as County Judge of Lawrence County, Arkansas; and William Powell, Donald Richey, Lloyd Clark, Heath Davis, Ernest Briner, Ronald Ingram, Tracy Moore, Kenny Jones, and Alex Latham, in their official capacities as members of the Lawrence County Quorum Court filed a response to plaintiffs' motion for bill of costs and attorney fees (Dkt. No. 199). Plaintiffs filed a reply in support of their motion for bill of costs and attorney fees (Dkt. No. 210). For the following reasons, the Court grants, in part, and denies, in part, plaintiffs' motion for bill of costs and attorney fees (Dkt. No. 189).

I.      **Factual And Procedural History**

Plaintiffs brought this action pursuant to the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365; Arkansas Code Annotated § 14-268-105; Arkansas Code Annotated § 18-15-703; the Takings Clause of the Fifth Amendment to the United States Constitution; the Takings Clause of Article Two, Section 22 of the Arkansas Constitution; 42 U.S.C. § 1983; the Arkansas

Civil Rights Act ("ACRA"), Arkansas Code Annotated § 16-123-105(a); and *Ex parte Young*, 209 U.S. 123 (1908) (Dkt. Nos. 1, ¶¶ 48-143; 17, ¶¶ 55-190; 54, at 4; 150, ¶ 7).

On April 11, 2018, the Court dismissed the Clean Water Act claim pursuant to Rule 12(b)(6) (Dkt. No. 12).  On August 29, 2019, the parties entered a joint stipulation of partial dismissal dismissing plaintiffs' cause of action for public nuisance under Arkansas Code Annotated § 14-268-105 (Dkt. No. 62).  Plaintiffs moved for partial summary judgment under Arkansas Code Annotated § 18-15-703 arguing the culvert bridge is a *de facto* dam, stoppage, or obstruction and that its construction violated three separate laws (Dkt. No. 108, at 6–7).  The Court reserved ruling on the legal issues giving the parties an opportunity to address further legal issues on that claim and denied plaintiffs' motion for partial summary judgment (Dkt. No. 108, at 11, 38).  Defendants moved for summary judgment on all of plaintiffs' claims (Dkt. No. 53).  Viewing the record evidence available to the Court at that stage of the litigation in the light most favorable to the plaintiffs, the Court denied defendants' summary judgment as to plaintiffs' public nuisance claim under Arkansas Code Annotated § 18-15-703, takings claim under both the United States Constitution and the Arkansas Constitution, and additional constitutional claims brought pursuant to the ACRA (Dkt. No. 108, at 38).  However, the Court granted defendants' motion for summary judgment as it related to plaintiffs' federal and state equal protection claims and plaintiffs' Fourteenth Amendment substantive due process claims (*Id*., at 31, 38).  To the extent plaintiffs through their language suggested an Eighth Amendment violation, the Court found as a matter of law that the Eighth Amendment was inapplicable based on the undisputed record evidence (*Id*., at 32).  The Court also determined that the *Ex parte Young* doctrine conferred no substantive rights (*Id*., at 38).

The case proceeded to a jury trial in November 2021 (Dkt. Nos. 151; 152; 153; 154; 155; 156).  Before the case proceeded to the jury, the Court determined that, to the extent that plaintiffs sought relief on their inverse condemnation claims under Arkansas Code Annotated § 18-15-410, plaintiffs did not have standing based on the problematic language in the statute regarding the county.  Further the Court concluded that, to the extent plaintiffs sought relief on their inverse condemnation claims under Arkansas Code Annotated § 18-15-202, addressing water and sewer facilities, that the statute was inapplicable to the facts of the case.  The Court also dismissed as a matter of law plaintiffs' nuisance claim under Arkansas Code Annotated § 18-15-703.

The case ultimately went to the jury on plaintiffs' takings claims pursuant to the Takings Clause of the Fifth Amendment to the United States Constitution; the Takings Clause of Article Two, Section 22 of the Arkansas Constitution; and 42 U.S.C. § 1983 (Dkt. No. 160).  The case was submitted to the jury on a verdict form that posed questions for each parcel owned by each plaintiff (Dkt. No. 163).  The jury returned verdicts in favor of plaintiffs (*Id.*).

Following the trial, defendants renewed their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), and plaintiffs submitted a brief in support of their requested injunctive relief (Dkt. Nos. 169; 173, at 8).  The Court denied defendants' renewed motion for judgment as a matter of law, concluding that reasonable jurors could find an unconstitutional taking had occurred warranting an award of damages (Dkt. No. 180).  The Court denied plaintiffs' request for injunctive relief under 42 U.S.C. § 1983 and the ACRA (Dkt. No. 181).

As the prevailing party in this case, plaintiffs filed a motion for bill of costs and attorney fees pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. § 1920 (Dkt. No. 189, ¶ 2).  Plaintiffs request attorney fees in the amount of $658,273.00 and untaxable costs awarded as fees in the amount of $122,512.56 and taxable costs of $5,354.51 (*Id.*, ¶ 3).  Defendants ask the Court to

reduce plaintiffs' request for attorneys' fees to $55,250.00 based on the degree of success sustained by the plaintiffs and what defendants argue was over-lawyering and excessive billing by plaintiffs necessitating a reduction under the lodestar approach (Dkt. No. 199, at 1–7). Defendants also contend that non-attorney staff time is not recoverable and that billing of law clerks should be capped at $25.00 per hour (Dkt. No. 199, at 7–8). Defendants do not object to the Court awarding plaintiffs' costs but argue that the Court should reduce the award of costs to plaintiffs to $20,000.00 because the costs requested were excessive (*Id.*, at 8–10).

Plaintiffs' reply in support of their motion for bill of costs and attorney fees and argue that defendants have not provided any support for their "made-up attorney rates" (Dkt. No. 210, at 2–4). Further, plaintiffs argue that the hours for which they seek compensation are reasonable and supported (*Id.*, at 4–5).

## II.     Governing Law

Determining a reasonable award of attorneys' fees is a two-step process. "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). A reasonable hourly rate is "calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019) (quoting *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005)). The party seeking an award of fees should "submit adequate documentation supporting the number of hours claimed," and the court "may deduct hours from this initial number if counsel's documentation is inadequate." *Gay v. Saline Cty.*, Case No. 4:03-cv-00564 HLJ, 2006

WL 3392443, at *2 (E.D. Ark. Oct. 20, 2006) (citing *Hensley*, 461 U.S. at 433).  Once calculated, the lodestar amount is presumptively reasonable, *see Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), but may be adjusted upward or downward, as the court finds necessary based on the facts and circumstances of the particular case.  *See Hensley*, 461 U.S. 434.  If, for example, "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."  *Hensley*, 461 U.S. at 436.

"Attorney's fees are within the broad discretion of the district court and will not be reversed absent an abuse of discretion."  *Hanig*, 415 at 825 (citing *Harmon v. City of Kansas City*, 197 F.3d 321, 329 (8th Cir. 1999)).

### III.     Discussion

#### A.     Attorney Fees

As a prevailing party in a 42 U.S.C. § 1983 action, plaintiffs are entitled to attorney's fees unless "special circumstances would render such an award unjust."  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  Defendants do not dispute that plaintiffs were prevailing parties in this case brought pursuant to § 1983, and they do not argue that there are "special circumstances" that render any award to the plaintiffs unjust.  Accordingly, this Court is required to award a reasonable fee pursuant to 42 U.S.C. § 1988(b).  *Hensley*, 461 U.S. at 429.  Defendants dispute what is a reasonable award (Dkt. No. 199).

#### 1.     Work On Unsuccessful Claims

Defendants object that plaintiffs did not prevail on most of their claims.  Defendants assert that the first two years of attorneys' fees that plaintiffs' claim relate to plaintiffs' Clean Water Act

claim, which the Court dismissed in May 2018 (Dkt. No. 199, at 2–3). According to defendants, the total attorneys' fees plaintiffs seek for work related to their Clean Water Act claim is $34,333.17, and the total amount of costs they seek related to the claim is $1,725.46 (*Id.*, at 3). These figures, according to defendants, are based on invoices submitted from May 11, 2016, through April 12, 2018, when defendants contend that the Clean Water Act claim was plaintiffs' only claim (*Id.*). Plaintiffs do not dispute these calculations in their reply (Dkt. No. 210, at 2–5).

Further, defendants contend that plaintiffs "prevailed at a rate of roughly one-tenth (1/10) of the amount which they sought at trial." (*Id.*). Defendants point out that plaintiffs, through their expert, sought damages in the amount of $2,501,803.00 but were awarded $346,459.65 from the jury, which is 13.8% of the amount sought (*Id.*, at 4).

Plaintiffs do not address defendants' claims of lack of success as a reason for reducing their attorneys' fee request in their reply in support of their motion for bill of costs and attorney fees (Dkt. No. 210).

Under the lodestar approach, it is appropriate in this case for the Court to reduce the amount of requested attorneys' fees for partial success. *Jensen v. Clarke*, 94 F.3d 1191, 1203 (8th Cir. 1996). Not only did the Court determine early in the case that plaintiffs' Clean Water Act claim must be dismissed, but the Court determined that defendants were entitled to summary judgment on plaintiffs' federal and state equal protection claims as well as plaintiffs' Fourteenth Amendment substantive due process and Eighth Amendment claims (Dkt. No. 108, at 38). Further, the Court determined that the *Ex parte Young* doctrine did not confer substantive rights (*Id.*). Before trial, the Court further determined that plaintiffs did not have standing on their inverse condemnation claims under Arkansas Code Annotated § 18-15-410, and to the extent that plaintiffs sought relief on their inverse condemnation claims under Arkansas Code Annotated § 18-15-202, the Court

determined that the statute was inapplicable to the facts of the case.  The Court also dismissed plaintiffs' nuisance claim under Arkansas Code Annotated § 18-15-702.  Accordingly, the case only went to the jury on plaintiffs' claims pursuant to the Takings Clause of the Fifth Amendment to the United States Constitution and the Takings Clause of Article Two, Section 22 of the Arkansas Constitution, and 42 U.S.C. § 1983 (Dkt. No. 160).  Moreover, at trial, plaintiffs only recovered around 14% of the damages sought through their expert and were not successful in obtaining the injunctive relief they sought.

After a careful review of the time records for plaintiffs, the Court agrees with defendant that the degree of success obtained in this case is not sufficient to justify plaintiffs' requested fee of $658,273.00 based on the most critical factor, "the degree of success obtained."  *Hensley*, 461 U.S. at 436.  Accordingly, the Court will reduce the amount of plaintiffs' requested fees by one-quarter ($164,568.00) for a total of $493,705.00 based on the degree of success obtained by the plaintiffs.

### 2.      Excess Billing, Overstaffing, And Rates

Defendants also argue that, even though plaintiffs note that they reduced their billable hours by six percent, when "compared month-to-month it is obvious that way too many hours are being billed [by plaintiffs' attorneys] for routine and rudimentary legal tasks." (Dkt. No. 199, at 4).  As an example, defendants note that plaintiffs billed a total of 49.9 hours of time related to the initial complaint filed in this case and then another 26.20 hours for time related to the amended complaint for a total of 76.1 hours (Dkt. No. 199, at 5).  Defendants seek a 90% reduction in the time billed for work on the complaint and amended complaint (*Id.*, at 6).  As a second example, defendants point to work spent by attorney Micha L. Goodwin on a client memo that references the Clean Water Act (*Id.*).  Mr. Goodwin and two other attorneys billed 29.1 hours for total fee of

$5,627.50.  Defendants contend the memo should haven able to be completed in at most a day's work by one attorney (*Id.*).  According to defendants, plaintiffs also billed an excessive amount of attorney time preparing for defendants' depositions (*Id.*).  Defendants point out that in total the depositions took 34 hours, but plaintiffs' attorneys billed 149.5 hours for work related to the depositions for a total of $26,030.50 (*Id.*).  Defendants argue that plaintiffs also excessively billed for drafting and responding to *Daubert*, by spending 50.1 hours and incurring $10,374.50 in billing entries, and summary judgment motions, by spending 83 hours and incurring $17,000.50 in billing entries (Dkt. No. 199, at 7).  Defendants also contend that counsel for plaintiffs overstaffed the trial of the case with four attorneys and a paralegal (*Id.*).

In addition to the overbilling examples noted by defendants, the Court notes that another example of over billing and staffing in this case is the amount of time plaintiffs' lawyers billed to prepare the motion for bill of costs and attorney fees.  The motion involved a partner, at least two associates, and a paralegal who billed nearly 40 hours with fees totaling over $8,000.00.  According to the billing records, significant research appears to have been done on "the lodestar analysis in light of COVID delay," but the brief makes only small mention of the effect of duplication of efforts due to delays resulting from COVID-19 (Dkt. Nos. 190, at 8–9, 189-10, at 30). *See El-Tabech v. Clarke*, 616 F.3d 834, 843–44 (8th Cir. 2010) (time spent preparing fee application is generally compensable unless it is excessive); *Adams v. City of Little Rock*, Case No. 4:19-cv-00440-LPR, 2023 WL 6038125, at *2 (E.D. Ark. Sept. 15, 2023) (determining that billing 12 hours related to a fee petition is excessive because it should have only required six hours).

Defendants contend that the Court should disallow the entirety of paralegal Gisela Schmid Beckwith's fee because a "substantial portion of the time entries made by Beckwith were

secretarial in nature and are overhead for the firm," and law clerk fees should be reduced from $100.00 per hour to $25.00 per hour (*Id.*, at 8).   Defendants also suggest a partner rate of $250.00 per hour is adequate and an associate rate of $150.00 per hour is adequate.   Plaintiffs provide adequate support for their claim that rates of $325.00 to $275.00 per hour for partners, $245.00 to $255.00 per hour for associates, $125.00 per hour for paralegals, and $100.00 per hour for law clerks are reasonable rates for the Jonesboro market (Dkt. No. 189-2, ¶ 6).   *See Blum v. Stenson*, 465 U.S. 886, 895 (1984) (determining that a reasonable hourly rate is "calculated according to the prevailing market rates in the relevant community.").   "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019) (quoting *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005)).   After a careful review of the time records for plaintiffs, the Court determines that the defendants' objections to the specific hourly rates sought by plaintiffs related to their attorneys, paralegals, and law clerks are supported by the record, and defendants' objections to the specific hourly rates are overruled.

Finally, defendants note that the final bill attached to plaintiffs' motion dated April 28, 2023, indicates that plaintiffs were billed $849,815.96 but have only paid $446,452.93 in attorneys' fees and costs, leaving a balance of $403,363.03 (Dkt. No. 199, at 9).   Defendants urge that the Court should award no more in fees and costs than what plaintiffs have actually paid, but defendants also argue that amount is still unreasonable (*Id.*).   Defendants suggest that a reasonable attorneys' fee award would be $55,250.00 based on 100 hours of attorney work for a partner at a rate of $250.00 per hour, 200 hours of work for an associate at a rate of $150.00 per hour, and 10 hours of work for a law clerk at a rate of $25.00 per hour (Dkt. No. 199, at 10).

Plaintiffs respond that their hours are reasonable and supported (Dkt. No. 210, at 4-5). Plaintiffs state that they have cut various attorneys' time from their fee request (*Id.*, at 4). Plaintiffs further contend that, under defendants' suggested attorneys' fee award, they would only receive an award of attorneys' fees for two attorneys to attend and travel back and forth to trial (*Id.*, at 5).

The Court has reviewed the time records for plaintiffs and notes that, throughout the case, plaintiffs staffed it with multiple lawyers. At trial, the case was staffed with two partners, two associates, and one paralegal billing a total of 434.6 hours for a total of $119,363.50 on what was essentially a single-issue case at that time. In the Court's view, the complexity of the issues in this case, relative to plaintiffs' lawyers' experience and expertise, simply do not warrant the requested attorneys' fees. After a careful review of the time records for plaintiffs, the Court determines, based in part on its experience presiding over cases of similar complexity, that the case could have been reasonably staffed with no more than two or three lawyers and one paralegal during any given phase of the litigation. Accordingly, the requested amount of attorney hours is excessive and falls within the Supreme Court's specific authorization for a percentage reduction. *Hensley*, 461 U.S. at 436–37. Accordingly, the Court will reduce the amount of plaintiffs' attorneys' fees ($493,705.00) by an additional one-quarter ($123,426.00) and award plaintiffs total attorneys' fees in the amount of $370,279.00.

### 3.      Summary Of Attorney Fees Award

As set forth above, the Court determines that, given the nature of this case and the billing records submitted for the Court's review, plaintiffs have not come forward with support for awarding all of the attorney fees requested. Consistent with this Order, the Court reduces the attorney fees award as follows:

| | |
|---|---:|
| **Total Attorney Fees Requested** | $658,273.00 |
| Reduction of one-third for the degree of success obtained | -$164,568.00 |
| | $493,705.00 |
| Reduction of one-third for excess billing and over staffing | -$123,426.00 |
| **Total Fees Award** | **$370,279.00** |

### B.    Costs

Plaintiffs seek a total of $5,354.51 in "taxable costs" and a total of $122,512.56 in "untaxable costs" for a total of $127.867.07 in costs (Dkt. No. 189, ¶ 3).  Defendants argue that the costs requested by plaintiffs are excessive and should be reduced to $20,000.00 (Dkt. No. 199, at 8, 10).  The Court will consider each of plaintiffs' requests for costs in turn.

### 1.    Filing Fee

Pursuant to 28 U.S.C. § 1920, plaintiffs request $400.00 for their court filing fee (Dkt. No. 190, at 11).  Plaintiffs are entitled to recover costs for filing fees.  *See* 28 U.S.C. § 1920 (authorizing award for "fees of the clerk").  The Court will award plaintiffs costs in the full amount of $400.00 for their filing fee.

### 2.    Pacer Fees/Online Research

Plaintiffs also seek "Pacer Fees/Online Research" in the amount of $4,954.51 (Dkt. No. 190, at 11).  In their response and brief in support of defendants' response to plaintiffs' motion for bill of costs and attorney fees, defendants contend that the request for reimbursement for over $5,000.00 in PACER and legal research related fees is excessive and that the Court should reduce plaintiffs' costs for this and other costs to an appropriate amount, which defendants suggest is a total of $20,000.00 (Dkt. No. 199, at 8, 10).

While expenses for computerized research are not a specific taxable cost listed in 28 U.S.C. § 1920, costs for computerized legal research are a common litigation expense for which a law firm would normally bill its clients.  *Hernandez v. Bridgestone Americas Tire Operations, LLC*,

831 F.3d 940, 949 (8th Cir. 2016) ("[Computerized legal research] is now a common litigation expense, and it may be reimbursable.") (citations omitted); *see Sturgill*, 512 F.3d at 1036 (awarding costs for "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee paying client."). Plaintiffs billed their PACER and online legal research costs separate from their attorney's fees (Dkt. Nos. 186-5, at 2, 54, 83, 99; 189-7, at 33; 189-9, at 34). The Court will award plaintiffs costs in the full amount of $4,954.51 for their PACER and legal research costs.

### 3.    Copy Costs

Expenses for photocopies "necessarily obtained for use in the case" are recoverable by the prevailing party as costs. 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d). "Amounts sought for copy expenses must be documented or itemized in such a way that the Court can meaningfully evaluate the request." !*McLelland v. Ridge Tool Co.*, 350 F. Supp. 3d 773, 776 (W.D. Ark. 2018) (quoting !*Finan v. Good Earth Tools, Inc.*, Case No. 4:06-cv-878CAS, 2008 WL 1805639, at *11 (E.D. Mo. Apr. 21, 2008)). "In determining whether a photocopy expense is necessary so as to be taxable as a cost and whether to award that cost to the prevailing party, the district court enjoys discretion so long as it does not act arbitrarily." *Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 498 (8th Cir. 2002).

Defendants do not object to plaintiffs' request for $153.37 in copy costs. However, plaintiffs provide no citation to the record supporting their request other than a citation to Docket No. 186-2, which the Court understands is intended to reference Docket No. 189 and certain of its exhibits that total approximately 380 pages (Dkt. No. 190, at 11). Because the Court has no meaningful way to evaluate whether the copies for which plaintiffs seek $153.37 were necessarily

obtained by them for use in the case, the Court declines to award plaintiffs $153.37 in copy costs (Dkt. No. 190, at 11).

### 4.    Copies Of Records

Plaintiffs seek $255.74 for "Copies of Records" citing "Doc. 186-2." Plaintiffs do not provide a specific citation to Docket No. 186-2 to support their request for reimbursement for "Copies of Records," but plaintiffs include in support of their motion for costs receipts for some certified copies of deeds totaling $75.00 (Dkt. No. 189-10, at 37, 39). The Court has reviewed the exhibit that plaintiffs refer to as "Doc. 186-2," and the Court cannot find receipts for any other copies of records in support of their motion for copies (Dkt. No. 189-5, 189-6, 189-7, 189-8, 189-9, 189-10, 189-11). The Court grants plaintiffs' request for copies of records, in part, and awards costs in the amount of $75.00 for certified copies of deeds which are supported by receipts in the record.

### 5.    Mileage Attending Depositions

Plaintiffs ask the Court to award $1,642.15 for "Mileage Attending Deposition." (Dkt. No. 190, at 11). Plaintiffs provide no detail for their request for mileage other than a general citation to Docket No. 186-2, which is approximately 380 pages (*Id.*). The Court notes that there are invoices for depositions included in Docket No. 186-2, but only one invoice indicates that it was taken in Walnut Ridge, Arkansas. The Court is left to guess who travelled from where to where to take any deposition and whether the request is for mileage for an attorney or a witness. Without detail supporting the request, the Court cannot grant plaintiffs' request for costs for mileage for attending depositions (Dkt. No. 190, at 11).

### 6.      Deposition Transcripts

The Eighth Circuit Court of Appeals has held that § 1920 allows the "taxation of costs for both printed and electronically recorded transcripts of the same deposition as long as each transcript is necessarily obtained for use in a case." *See Stanley v. Cottrell, Inc.*, 784 F.3d 454, 467 (8th Cir. 2015) (citations omitted) (holding that the costs of video depositions are taxable under § 1920).  Defendants do not challenge that plaintiffs did not obtain the depositions for use in the case.  Plaintiffs cited the depositions in their motion for partial summary judgment and response to defendants' motion for summary judgment (Dkt. Nos. 48, 63).  The Court awards costs in the amount of $3,790.45 for deposition transcripts.

### 7.      FedEx

Plaintiffs request $431.68 for "FedEx" (Dkt. No. 190, at 11).  Plaintiffs provide no detail for this request other than a general citation to Docket No. 186-2 which is approximately 380 pages (*Id*.).  Defendants do not challenge specifically the FedEx cost request, but the Court has reviewed plaintiffs motion and its supporting documents and does not find any support for the request.  Without detail supporting the request, the Court cannot grant plaintiffs' request for costs for FedEx charges (Dkt. No. 190, at 11).

### 8.      Attorney Lodging

Plaintiffs request $5,141.79 in attorney lodging for trial (*Id*.).  Defendants object that these costs are excessive (Dkt. No. 199, at 8).  Plaintiffs provide detail for the costs requested for lodging (Dkt. No. 189-11, at 14–23).  The Court finds that lodging was necessary to house counsel during trial, and awards costs in the amount of $5,141.79 for attorney lodging (Dkt. No. 190, at 11).

9. **Pivot Outside Printing**

As set forth above, expenses for photocopies obtained for use in the case are recoverable by the prevailing party as costs. 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d). Plaintiffs provide receipts for copies obtained from Pivot Legal Services in the amount of $3,152.78 (Dkt. No. 189-11, at 12-13). The Court finds that the copies were obtained for use in the case and awards $3,152.78 for copies obtained from Pivot Legal Services.

10. **Expert Report And Time Spent By FTN And Grisham**

In their motion, plaintiffs seek costs as the prevailing party under 42 U.S.C. § 1983 pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920 (Dkt. No. 189, ¶ 2). A sizeable amount of the total untaxable costs sought by plaintiffs falls under the category of "Expert Report and Time" for plaintiffs' experts FTN and John Grisham ($106,404.85). Plaintiffs state in their brief that "the testimony of Plaintiffs' hydrology expert was necessary to prove that the flooding occurred" and "[e]xpert [testimony] on damages was necessary to aid the jury in determining damages," but plaintiffs do not cite the Court to any authority for including expert costs as an untaxable cost under 42 U.S.C. § 1988. Defendants argue that the request for reimbursement for plaintiffs' hydrology expert represents almost one-third of the total jury award to plaintiffs and is "extremely excessive" (Dkt. No. 199, at 8). Defendants suggest that the Court award plaintiffs a total of $20,000.00 in costs (Dkt. No. 199, at 10).

In 1991, the Supreme Court held that § 1988 does not authorize the shifting of expert witness fees to the losing party. *West Virginia Univ. Hosp., Inc. v. Casey*, 499 U.S. 83 (1991). After *Casey*, Congress amended § 1988 to allow courts, in their discretion, to award expert witness fees "in any action or proceeding to enforce a provision of [§] 1981 or 1981a of this title." 42 U.S.C. § 1988(c). The amendment did not include claims brought under § 1983. *See Huey v.*

15

*Sullivan*, 971 F.2d 1362, 1366 (8th Cir. 1992); *Stratakos v. Nassau Cty.*, 574 F. Supp. 3d 154, 162–63 (E.D.N.Y. 2021) (determining that "plaintiff cannot recover expert fees as part of his costs 'because § 1988 does not allow the shifting of expert witness fees in § 1983 actions.'"); *Wilkens v. Edwards*, Case No. 6:14-CV-00907-MC, 2016 WL 1271663, at *5 (D. Or. Mar. 29, 2016) (reducing plaintiff's bill of cost after finding that expert fees are not available to a prevailing plaintiff for a § 1983 claim); *see also* Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure*, § 2678 (4th ed. 2018) (collecting cases).

It is well established that absent statutory authority to the contrary, expert witness fees are limited to the $40.00 per day witness fee permitted by 28 U.S.C. § 1821. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 300-02 (2006); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 440-45 (1987). Accordingly, the Court will award plaintiffs their witness fee costs of $80.00 for Jim Grisham appearing for one day of trial and one day of deposition testimony and $300.00 for FTN expert Mark Johnson's attendance for five days at trial and one day of deposition testimony for a total of $380.00 in costs related to expert witness fees.

### 11.    ATT Conference Services

Plaintiffs request $158.17 for "ATT Conference Services" (Dkt. No. 190, at 12). Plaintiffs provide no detail for this request other than a general citation to Docket No. 186-2, which is 380 approximately pages (*Id.*). Defendants do not challenge specifically the ATT cost request, but the Court has received plaintiffs' motion and its supporting documents, and it does not find any support for the request. Without detail supporting the request, the Court cannot grant plaintiffs' request for costs for ATT charges (Dkt. No. 190, at 12).

### 12.    Process Server

Plaintiffs request $1,155.00 in costs for service by a private process server (Dkt. No. 190, at 12; 189-10, at 40-43).  The Eighth Circuit has held that § 1920 contains no provision for use of a private process server and only allows taxation of service fees by the United States Marshal.  *See Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir. 1985).  The Court is bound to follow this precedent.  *See Bunda v. Potter*, 2006 WL 2665134, at **3-6 (N.D. Iowa Jan. 31, 2006) (discussing *Crues* in depth and concluding that "while other courts have permitted the recovery of special process fees, this court is compelled to follow Eighth Circuit precedent regardless of the equities at play in the facts of this case."); *see also Huffman v. Associated Mgmt. Ltd.*, Case No. 4:20-cv-01296-BRW, 2021 WL 3122338, at *8, n. 67 (E.D. Ark. July 22, 2021), *aff'd,* Case No. 21-2859, 2022 WL 1114631 (8th Cir. Apr. 14, 2022); *McLelland v. Ridge Tool Co.*, 350 F. Supp. 3d 773, 780 (W.D. Ark. 2018); *Marez v. Saint-Gobain Containers, Inc.*, 2011 WL 1930706, at *15 (E.D. Mo. May 18, 2011).  Accordingly, the Court cannot grant plaintiffs' motion for costs for private process server charges (Dkt. No. 190, at 12).

### 13.    Summary Of Fees Awarded

As set forth above, the Court determines that, given the records submitted for the Court's review, the Court awards plaintiffs the following costs and all of plaintiffs' other requests for costs are denied:

| Awardable Costs | Amount |
|---|---|
| Filing Fee | $400.00 |
| Pacer Fees/Online Research | $4,954.51 |
| Certified Mail | $226.58 |
| Copies of Records | $75.00 |
| Deposition Transcripts | $3,790.45 |
| Attorney Lodging | $5,141.79 |
| Pivot Outside Printing | $3,152.78 |
| Expert Witness Fee (FTN) 5 days of Trial, 1 day Deposition x $40.00 | $240.00 |

| Expert Witness Fee (Grisham) 1 day of Trial, 1 day Deposition x $40.00 | $80.00 |
|---|---|
| **Total** | **$18,061.11** |

## IV.     Conclusion

For the reasons set forth above, the Court grants in part and denies in part plaintiffs' motion for bill of costs and attorney fees (Dkt. No. 189) and approves attorneys' fees in the amount of $370,279.00 and $18,061.11 in costs, for a total fee award of $388,340.11.

It is so ordered this 30th day of March, 2024.

Kristine G. Baker
Chief United States District Judge